GIBSON, DUNN & CRUTCHER LLP
SAMUEL LIVERSIDGE, SBN 180578
  sliversidge@gibsondunn.com
ILISSA SAMPLIN, SBN 314018
  isamplin@gibsondunn.com
SARAH KUSHNER, SBN 320077
  smkushner@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:   213.229.7000
Facsimile:   213.229.7520

JOSEPH R. ROSE, SBN 279092
  jrose@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone:   415.393.8200
Facsimile:   415.393.8306

Attorneys for Defendant HP INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOBILE EMERGENCY HOUSING CORP., and TRACK RAT ENTERPRISES, INC. d/b/a PERFORMANCE AUTOMOTIVE & TIRE CENTER, and DAVID JUSTIN LYNCH, individually, and on behalf of all others similarly situated,<br><br>            Plaintiffs,<br><br>v.<br><br>HP INC. d/b/a/ HP COMPUTING AND PRINTING INC., a Delaware Corporation,<br><br>            Defendant. | CASE NO. 5:20-cv-09157-SVK<br><br>**DEFENDANT HP INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS AND/OR STRIKE PLAINTIFFS' THIRD AMENDED CLASS ACTION COMPLAINT PURSUANT TO RULES 12(b)(1), 12(b)(6) AND 12(f) OF THE FEDERAL RULES OF CIVIL PROCEDURE**<br><br><br>**Hearing:**<br>Date:     July 27, 2021<br>Time:     10:00 a.m.<br>Place:    Videoconference<br>Judge:   Hon. Susan van Keulen<br><br>Action Filed: December 17, 2020 |

Gibson, Dunn &
Crutcher LLP

**TABLE OF CONTENTS**

Page

I. INTRODUCTION .................................................................................................. 1

II. ARGUMENT ........................................................................................................ 2

    A. Plaintiffs Are Wrong That This Case Is "Identical" to *San Miguel* ............................ 2

    B. Plaintiffs Do Not Have Standing to Pursue Their Data-Collection Claims .................. 2

    C. The Court Should Dismiss Plaintiffs' Claims Under the FAL, the UCL, and the CLRA ........................................................................................................................ 3

        1. Plaintiffs' Opposition Confirms That Dismissal Is Warranted Under *Sonner* ................................................................................................... 3

        2. Plaintiffs' Claims Under the FAL and the "Fraudulent" Prong of the UCL Fail Because the TAC Does Not Allege Omissions, Misrepresentations, or Causation ............................................................ 4

        3. Mr. Lynch's CLRA Claim Fails Because It Is Contradicted by the Allegations in the TAC and Does Not Satisfy the Household Purposes or Causation Elements ................................................................. 6

        4. Plaintiffs' Claim Under the "Unfair" Prong of the UCL Fails Under the Tethering and Balancing Tests ...................................................... 7

        5. Plaintiffs' Derivative Claim Under the "Unlawful" Prong of the UCL Fails ....................................................................................................... 8

    D. The Court Should Dismiss Plaintiffs' Claims Under the CFAA ................................ 8

        1. Plaintiffs' CFAA Claims Fail at the Outset Because No Plaintiff Satisfies the Statute's $5,000 Loss Threshold ...................................... 9

        2. Plaintiffs' Concession That HP Had Authorization to Access Their Printers Is Fatal to Their Section 1030(a)(2)(C) Claim .................... 10

        3. Plaintiffs' Failure to Plead CFAA-Qualifying "Damage" and Concession of HP's Authorization to Access Their Printers Dooms Their Section 1030(a)(5)(A) Claim ................................................... 11

    E. Plaintiffs' CDAFA Claims Fail For Failure to Plead That HP Circumvented Technological Barriers ......................................................................................... 13

    F. Plaintiffs' Concession That HP Had Authorization to Access Their Printers Is Fatal to Their Claim For Trespass to Chattels ...................................................... 14

    G. Plaintiffs' Request for Injunctive Relief Should Be Stricken Because Plaintiffs Are Not Realistically Threatened by a Repetition of the Alleged Violation ............. 14

    H. Dismissal With Prejudice Is Warranted Because Plaintiffs Have Repeatedly Failed to Cure the Deficiencies in Their Pleading ...................................................... 15

III. CONCLUSION ................................................................................................... 15

i

Gibson, Dunn &
Crutcher LLP

HP INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS AND/OR STRIKE PLAINTIFFS' THIRD AMENDED
COMPLAINT -- CASE NO. 5:20-CV-09157-SVK

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Apple Inc. Device Performance Litig.*,
   347 F. Supp. 3d 434 (N.D. Cal. 2018) ........................................................................13

*Bates v. UPS, Inc.*,
   511 F.3d 974 (9th Cir. 2007)......................................................................................15

*Birdsong v. Apple, Inc.*,
   590 F.3d 955 (9th Cir. 2009)........................................................................................3

*Boyle v. Madigan*,
   492 F.2d 1180 (9th Cir. 1974).....................................................................................10

*Brown v. Google LLC*,
   No. 20-CV-03664-LHK, 2021 WL 949372 (N.D. Cal. Mar. 12, 2021) .......................13

*Cahen v. Toyota Motor Corp.*,
   717 F. App'x 720 (9th Cir. 2017) .................................................................................3

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
   20 Cal. 4th 163 (1999) .................................................................................................7

*Cockrell Estate of Cockrell v. Wells Fargo Bank, N.A.*,
   No. CV 13-2072 SC, 2013 WL 5945077 (N.D. Cal. Nov. 4, 2013)..............................3

*Creative Computing v. Getloaded.com LLC*,
   386 F.3d 930 (9th Cir. 2004)....................................................................................9, 10

*Digby Adler Grp., LLC v. Mercedes-Benz U.S.A., LLC*,
   No. 14-CV-02349-TEH, 2015 WL 5138080 (N.D. Cal. Sept. 1, 2015) ........................6

*eBay, Inc. v. Bidder's Edge, Inc.*,
   100 F. Supp. 2d 1058 (N.D. Cal. 2000) ......................................................................14

*Facebook, Inc. v. Power Ventures, Inc.*,
   844 F.3d 1058 (9th Cir. 2016)......................................................................................13

*Gest v. Bradbury*,
   443 F.3d 1177 (9th Cir. 2006)..................................................................................14, 15

*Guzman v. Polaris Indus. Inc.*,
   No. 819CV01543FLAKESX, 2021 WL 2021454 (C.D. Cal. May 12, 2021) ................4

*Hodsdon v. Mars, Inc.*,
   891 F.3d 857 (9th Cir. 2018).....................................................................................5, 8

ii

Gibson, Dunn &
Crutcher LLP

*In re iPhone App. Litig.*,
    844 F. Supp. 2d 1040 (N.D. Cal. 2012) ...................................................................14

*Janoe v. Stone*,
    No. 06CV1511JM(CAB), 2008 WL 3931310 (S.D. Cal. Aug. 19, 2008).............................3, 5, 7

*Knowles v. Arris Int'l PLC*,
    No. 17-CV-01834-LHK, 2019 WL 3934781 (N.D. Cal. Aug. 20, 2019) ...................................5

*LaCourt v. Specific Media, Inc.*,
    No. SACV 10-1256 GW JCGX, 2011 WL 1661532 (C.D. Cal. Apr. 28, 2011) ..........................9

*Lavie v. Procter & Gamble Co.*,
    105 Cal. App. 4th 496 (2003) ...................................................................5

*LVRC Holdings LLC v. Brekka*,
    581 F.3d 1127 (9th Cir. 2009).................................................................10, 11

*In re MacBook Keyboard Litig.*,
    No. 5:18-CV-02813-EJD, 2020 WL 6047253 (N.D. Cal. Oct. 13, 2020) ...................................4

*Manwin Licensing Int'l S.A.R.L. v. ICM Registry, LLC*,
    No. CV119514PSGJCGX, 2013 WL 12123772 (C.D. Cal. Feb. 26, 2013) ...................................7

*Maple v. Costco Wholesale Corp.*,
    649 F. App'x 570 (9th Cir. 2016) ...................................................................10

*McCrary v. Elations Co. LLC*,
    No. EDCV130242JGBSPX, 2014 WL 12561600 (C.D. Cal. Dec. 8, 2014) ...................................6

*NetApp, Inc. v. Nimble Storage, Inc.*,
    41 F. Supp. 3d 816 (N.D. Cal. 2014) ...................................................................12

*NovelPoster v. Javitch Canfield Grp.*,
    140 F. Supp. 3d 954 (N.D. Cal. 2014) ...................................................................11

*Opperman v. Path, Inc.*,
    87 F. Supp. 3d 1018 (N.D. Cal. 2014) ...................................................................13

*Palmer v. Apple Inc.*,
    No. 5:15-cv-05808-RMW, 2016 WL 1535087 (N.D. Cal. Apr. 15, 2016) ...................................8

*Parziale v. HP, Inc.*,
    445 F. Supp. 3d 435 (N.D. Cal. 2020) ...................................................2, 5, 8, 15

*Parziale v. HP, Inc.*,
    No. 5:19-CV-05363-EJD, 2020 WL 5798274 (N.D. Cal. Sept. 29, 2020)...............2, 11, 13, 14, 15

*Perkins v. LinkedIn Corp.*,
    53 F. Supp. 3d 1190 (N.D. Cal. 2014) ...................................................................13

iii

HP INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS AND/OR STRIKE PLAINTIFFS' THIRD AMENDED
COMPLAINT -- CASE NO. 5:20-CV-09157-SVK

Gibson, Dunn &
Crutcher LLP

*Ribot v. Farmers Ins. Grp.*,
    No. CV 11-02404 DDP FMOX, 2014 WL 2510883 (C.D. Cal. June 4, 2014) ............................10

*San Miguel v. HP Inc.*,
    317 F. Supp. 3d 1075 (N.D. Cal. 2018) ........................................................................................2

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020) ...........................................................................................1, 4, 15

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
    903 F. Supp. 2d 942 (S.D. Cal. 2012) ......................................................................................6, 7

*South Bay Chevrolet v. Gen. Motors Acceptance Corp.*,
    72 Cal. App. 4th 861 (1999) .......................................................................................................7

*Southland Sod Farms v. Stover Seed Co.*,
    108 F.3d 1134 (9th Cir. 1997) ....................................................................................................6

*Thurmond v. Compaq Comput. Corp.*,
    171 F. Supp. 2d 667 (E.D. Tex. 2001) ........................................................................................9

*U-Haul Int'l, Inc. v. Jartran, Inc.*,
    793 F.2d 1034 (9th Cir. 1986) ....................................................................................................6

*United States v. Christensen*,
    828 F.3d 763 (9th Cir. 2015) ....................................................................................................13

*United States v. Nosal*,
    676 F.3d 854 (9th Cir. 2012) ....................................................................................................12

*Van Buren v. United States*,
    141 S. Ct. 1648 (2021) ...........................................................................................1, 8, 10, 11, 12

*Warner v. Tinder Inc.*,
    105 F. Supp. 3d 1083 (C.D. Cal. 2015) ..................................................................................5, 6

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) ....................................................................................................15

**Statutes**

18 U.S.C. § 1030 ..................................................................................................................8, 9, 11

Cal. Civ. Code § 1761 ........................................................................................................................7

Cal. Civ. Code § 1770 ........................................................................................................................7

Gibson, Dunn &
Crutcher LLP

iv

HP INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS AND/OR STRIKE PLAINTIFFS' THIRD AMENDED
COMPLAINT -- CASE NO. 5:20-CV-09157-SVK

## I. INTRODUCTION

The Third Amended Complaint ("TAC") should be dismissed for the following reasons:

*Lack of Standing.* All of Plaintiffs' claims based on their data-collection theory should be dismissed for lack of Article III standing. Plaintiffs' allegation that HP "can use" the data it allegedly collects to deny assistance to those who use non-HP cartridges, TAC ¶ 1, is insufficient to satisfy Article III's requirement that *Plaintiffs themselves* have been injured.

*Consumer-protection claims.* Plaintiffs' FAL and UCL claims, and Mr. Lynch's request for an injunction under the CLRA, fail under *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020), because money damages would completely address Plaintiffs' claimed injuries.

Plaintiffs' claims under the FAL and the "fraudulent" prong of the UCL also fail because the TAC does not allege any actionable omissions or misrepresentations, or that Plaintiffs' supposed injuries were caused by any such omission or misrepresentation. Mr. Lynch's claim that HP violated the CLRA by misrepresenting that replacement cartridges were needed fails because (i) it is contradicted by the allegation that replacements were in fact "needed" after the error message appeared, *see* TAC ¶ 123, and (ii) the TAC does not plead that Mr. Lynch used his printer for the requisite household purposes, or that his supposed injuries were caused by the purported misrepresentation. Plaintiffs' claim under the "unfair" prong of the UCL fails because they have not tethered HP's alleged conduct to a legislatively declared policy or antitrust violation or pleaded that the balancing test is satisfied, particularly in light of HP's public disclosures regarding the conduct at issue. And Plaintiffs' derivative claim under the "unlawful" prong of the UCL fails because each predicate claim fails.

*Hacking claims.* As for Plaintiffs' claims under the CFAA, the Supreme Court recently rejected a theory of liability akin to Plaintiffs', holding that a defendant acts "without authorization" only if it lacks the *technical ability* to access the computer at issue—an ability HP indisputably had here—and that "damage without authorization" requires proof of "technological harm[]" to the computer at issue—a type of harm that HP indisputably did not cause. *Van Buren v. United States*, 141 S. Ct. 1648, 1658–60 (2021); *see* TAC ¶¶ 4, 97, 123. These claims also fail because no single Plaintiff satisfies the CFAA's $5,000 loss threshold. Plaintiffs' state hacking claims fare no better because the TAC does not plead that HP circumvented any *technological barriers*. And Plaintiffs'

Gibson, Dunn &
Crutcher LLP

1

HP INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS AND/OR STRIKE PLAINTIFFS' THIRD AMENDED
COMPLAINT -- CASE NO. 5:20-CV-09157-SVK

concession that HP was authorized to access their printers, TAC ¶ 4, is fatal to their trespass claim.

At a minimum, Plaintiffs' request for an injunction should be dismissed and/or stricken because no Plaintiff faces a likelihood of future injury, and even if one did, any future injury could be remedied by money damages. The Court should dismiss the TAC in its entirety with prejudice.

## II.     ARGUMENT

### A.     Plaintiffs Are Wrong That This Case Is "Identical" to *San Miguel*

In *San Miguel v. HP Inc.*, 317 F. Supp. 3d 1075 (N.D. Cal. 2018), Judge Davila declined to dismiss certain consumer-protection and hacking claims challenging dynamic security. Plaintiffs seize on superficial similarities between *San Miguel* and this case, claiming that the same outcome is warranted. Opp. 4–5. In reality, *San Miguel* differs from this case in a number of important respects.

Most significantly, HP's public disclosures regarding dynamic security were not before the court in *San Miguel*. Those disclosures, which were at issue in *Parziale* and compelled its dismissal, render many of Plaintiffs' claims implausible. *See Parziale v. HP, Inc.* ("*Parziale I*"), 445 F. Supp. 3d 435, 445 (N.D. Cal. 2020) (dismissing consumer-protection claims predicated on alleged failure to disclose, citing same dynamic-security disclosure before this Court); *Parziale v. HP, Inc.* ("*Parziale II*"), No. 5:19-CV-05363-EJD, 2020 WL 5798274, at *6–7 (N.D. Cal. Sept. 29, 2020) (dismissing hacking claims with prejudice in light of same disclosure). Moreover, Plaintiffs' consumer-protection claims are materially different from those in *San Miguel*. There, the court held that the complaint stated plausible claims because the error message at issue—that the cartridges were "damaged" or "missing"—"misrepresented that the printer failure resulted from missing or damaged ink." 317 F. Supp. 3d at 1090. By contrast, the "supply problem" error message at issue here made no misrepresentation at all; in fact, it was entirely consistent with the true source of the problem—i.e., the incompatibility of certain third-party cartridges. Finally, *San Miguel* offers no support for Plaintiffs' claim under the "unfair" prong of the UCL, which the *San Miguel* Court *dismissed*. *Id.* at 1092–93.

### B.     Plaintiffs Do Not Have Standing to Pursue Their Data-Collection Claims

Plaintiffs' data-collection claims should be dismissed for lack of Article III standing. As an initial matter, Plaintiffs appear to misunderstand the scope of HP's standing argument: HP's position is that *every single claim* premised on Plaintiffs' data-collection theory must be dismissed for lack of

standing—not merely Plaintiffs' claim under Section 1030(a)(2)(C) of the CFAA. *See* Opp. 11–12.

In any event, Plaintiffs offer no persuasive response on the merits. Plaintiffs acknowledge that "mere data collection without injury do[es] not confer standing," but contend they *have* pleaded an injury-in-fact arising out of this practice because the TAC "allege[s] that HP uses the information it surreptitiously collects to deny assistance to HP printer owners who use third-party ink or toner, and to formulate responses to them, including false and misleading error messages." Opp. 12. That is incorrect. The TAC merely alleges that HP "*can use this information to punish its customers ... and* [to] refus[e] assistance" to those using non-HP cartridges, TAC ¶ 1 (emphasis added), and repeats certain findings made by the Italian Competition Authority, *id.* ¶ 73. It does not allege that HP actually *engaged in* this conduct with respect to Plaintiffs' printers. Thus, Plaintiffs lack standing to pursue their data-collection claims. *See, e.g.*, *Cahen v. Toyota Motor Corp.*, 717 F. App'x 720, 723 (9th Cir. 2017) (no standing where plaintiffs alleged a defect in their vehicles created a "risk of hacking" but did "not allege that any … vehicles have actually been hacked"); *Birdsong v. Apple, Inc.*, 590 F.3d 955, 960 (9th Cir. 2009) (no standing where complaint alleged generally that iPods pose an unreasonable risk of noise-induced hearing loss, but did not allege that plaintiffs "suffered or imminently will suffer hearing loss from their iPod use" for failure to plead "the requisite injury to [plaintiffs] themselves").

Recognizing that there is no injury to confer standing for their data-collection claims, Plaintiffs for the first time in their opposition contend that it is "plausible that HP uses the information it gathers to design the firmware update itself." Opp. 12. This new theory of injury, which appears nowhere in the TAC and is not supported by any alleged facts, should be disregarded. *See, e.g.*, *Cockrell Estate of Cockrell v. Wells Fargo Bank, N.A.*, No. CV 13-2072 SC, 2013 WL 5945077, at *2 (N.D. Cal. Nov. 4, 2013) (granting motion to dismiss and issuing Rule 11 warning where "Plaintiff's opposition brief directly contradict[ed] her FAC" and "the facts she cite[d] in that brief are not referenced in or incorporated into her pleadings"); *Janoe v. Stone*, No. 06CV1511JM(CAB), 2008 WL 3931310, at *2 (S.D. Cal. Aug. 19, 2008) ("Plaintiff cannot use his opposition to cure deficiencies in his pleading.").

## C. The Court Should Dismiss Plaintiffs' Claims Under the FAL, the UCL, and the CLRA

### 1. Plaintiffs' Opposition Confirms That Dismissal Is Warranted Under *Sonner*

Plaintiffs' opposition also confirms that they are incapable of alleging that they lack an adequate

Gibson, Dunn & Crutcher LLP

remedy at law, requiring dismissal of their claims under the UCL and FAL, and Mr. Lynch's request for an injunction under the CLRA. *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) (holding that the equitable remedies provided by the UCL, FAL, and CLRA are available only if legal remedies are insufficient). Plaintiffs assert that they experienced "uncertainty as to when HP will send out malicious transmissions" in the future. Opp. 24. But that "uncertainty" no longer exists, as each Plaintiff discontinued its use of third-party cartridges with HP printers. *See* TAC ¶¶ 44, 56, 68. And the TAC confirms that even if Plaintiffs were suffering from such uncertainty, it could easily be remedied through alternate purchases, *see id.* ¶ 123 ("Plaintiffs were left with uncertainty as to the best course of action after seeing the false 'supply problem' message. Plaintiffs … had to either purchase ... HP supply cartridges or ... a printer from another manufacturer."), which in turn may be addressed by money damages. *In re MacBook Keyboard Litig.*, No. 5:18-CV-02813-EJD, 2020 WL 6047253, at *4 (N.D. Cal. Oct. 13, 2020) (holding that monetary damages "provide[d] an adequate remedy" for expenses plaintiffs incurred "in their attempts to resolve" deficiencies in their laptops). In short, even if Plaintiffs were still suffering from "uncertainty," it could be *completely* addressed by refunding them the money they spent on their HP printers and supplies. Thus, monetary damages suffice.

Plaintiffs' argument against *Sonner* also is squarely undercut by Plaintiffs' own allegation that they have "*sustained damages*, including but not limited to [damages arising from the] … uncertainty in the functioning of their printers and supply cartridges, and future remedial costs." TAC ¶ 7 (emphasis added). Plaintiffs' concession that an adequate remedy at law exists precludes their requested equitable remedies. *See Guzman v. Polaris Indus. Inc.*, No. 819CV01543FLAKESX, 2021 WL 2021454, at *11 (C.D. Cal. May 12, 2021) (dismissing request for equitable relief under *Sonner* and describing "[t]he fact that [one plaintiff] previously sought legal damages … based on the same alleged misrepresentations at the heart of his UCL claim, and that [a different plaintiff] continues to seek legal damages" as "indicat[ive] that an adequate remedy at law exists in the form of damages").

### 2. Plaintiffs' Claims Under the FAL and the "Fraudulent" Prong of the UCL Fail Because the TAC Does Not Allege Omissions, Misrepresentations, or Causation

Plaintiffs also fail to establish that their claims under the FAL and the "fraudulent" prong of the UCL are plausibly pleaded. Plaintiffs offer no response to HP's argument that the TAC does not identify any actionable omissions at the point of sale. *Compare* Mot. 10–12, *with* Opp. 17–19. As HP

explained in its moving papers, HP had no duty to make disclosures regarding dynamic security because, as relevant here, the duty to disclose is limited to "physical product defect[s] relating to the central function of the [product]," or, in other words, defects that render the product "incapable of use by any consumer." *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 864–65 (9th Cir. 2018); *see also Knowles v. Arris Int'l PLC*, No. 17-CV-01834-LHK, 2019 WL 3934781, at *16 (N.D. Cal. Aug. 20, 2019) (defects in modems not actionable because they did not "render[] the products unusable as sold"). The TAC confirms that the firmware updates *did not* render Plaintiffs' printers "incapable of use by any consumer." *Hodsdon*, 891 F.3d at 864–65; *see* TAC ¶¶ 97, 123 ("Lynch ... [got] his printer working again" after "purchas[ing] a new set of HP cartridges"). Moreover, the disclosures HP made on its judicially noticeable webpages regarding dynamic security and data collection render any omissions-based theory implausible. Mot. 11–12; *Parziale I*, 445 F. Supp. 3d at 445 (dismissing consumer-protection claims based on alleged failure to disclose where the "information that Plaintiff argues HP should have disclosed was in large part disclosed" on a public webpage).[1]

Nor have Plaintiffs shown that the error message is likely to deceive. "[L]ikely to deceive" means that "it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Warner v. Tinder Inc.*, 105 F. Supp. 3d 1083, 1093 (C.D. Cal. 2015) (quoting *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003)). Plaintiffs' argument that the "supply problem" error message was "literally false because there was no problem until the very moment that HP sent the transmission," Opp. 19, is impossible to square with Plaintiffs' theory of injury, i.e., that the error message appeared *after* the firmware update caused Plaintiffs' printers to cease functioning with their third-party cartridges. It also says nothing about whether consumers were likely to be deceived by the message *once it appeared on their printers*. And Plaintiffs' alternative theory—that the error message was likely to deceive because it obscured HP's alleged role in the problem, *id.*—appears nowhere in the TAC and thus should not be considered on this Motion. *See Janoe*, 2008 WL 3931310, at *2. Rather, the TAC pleads that the error message was deceptive because it "suggest[ed] that the third-party supply cartridges were broken" when they were not. *See* TAC ¶ 30. An error message indicating that there is a "supply problem" is not equivalent

---

[1] HP addresses Plaintiffs' argument about these disclosures in its Reply ISO of RJN.

to a representation that Plaintiffs' third-party cartridges were "broken" or "defective." As a result, it was not likely to mislead a reasonable consumer. *Warner*, 105 F. Supp. 3d at 1093.

Plaintiffs devote the remainder of their discussion of the error message theory to arguing that the elements of a false advertising claim *under the Lanham Act* are satisfied. Opp. 19; *see Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997) (standard for demonstrating "falsity within the meaning of the Lanham Act"); *U-Haul Int'l, Inc. v. Jartran, Inc.*, 793 F.2d 1034, 1040–41 (9th Cir. 1986) (elements of Lanham Act false advertising claim). This argument is inapposite because the Lanham Act involves "different standards" than the "likely to deceive" test that governs Plaintiffs' claims under the FAL and the fraudulent prong of the UCL. *McCrary v. Elations Co. LLC*, No. EDCV130242JGBSPX, 2014 WL 12561600, at *13 (C.D. Cal. Dec. 8, 2014)

Plaintiffs' claims under the FAL and the "fraudulent" prong of the UCL also fail for lack of causation. To plead causation, Plaintiffs "must allege actual reliance"—i.e., that "but for defendant's material misrepresentation or omission [they] would have proceeded differently." *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 969 (S.D. Cal. 2012). The TAC alleges that in response to the error message, Plaintiffs "either purchase[d] a set of overpriced HP supply cartridges or ... purchase[d] a printer from another manufacturer." TAC ¶¶ 122–23, 131, 165. Those injuries were not *caused* by the error message because Plaintiffs do not allege that they would have proceeded any differently if the error message had "attribute[d] the problem to a firmware update, malware transmission, or other conduct on [HP's] part," *id.* ¶ 29, as Plaintiffs contend it should have. Plaintiffs do not respond to this argument, which HP made in its Motion, Mot. 14–15, thereby conceding it. *See Digby Adler Grp., LLC v. Mercedes-Benz U.S.A., LLC*, No. 14-CV-02349-TEH, 2015 WL 5138080, at *2 (N.D. Cal. Sept. 1, 2015) ("Plaintiffs failed to respond to this argument and have therefore conceded the point."). These claims should be dismissed.

### 3. Mr. Lynch's CLRA Claim Fails Because It Is Contradicted by the Allegations in the TAC and Does Not Satisfy the Household Purposes or Causation Elements

Plaintiffs also fail to demonstrate that Mr. Lynch's CLRA claim is plausibly pleaded. Plaintiffs contend this claim is viable because HP "falsely represented to Mr. Lynch that his printer needed a replacement cartridge ... when it was HP that caused his printer to fail." Opp. 22–23. But that is beside the point. Mr. Lynch must establish that HP represented that a replacement cartridge was "needed"

when in fact "it [was] not." *See* Cal. Civ. Code § 1770(a)(15) (creating liability for any person who, in connection with a consumer transaction, "[r]epresent[s] that a part, replacement, or repair service is needed when it is not"). The TAC alleges the opposite—i.e., that after the error message appeared, replacement cartridges *were needed*. TAC ¶ 123 ("Lynch needed to print right away, so he was forced to purchase a new set of HP cartridges."). Moreover, the TAC fails to allege that Mr. Lynch *used* his HP printer for the requisite "personal, family, or household *purposes*." Cal. Civ. Code § 1761(d) (emphasis added). Contrary to Plaintiffs' assertions, the allegations Plaintiffs cite in their opposition make no mention of the purpose for which Mr. Lynch used his HP printer. Opp. 23; *see* TAC ¶¶ 58– 70, 161–63. Last, like Plaintiffs' claims under the FAL and the "fraudulent" prong of the UCL, Mr. Lynch's CLRA claim fails for lack of causation. *In re Sony*, 903 F. Supp. 2d at 969 ("For fraud-based claims under all three consumer statutes the named Class members must allege actual reliance to have standing."). As a result of these deficiencies, Mr. Lynch's CLRA claim should be dismissed.

### 4. Plaintiffs' Claim Under the "Unfair" Prong of the UCL Fails Under the Tethering and Balancing Tests

Plaintiffs' UCL claim for "unfair" business practices fares no better. Plaintiffs first attempt to tether their allegations to some kind of antitrust violation, asserting that "HP's conduct actually harms and threatens to negatively impact competition by forcing, and tending to force, customers of its lawful competitors to buy only HP supplies." Opp. 21; *see Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163 (1999). But the TAC does not allege an actual antitrust violation, which is required "[w]here a party's UCL allegations are based on alleged antitrust violations." *Manwin Licensing Int'l S.A.R.L. v. ICM Registry, LLC*, No. CV119514PSGJCGX, 2013 WL 12123772, at *8 (C.D. Cal. Feb. 26, 2013) ("[T]he failure to allege an antitrust violation results in the failure to allege unfair competition."). Plaintiffs also claim that the conduct at issue offends "the public policies embodied" in the CFAA, the CDAFA, and the FAL. Opp. 21. But the TAC does not identify these provisions as a basis for Plaintiffs' claim under the "unfair" prong of the UCL. Rather, it pleads in conclusory terms that the "practices" at issue "offend an established public policy." TAC ¶ 138. Plaintiffs "cannot use [their] opposition to cure deficiencies in [their] pleading." *Janoe*, 2008 WL 3931310, at *2 .

Plaintiffs' claim also fails under the balancing test. *See South Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal. App. 4th 861 (1999). As an initial matter, Plaintiffs are wrong that "the

7

Gibson, Dunn & Crutcher LLP

determination of whether the balancing test is satisfied ... may not be resolved on a motion to dismiss." Opp. 22. In fact, in *Parziale*, which Plaintiffs assert should "guide the result here," Opp. 1, Judge Davila dismissed the same theory, citing *the exact same* security benefit addressed here. Mot. 15–16; *see Parziale I*, 445 F. Supp. 3d at 447 (citing "a number of reasons for the firmware updates that are allegedly beneficial to consumers and to competition" in dismissing a claim under the "unfair" prong of Florida's analogue to the UCL). Moreover, where, as here, what is alleged to be "unfair" is a failure to disclose certain information, but that information is in fact disclosed, a defendant has not engaged in conduct that satisfies the balancing test. Mot. 15–16; *see Hodsdon*, 891 F.3d at 867 (affirming dismissal of claim under "unfair" prong because "the failure to disclose is not substantially injurious" if the "information [allegedly withheld] is public knowledge, accessible on [the defendant's] website"). To the extent this claim is predicated on Plaintiffs' dynamic security theory, this claim fails for the independent reason that the conduct at issue is not, as a matter of law, substantially injurious. Mot. 16; *see Palmer v. Apple Inc.*, No. 5:15-cv-05808-RMW, 2016 WL 1535087, at *7 (N.D. Cal. Apr. 15, 2016) ("Without additional allegations of wrongdoing, it is hard to see how Apple's failure to disclose the details of how the iPhone 5 switched off its Wi-Fi capability to improve battery life was immoral, unethical, oppressive, or unscrupulous."). Plaintiffs' claim under the unfair prong should be dismissed.

### 5. Plaintiffs' Derivative Claim Under the "Unlawful" Prong of the UCL Fails

Plaintiffs concede that their claim under the "unlawful" prong of the UCL is derivative of their other claims. Opp. 23. This claim therefore must be dismissed for the same reasons their predicate claims must be dismissed. *See Palmer*, 2016 WL 1535087, at *6.

### D. The Court Should Dismiss Plaintiffs' Claims Under the CFAA

The spirit and letter of the CFAA confirm that Plaintiffs' hacking theory is not viable. Just last month, the Supreme Court held that a defendant (1) acts "without authorization" under the CFAA *only if* it lacks authorization to access a "computer system" *for any purpose*, and (2) causes "damage without authorization" under the CFAA *only if* it causes "*technological harms … to computer systems and data.*" *Van Buren*, 141 S. Ct. at 1658–60 (emphasis added). Plaintiffs' hacking theory—that HP accessed their printers "without authorization" to obtain information on cartridge type, 18 U.S.C. § 1030(a)(2)(C), even though HP has the "exclusive ability" to access their printers, TAC ¶ 4, and then

caused "damage without authorization" by installing firmware updates, 18 U.S.C. § 1030(a)(5)(A), even though Plaintiffs' printers continued to work with replacement cartridges, TAC ¶¶ 97, 123—therefore would expand the CFAA far beyond its intended scope. These claims should be dismissed.

1.     **Plaintiffs' CFAA Claims Fail at the Outset Because No Plaintiff Satisfies the Statute's $5,000 Loss Threshold**

To prevail on either of their claims under the CFAA, Plaintiffs must establish "loss to 1 or more persons during any 1-year period (and, for purposes of an investigation … brought by the United States only, loss resulting from a related course of conduct affecting 1 or more other protected computers) aggregating at least $5,000 in value." 18 U.S.C. § 1030(c)(4)(A)(i)(I). Plaintiffs do not dispute that no single Plaintiff suffered at least $5,000 in "loss" within the meaning of CFAA; rather, they argue they may aggregate the claims of all putative class members to satisfy the $5,000 threshold. Opp. 10–11. This theory, which Plaintiffs advanced in their original Complaint, appears nowhere in the TAC. *Compare* ECF No. 1 (Compl.) ¶ 77 ("Plaintiffs and the Class members suffered losses during a one-year period that exceed $5,000 in the aggregate."), *with* TAC ¶¶ 97–99 (containing no such allegation).

In any event, the CFAA and the U.S. Constitution prohibit such aggregation. The CFAA distinguishes between aggregation of persons and of computers: private plaintiffs may aggregate "loss to 1 or more persons" stemming from a single computer intrusion—for instance, where the hack of a company's server harms multiple customers—while the aggregation of losses arising from "a related course of conduct affecting 1 or more other protected computers" is reserved for proceedings "brought by the United States only." 18 U.S.C. § 1030(c)(4)(A)(i)(I); *see LaCourt v. Specific Media, Inc.*, No. SACV 10-1256 GW JCGX, 2011 WL 1661532, at *6 n.4 (C.D. Cal. Apr. 28, 2011) ("It is not clear that, in a civil action not brought by the United States, harm to different persons over a one-year period can be aggregated unless it relates to conduct affecting a single computer."). This is consistent with the plain language of Section 1030(a)(5)(A), which states that a violation occurs when there is "damage" to "*a* protected computer." 18 U.S.C. § 1030(a)(5)(A) (emphasis added); *see Thurmond v. Compaq Comput. Corp.*, 171 F. Supp. 2d 667, 680–81 (E.D. Tex. 2001). Plaintiffs' attempt to lump all class printers (each an alleged computer) into a single "loss" amount constitutes aggregation of the type reserved for government prosecutions only; it cannot serve as the basis for Plaintiffs' private suit.

Plaintiffs are wrong that the Ninth Circuit "specifically rejected" this argument in *Creative*

Gibson, Dunn & Crutcher LLP

*Computing v. Getloaded.com LLC*, 386 F.3d 930 (9th Cir. 2004). Opp. 11. That case held that a *single plaintiff* may aggregate losses stemming from multiple intrusions *to a single computer*, 386 F.3d at 934–35, which does not support Plaintiffs' contention that *multiple plaintiffs* may aggregate losses stemming from intrusions to *multiple computers*.

Plaintiffs' interpretation also ignores their burden, as putative class representatives, to "state a claim in themselves." *Boyle v. Madigan*, 492 F.2d 1180, 1182 (9th Cir. 1974) (dismissal "is the proper course to follow where the named plaintiffs have failed to state a claim in themselves for the relief they seek"); *see Maple v. Costco Wholesale Corp.*, 649 F. App'x 570, 572 (9th Cir. 2016) ("[B]ecause Plaintiff's own individual claim fails, dismissal without leave to amend was correct ...."); *Ribot v. Farmers Ins. Grp.*, No. CV 11-02404 DDP FMOX, 2014 WL 2510883, at *11 (C.D. Cal. June 4, 2014) ("When a named plaintiff has no cognizable claim for relief, she cannot represent others who may have such a claim, and her bid to serve as a class representative must fail."). Plaintiffs' attempt to use the alleged losses of putative class members to meet the elements of their own claims violates this fundamental rule and should be rejected. Plaintiffs' CFAA claims must be dismissed.

## 2. Plaintiffs' Concession That HP Had Authorization to Access Their Printers Is Fatal to Their Section 1030(a)(2)(C) Claim

To prevail on their Section 1030(a)(2)(C) claim, Plaintiffs must also establish that HP had no "permission to use [their] computer[s] for any purpose (such as when a hacker accesses someone's computer without any permission)." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1350 (9th Cir. 2009); *see also Van Buren*, 141 S. Ct. at 1658 (agreeing with *Brekka* and holding that liability under the "without authorization" prong is a "gates-up-or-down inquiry—one either can or cannot access a computer system"). Plaintiffs do not dispute this; in fact, their opposition confirms that they are proceeding only under the "without authorization" prong. Opp. 13 ("Plaintiffs claim that HP had absolutely *no permission* to access their printers ...."). As HP explained in its moving papers, this theory is not plausible in light of the allegation that HP "has the *exclusive ability* to install firmware updates to the printers it sells that are connected to the Internet." TAC ¶ 4 (emphasis added); Mot. 19.

In response, Plaintiffs claim that HP is confusing "ability" with "authorization," noting that "[h]ackers may have the *ability* to access computers, even though they are not *authorized* to do so." Opp. 13. This example is nonsensical given that the TAC pleads that HP's "ability" was "*exclusive*."

10

Gibson, Dunn & Crutcher LLP

TAC ¶ 4 (emphasis added). Plaintiffs go on to argue that what they meant by "exclusive" is that HP's "ability" to access Plaintiffs' printers is "unique" in the sense that HP's competitors (and hackers) do not share in it. *See* Opp. 13 ("Plaintiffs' argument is that HP *(as opposed to other ink and toner suppliers, or an unknown hacker)* caused the unauthorized access and damage because of its unique ability … to ... monitor[] the cartridge type and usage" (emphasis added)). The only conceivable way in which HP's "ability" to access Plaintiffs' printers is "unique" to HP is that HP *has authorization* to access them, whereas HP's competitors and hackers do not. Plaintiffs' Section 1030(a)(2)(C) claim therefore fails. *See Brekka*, 581 F.3d at 1135. This claim is, moreover, implausible in light of the public disclosure HP made regarding its practice of "automatically" collecting "product usage data such as … ink or toner brand." ECF No. 45–8; *Parziale II*, 2020 WL 5798274, at *7 (dismissing CFAA claim at pleadings stage where the plaintiffs were "on notice" of the challenged practice); *see* Mot. 18.

### 3. Plaintiffs' Failure to Plead CFAA-Qualifying "Damage" and Concession of HP's Authorization to Access Their Printers Dooms Their Section 1030(a)(5)(A) Claim

Plaintiffs' theory that HP caused "damage without authorization" to their printers, in violation of Section 1030(a)(5)(A), also is not plausible. As an initial matter, Plaintiffs fail to identify any facts that satisfy the "damage" element of this claim. CFAA-qualifying "damage" is not the same as "damages"; the former "covers harm to data and information," while the latter "refers to monetary harms sustained by the plaintiff." *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 954, 961 (N.D. Cal. 2014). Plaintiffs' recitation of the *monetary harm* they allegedly sustained as a result of the firmware updates therefore does nothing to substantiate this element of their claim. *See* Opp. 7–8. For this same reason, Plaintiffs' argument that the fact they "purchase[d] HP's new products against their wishes only underscores ... that [they] indeed incurred *damage*" misses the mark. *Id.* 8.

Plaintiffs are also wrong that HP "proposes a different definition" of "damage" than the one in the statute. Opp. 7; *see* 18 U.S.C. § 1030(e)(8) (defining "damage" as "impairment to the integrity or availability of data, a program, a system, or information"). In fact, just last month the Supreme Court held that the statutory term "damage" "focus[es] on *technological harms* … to computer systems and data." *Van Buren*, 141 S.Ct. at 1659–60 (emphasis added). The Court reasoned that "*limiting* 'damage' … in this way [*i.e.*, to "technological harms"] makes sense" because the CFAA is "aimed at preventing the typical consequences of hacking." *Id.* at 1660 (emphasis added) (finding the "damage" element

not satisfied because the defendant "did not impair the 'integrity or availability' of data" or "otherwise harm the database system"); *see also NetApp, Inc. v. Nimble Storage, Inc.*, 41 F. Supp. 3d 816, 834 (N.D. Cal. 2014) ("damage" means physical "harm to computers or networks," either by destroying them or rendering them less secure). *Plaintiffs* are therefore the ones proposing a different definition than the one in the statute. *See* Opp. 8 (arguing that CFAA-qualifying "damage" means "any diminution in the completeness or usability of the data on a computer system"). Under the correct definition, Plaintiffs' Section 1030(a)(5)(A) claim fails as a matter of law. Indeed, rather than allege that any data, program, system, or information service was harmed in any way, or that their printers ceased to function, Plaintiffs expressly plead that their printers continued functioning with replacement cartridges. *See* TAC ¶¶ 97, 123 ("Lynch ... [got] his printer working again" after "purchas[ing] a new set of HP cartridges"). This is fatal to Plaintiffs' Section 1030(a)(5)(A) claim.

Even assuming that the TAC did allege CFAA-qualifying "damage," it fails to allege that such damage was "without authorization." Plaintiffs contend that the "damage could not have been authorized because Plaintiffs had no knowledge of nor consented to the transmission." Opp. 8. But the TAC expressly pleads that HP "has the exclusive ability to install firmware updates to the printers it sells." TAC ¶ 4. The only plausible reading of that allegation is that HP's "ability" is "exclusive" because it is the only entity *with authorization* to "install firmware updates." Even setting aside this dispositive concession, Plaintiffs' opposition confirms that their theory of authorization is contrary to Supreme Court (and Ninth Circuit) precedent because it rests on their own, personal expectations and preferences. Opp. 14 (arguing that HP acted without authorization because it "fully disregards Plaintiffs' and Class members preferences"); *see Van Buren*, 141 S. Ct. at 1658 (disagreeing with the government that access or use restrictions have any bearing on liability under the CFAA); *United States v. Nosal*, 676 F.3d 854, 857 (9th Cir. 2012) (en banc) (holding that to interpret authorization according to an owner's expectations would "expand the scope of criminal liability to everyone who uses a computer in violation of computer use restrictions"). This is also fatal to Plaintiffs' claim.

Plaintiffs go on to argue that the public disclosures on HP's website were not sufficient to put Plaintiffs on "notice" of the dynamic security feature because they revealed only "a possibility of incapability as an *unintended* consequence," whereas in reality, "HP *purposefully* uses firmware

Gibson, Dunn & Crutcher LLP

updates ... [to] disable[] its competitors' supplies." Opp. 9–10; *see also id.* 14–15. This argument misses the mark. The relevant inquiry is whether the disclosures put Plaintiffs on notice of *the potential effect of the updates*, not whether the disclosures revealed HP's supposed *motivation for* pushing the updates. *See Parziale II*, 2020 WL 5798274, at *7 (holding that the same dynamic-security disclosure at issue here put the plaintiff "on notice of the potential firmware update and its effects" and negated the "damage without authorization" element of his Section 1030(a)(5)(A) claim); *In re Apple Inc. Device Performance Litig.*, 347 F. Supp. 3d 434, 452 (N.D. Cal. 2018) (analyzing whether the defendant's software update "notification" or "release notes" made "any mention of" the complained of "effect" when analyzing the "damage without authorization" element).

## E. Plaintiffs' CDAFA Claims Fail For Failure to Plead That HP Circumvented Technological Barriers

Plaintiffs' CDAFA claims should be dismissed because the TAC does not allege that the challenged practices circumvented any *technical barriers*. *See Brown v. Google LLC*, No. 20-CV-03664-LHK, 2021 WL 949372, at *17 n.7 (N.D. Cal. Mar. 12, 2021); *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1217 (N.D. Cal. 2014) ("[I]ndividuals may only be subjected to liability for acting 'without permission' under [the CDAFA] if they access or use a computer … in a manner that overcomes technical or code-based barriers."); *Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018, 1053 (N.D. Cal. 2014) ("Courts in this district have interpreted 'without permission' to mean 'in a manner that circumvents technical or code based barriers ….'"). In response, Plaintiffs claim the Ninth Circuit rejected the circumvention requirement in *United States v. Christensen*, 828 F.3d 763 (9th Cir. 2015). That is wrong. *Christensen* held that the "term 'access' as defined in the [CDAFA] includes logging into a database with a valid password and subsequently taking, copying, or using the information in the database improperly." 828 F.3d at 789. In other words, "*Christensen* still required that a barrier be circumvented—the barrier in that case was a system of password protection." *Brown*, 2021 WL 949372, at *17 n.7. The Ninth Circuit did not eliminate the circumvention requirement that is well established in this circuit, and Plaintiffs failed to plead it—thus, warranting dismissal.

In addition, other than opposing HP's request for judicial notice, Plaintiffs do not address HP's argument that its public disclosures regarding the effects of dynamic security established "implied authorization to access" their printers. This further undermines Plaintiffs' CDAFA claim. *Facebook,*

Gibson, Dunn & Crutcher LLP

Inc. v. Power Ventures, Inc., 844 F.3d 1058, 1069 (9th Cir. 2016) ("Because [defendant] had implied authorization to access [plaintiff]'s computers, it did not, at first, violate the [CDAFA].").

## F. Plaintiffs' Concession That HP Had Authorization to Access Their Printers Is Fatal to Their Claim For Trespass to Chattels

Plaintiffs also fail to adequately plead trespass to chattels, which requires that HP "intentionally and without authorization interfered with [their] possessory interest in" their printers and that HP's "unauthorized use proximately" caused them damage. *eBay, Inc. v. Bidder's Edge, Inc.*, 100 F. Supp. 2d 1058, 1069–70 (N.D. Cal. 2000). Plaintiffs' trespass theory fails to the extent it is predicated on the firmware updates because HP did not act "without authorization." Mot. 23–24; *see, e.g.*, *Parziale II*, 2020 WL 5798274, at *7 (dismissing trespass to chattels claim with prejudice where HP's website put the plaintiff "on notice of [its] ability to interfere" with his printer). In response, Plaintiffs recycle the same flawed arguments discussed above, i.e., that "ability" is not "authorization" and that the disclosures are not judicially noticeable. Plaintiffs go on to argue that they suffered an injury arising out of the firmware updates, Opp. 20–21, but HP did not move to dismiss this claim on that basis.

HP also cannot be liable for trespass to chattels based on its alleged data-collection practice in light of the disclosure on HP's Privacy Page, and the fact that the TAC does not allege that this practice injured Plaintiffs *at all*. Mot. 23–24; *see Parziale II*, 2020 WL 5798274, at *7; *In re iPhone App. Litig.*, 844 F. Supp. 2d 1040, 1069 (N.D. Cal. 2012) ("[T]respass without harm … is not actionable.").

## G. Plaintiffs' Request for Injunctive Relief Should Be Stricken Because Plaintiffs Are Not Realistically Threatened by a Repetition of the Alleged Violation

Even if the Court permits some of Plaintiffs' claims to survive, it should strike the plea for injunctive relief from the TAC. It is blackletter law that a plaintiff lacks Article III standing to seek an injunction unless it is "realistically threatened by a repetition of the violation." *Gest v. Bradbury*, 443 F.3d 1177, 1181 (9th Cir. 2006). Plaintiffs' argument that they have alleged "a likelihood of future injury because they would have continued to purchase less expensive third-party ink or toner; however, because of HP's conduct they must instead incur additional costs to purchase HP's more expensive cartridges," Opp. 23, confirms that Plaintiffs lack standing to pursue an injunction requiring HP to cease transmitting firmware updates for two independent reasons.

First, Plaintiffs' reference to the need to "incur additional costs to purchase HP's more

14

Gibson, Dunn & Crutcher LLP

HP INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS AND/OR STRIKE PLAINTIFFS' THIRD AMENDED COMPLAINT -- CASE NO. 5:20-CV-09157-SVK

expense cartridges," *id.*, makes clear that money damages would make Plaintiffs whole. As a result, Plaintiffs' legal remedies are not inadequate, and their request for an injunction fails as a matter of law. *Sonner*, 971 F.3d at 842. Second, Plaintiffs' proclaimed intention to "purchase less expensive third-party ink or toner," Opp. 23, is dependent on the threat of future alleged wrongful firmware updates *being completely eliminated*. *See* TAC ¶ 7 ("Plaintiffs would continue to use their Class Printers with non-HP toner supply cartridges if given the opportunity to do so without the risk of future malware transmissions from HP."). Thus, the threat of repetition in *Parziale*, Opp. 23, is absent here. *Parziale I*, 445 F. Supp. 3d at 452 (declining to strike request for injunction where the plaintiff merely alleged that "he still owns the printers at issue and that HP continues to use remote firmware updates to modify its printers"). Moreover, in *Parziale*, Judge Davila subsequently dismissed *the entire case*—including the plaintiff's request for injunctive relief—with prejudice. *Parziale II*, 2020 WL 5798274, at *8.

Plaintiffs' request for an injunction requiring HP to cease collecting data on cartridge type should also be stricken because, as discussed in Section II.B, the TAC does not plead that Plaintiffs have suffered an injury-in-fact arising out of that practice, let alone that Plaintiffs are "realistically threatened by a repetition of the violation." *Gest*, 443 F.3d at 1181; *see Bates v. UPS, Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) ("The standing formulation for a plaintiff seeking prospective injunctive relief is simply one implementation of [the Supreme Court's standing] requirements."). Plaintiffs do not respond to this argument at all in their opposition. The requested injunction should be dismissed.

## H. Dismissal With Prejudice Is Warranted Because Plaintiffs Have Repeatedly Failed to Cure the Deficiencies in Their Pleading

Plaintiffs' only response to HP's request for dismissal with prejudice is a citation to a case that stands for the unremarkable proposition that leave to amend should be freely granted. Opp. 25. Plaintiffs have not, however, shown why leave to amend is appropriate under the particular circumstances of this case, particularly in light of Plaintiffs' repeated failure to cure the deficiencies in their pleading after multiple opportunities to do so. *Cf. Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) ("[W]here the plaintiff has previously been granted leave to amend …, the district court's discretion to deny leave to amend is particularly broad.").

## III. CONCLUSION

For the foregoing reasons, the TAC should be dismissed with prejudice.

Gibson, Dunn & Crutcher LLP

1

Dated: July 14, 2021                                Respectfully submitted,

2

GIBSON, DUNN & CRUTCHER LLP

3

By:  /s/ Samuel Liversidge
        Samuel Liversidge

4

Attorneys for Defendant HP INC.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

16

HP INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS AND/OR STRIKE PLAINTIFFS' THIRD AMENDED
COMPLAINT -- CASE NO. 5:20-CV-09157-SVK