1

2

3

4                    UNITED STATES DISTRICT COURT

5                   NORTHERN DISTRICT OF CALIFORNIA

6

7    MOBILE EMERGENCY HOUSING              Case No.  20-cv-09157-SVK
     CORP., et al.,
8
                     Plaintiffs,
9                                          **ORDER GRANTING IN PART AND
          v.                               DENYING IN PART DEFENDANT'S
10                                         MOTION TO DISMISS PLAINTIFFS'
                                           THIRD AMENDED COMPLAINT**
11   HP, INC.,
                                           Re: Dkt. Nos. 44, 45, 46, 47, 49, 50
                     Defendant.
12

13          Defendant HP, Inc. d/b/a HP Computing and Printing Inc. ("Defendant" or "HP") moves to

14   dismiss Plaintiffs Mobile Emergency Housing Corp. ("Mobile Emergency"), Track Rat

15   Enterprises, Inc. d/b/a Performance Automotive & Tire Center ("Performance Automotive"), and

16   David Justin Lynch's ("Lynch") (collectively, "Plaintiffs") Third Amended Complaint ("TAC")

17   (Dkt. 42) pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter

18   jurisdiction, Rule 12(b)(6) for failure to state a claim upon which relief can be granted, and/or

19   move to strike Plaintiffs' requests for injunctive relief pursuant to Rule 12(f).  Dkt. 44.  The

20   Parties have consented to the jurisdiction of a magistrate judge.  Dkts. 15, 21, 33.

21          Pursuant to Civil Local Rule 7-1(b), the Court deems the motion to dismiss suitable for

22   determination without oral argument.  Having carefully considered the Parties' submissions, the

23   case file, and the relevant law, and for the reasons discussed below, the Court **GRANTS IN**

24   **PART AND DENIES IN PART** Defendant's motion to dismiss the TAC.

25   **I.      BACKGROUND**

26          This discussion of the background facts is based on the allegations of Plaintiffs' TAC.

27   Plaintiffs allege that HP transmits firmware updates without authorization to HP printers through

28   the Internet.  Dkt. 42 ¶¶ 1, 28.  Plaintiffs further allege that these firmware updates act as malware,

"adding, deleting or altering code, diminishing the capabilities of HP printers, and rendering the competitors' supply cartridges incompatible with HP printers." *Id.* ¶¶ 1, 24, 26. Further, while users are told that the HP printers have a "supply problem," HP intentionally caused the issue by sending this malware to render third-party supplies incompatible with HP products. *Id.* ¶¶ 5, 24, 26, 29, 30. Plaintiffs allege that as a result of this malware, HP printer owners are either forced to buy HP cartridges or they cannot use their printers until third parties can develop workarounds in their products. *Id.* ¶ 3. Plaintiffs also allege that "HP uses this firmware update process to conceal that it is actually collecting data on whether consumers are using HP or its competitors' cartridges" without their consent. *Id.* ¶¶ 1, 27.

Plaintiff Mobile Emergency, through its authorized representative, purchased an HP Color LaserJet Pro M254 for $238.96 on August 21, 2019 from a Staples store in New York. *Id.* ¶ 35. The printer came with an initial set of model 202 HP-brand toner supply cartridges. *Id.* ¶ 37. When those supply cartridges were exhausted, Mobile Emergency purchased a set of model 202 Greensky toner supply cartridges that were advertised to be compatible with this HP printer from Amazon.com for $52.49. *Id.* ¶ 39. Plaintiffs allege that on or around November 18, 2020, HP sent or activated a transmission to HP printers, which "altered the code and data" of the printer, rendering the printer incompatible with third-party toner supply cartridges, including the Greensky cartridges purchased by Mobile Emergency. *Id.* ¶ 40. HP did not notify Mobile Emergency of the transmission, and Mobile Emergency only discovered this when the authorized representative attempted to print a document, received an error message stating "[s]upply problem," and the printer ceased printing. *Id.* ¶¶ 41, 42. On December 1, 2020, Mobile Emergency purchased a black HP toner cartridge for $71.68 from Staples to replace the Greensky cartridges. *Id.* ¶ 44.

Plaintiff Performance Automotive, through its authorized representative, used rewards points to purchase an HP Color LaserJet Pro MFP M281fdw Laser Multifunction Printer from HP in November 2018. *Id.* ¶¶ 46-47. The printer came with an initial set of model 202 HP-brand toner supply cartridges. *Id.* ¶ 49. When those supply cartridges were exhausted, Performance Automotive purchased model 202 GPC Image, Linkyo, and Greensky toner cartridges for approximately $60 per set that were advertised to be compatible with this HP printer from

2

United States District Court
Northern District of California

1    Amazon.com.  *Id.* ¶ 51.  Plaintiffs allege that on or around November 18, 2020, HP sent or

2    activated a transmission to HP printers, which "altered the code and data" of the printer, rendering

3    the printer incompatible with third-party toner supply cartridges, including the GPC Image,

4    Linkyo, and Greensky cartridges purchased by Performance Automotive.  *Id.* ¶ 52.  HP did not

5    notify Performance Automotive of the transmission, and Performance Automotive only discovered

6    the effects of the transmission when it attempted to print a document and received an error

7    message stating "[s]upply problem."  *Id.* ¶ 53.  Performance Automotive's printer ceased printing

8    and when its authorized representative checked the printer, he saw that the BIOS version had been

9    changed.  *Id.* ¶ 54.  The authorized representative researched the issue and discovered that HP Had

10   issued a "Bios Update," which caused the printer to cease working.  *Id.* ¶ 55.  As a result of the

11   update, Performance Automotive's printer and supply cartridges were disabled, and it purchased a

12   printer from a different printer manufacturer.  *Id.* ¶ 56.

13        Plaintiff Lynch purchased an HP Color LaserJet Pro M254dw Wireless Printer for $239.25

14   from Best Buy on March 3, 2020.  *Id.* ¶ 58.  The printer came with an initial set of model 202 HP-

15   brand toner supply cartridges.  *Id.* ¶ 59.  When those supply cartridges were exhausted, Lynch

16   purchased a set of high-capacity model 202 toner cartridges for $215.46 from Express-Inks that

17   were advertised to be compatible with this HP printer.  *Id.* ¶ 60.  In January 2021, HP sent or

18   activated a transmission which altered the code and data of the printer, rendering the printer

19   incompatible with third-party toner supply cartridges, including the Express-Inks cartridges

20   purchased by Lynch.  *Id.* ¶ 62.  HP did not notify Lynch of the transmission, and Lynch only

21   discovered the effects of the transmission when he attempted to print a document, his printer

22   ceased printing, and he received an error message stating "[s]upply problem."  *Id.* ¶¶ 63-65.  The

23   printer also displayed an error message stating that "[t]he indicated supplies are not

24   communicating correctly with the printer.  Try reinstalling the supplies.  If the problem persists,

25   replace the supplies to continue printing."  *Id.* ¶ 66.  As a result of the transmission, Lynch

26   purchased new HP cartridges from Amazon.com to get the printer operating again.  *Id.* ¶¶ 68-69.

27        Plaintiffs bring this action to seek damages and injunctive and other equitable relief as a

28   class action on behalf of themselves and the following classes:

3

<u>Device Owner Class</u>: All persons and entities in the United States who own a Class Printer.[1]

<u>Damages Subclass</u>: All persons and entities in the United States who own a Class Printer that displayed a diagnostic error, such as "Supply Problem" or other similar error code, as a result of HP's transmission of a firmware update.

<u>State Consumer Subclass</u>: All persons and entities residing in California and States with a similar consumer protection statute to Cal. Civ. Code 1770(a)(15), who own a Class Printer that displayed a diagnostic error, such as "Supply Problem" or other similar error code, as a result of HP's transmission of a firmware update.

*Id.* ¶ 74.

## II.    REQUEST FOR JUDICIAL NOTICE AND INCORPORATION BY REFERENCE

### A.    Legal Standard

There are two doctrines that allow district courts to consider material outside the pleadings without converting a motion to dismiss into a motion for summary judgment: judicial notice under Federal Rule of Evidence 201 and incorporation by reference. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018), *cert. denied sub nom. Hagan v. Khoja*, — U.S. —, 139 S. Ct. 2615, 204 L. Ed. 2d 264 (2019). "The court may judicially notice a fact that is not subject to reasonable dispute." Fed. R. Evid. 201(b). A fact is "not subject to reasonable dispute" if it "is generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1)-(2). However, "[j]ust because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth." *Khoja*, 899 F.3d at 999.

Incorporation by reference is a judicially created doctrine that allows a court to consider certain documents as though they are part of the complaint itself. *Khoja*, 899 F.3d at 1002. "The doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Id.* A

---

[1] Plaintiffs allege that "[s]ubject to information learned in discovery, the Class Printers comprise HP Color LaserJet printers and all-in-one devices, in the following non-exhaustive list of products and product series: HP Color LaserJet Pro M254, HP Color LaserJet Pro MFP M280, HP Color LaserJet Pro MFP M281, and all other models affected by HP malware transmissions in the way described herein ('Class Printers')." Dkt. 42 ¶ 33.

defendant can seek to incorporate a document into the complaint "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (citations omitted).  While the "mere mention" of the existence of a document is insufficient to incorporate a document, it is proper to incorporate a document if the claim "necessarily depended" on them.  *Khoja*, 899 F.3d at 1002.

After a defendant offers such a document, the district court can treat the document as part of the complaint, and "thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)."  *Ritchie*, 342 F.3d at 908.  However, "[w]hile this is generally true, it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint."  *Khoja*, 899 F.3d at 1003.  Indeed, using extrinsic documents to "resolve competing theories against the complaint risks premature dismissals of plausible claims that may turn out to be valid after discovery" and it is "improper to do so only to resolve factual disputes against the plaintiff's well-pled allegations in the complaint."  *Id.* at 998, 1014.

### B.    Analysis

Defendant asks the Court to take judicial notice of or incorporate by reference the following documents:

> (1) The "HP Printers – Dynamic Security Enabled Printers" webpage ("Dynamic Security Page"), as it appeared on November 11, 2020 (Dkt. 45-3 Exhibit A);
>
> (2) The "Specs" tab of the HP store page for the HP Color LaserJet Pro MFP M281fdw printer model, as it appeared on April 22, 2018 (Dkt. 45-4 Exhibit B);
>
> (3) The "Specs" tab of the HP store page for the HP Color LaserJet Pro M254dw printer model, as it appeared on March 18, 2018 (Dkt. 45-5 Exhibit C);
>
> (4) The "HP Color LaserJet Pro – 10.xx and Supplies Messages" webpage ("Troubleshooting Page") (Dkt. 45-6 Exhibit D);
>
> (5) The online message board (Dkt. 45-7 Exhibit E); and
>
> (6) The "What Data We Collect" section of the "HP Privacy Statement" webpage ("Privacy Statement"), as it appeared on October 30, 2018 (Dkt. 45-8 Exhibit F).

United States District Court
Northern District of California

United States District Court
Northern District of California

Defendant asks the Court to take judicial notice of the Dynamic Security Page (Dkt. 45-3), the store pages for the HP Color LaserJet Pro MFP M281fdw (Dkt. 45-4) and the HP Color LaserJet Pro M254dw (Dkt. 45-5), and the Privacy Statement (Dkt. 45-8), because courts in this circuit "have routinely taken judicial notice of content from the Internet Archive's Wayback Machine."  Dkt. 45 at 5 (citing *Parziale v. HP, Inc.*, No. 5:19-cv-05363-EJD, 2020 WL 5798274, at *3 (N.D. Cal. Sept. 29, 2020) ("*Parziale II*")).  Defendant also argues that at a minimum, the Court should take judicial notice that HP consumers are on notice that cartridges that do not have a HP chip or are modified may not function and even if they function for a period of time, they may cease to function, as this notice was available on the Dynamic Security Page before the firmware updates at issue were allegedly transmitted.  *Id.*  Further, Defendant contends that regarding the two store pages, the Court should take judicial notice of the fact that HP's notice to consumers that these printers are "[d]ynamic security enabled printer[s]" and that "[c]artridges using a non-HP chip may not work, and those that work today may not work in the future" was publicly available on the respective store pages before Plaintiffs purchased their printers.  *Id.*  Finally, Defendant argues that at a minimum, the Court should take judicial notice of the fact that at all relevant times, the Privacy Statement advised consumers that HP "automatically" "collect[s] product usage data such as . . . ink or toner brand."  *Id.*

Plaintiffs oppose Defendant's request for judicial notice of each of these documents, arguing that the webpages are irrelevant and not relied upon in the TAC.  Dkt. 46 at 2.  Further, Plaintiffs argue that they do not allege "that they viewed these webpages or anything stated on HP's website, and thus did not have reason to view HP's webpages." *Id.* at 3.  Plaintiffs argue that "[n]o Plaintiff purchased their printer on HP's website." *Id.* at 4.  Plaintiffs distinguish this case from *Parziale II*, arguing that in that case, the complaint heavily referred to the store page and plaintiff alleged that he relied on the information on the store page in deciding to make his purchase.  *Id.* at 3.  Plaintiffs also argue that "[m]erely because something is 'available' online is not a basis for charging a plaintiff with notification of it." *Id.* at 3-4.

The Court finds that these webpages are publicly available pages whose accuracy cannot reasonably be questioned.  The Court takes judicial notice of these webpages for the fact that

1    Defendant made these statements, but not for the truth of those statements.  The request for

2    judicial notice of Exhibits A, B, C, and F are **GRANTED**.

3         Defendant asks the Court to take judicial notice of the Troubleshooting Page (Dkt. 45-6)

4    because it is posted on a publicly available website.  Dkt. 45 at 6.  Additionally, Defendant

5    contends that the Troubleshooting Page is incorporated by reference in the TAC, because Plaintiffs

6    allege that after the error message appeared, Mobile Emergency's authorized representative

7    "searched HP's website [to] check for a solution . . . but could find only a recommendation to

8    replace the cartridge with an HP-branded cartridge."  *Id.* (citing Dkt. 42 ¶ 43).  Defendant

9    contends that this allegation "is a clear reference to the Troubleshooting Page."  *Id.*  Plaintiffs

10   argue that paragraph 43 of the TAC stating "that [the authorized representative] searched HP's

11   website to check for a solution is not a clear reference to the Troubleshooting Page" and should

12   not be considered.  Dkt. 46 at 5.  The Court finds that the Troubleshooting Page is publicly

13   available, and its accuracy cannot reasonably be questioned.  However, the Court finds that it is

14   unclear whether Plaintiffs are referring to this page in its TAC and the claim does not "necessarily

15   depen[d]" on the existence of this document.  *See Khoja*, 899 F.3d at 1002.  Accordingly, request

16   for judicial notice of Exhibit D is **GRANTED** and the request to incorporate by reference is

17   **DENIED**.

18        Finally, Defendant asks the Court to take judicial notice of the online message board (Dkt.

19   45-7), arguing that it is referenced repeatedly in the TAC and incorporated by reference.  Dkt. 45

20   at 7 (citing Dkt. 42 ¶ 71, nn.13-16).  The Court does not rely on this exhibit in evaluating

21   Defendant's motion to dismiss.  Accordingly, Defendant's request for judicial notice and request

22   to incorporate by reference are **DENIED AS MOOT**.

23   **III.    MOTION TO DISMISS AND/OR STRIKE**

24        **A.    Legal Standard**

25             **1.    Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(1)**

26        A defendant may move to dismiss an action for lack of subject matter jurisdiction under

27   Federal Rule of Civil Procedure 12(b)(1).  Article III standing is a threshold requirement for

28   federal court jurisdiction.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60, 112 S. Ct. 2130,

United States District Court
Northern District of California

7

119 L. Ed. 2d 351 (1992).  The party seeking standing must show that "(1) he or she has suffered an injury in fact that is concrete and particularized, and actual or imminent; (2) the injury is fairly traceable to the challenged conduct; and (3) the injury is likely to be redressed by a favorable court decision." *Salmon Spawning & Recovery Alliance v. Gutierrez*, 545 F.3d 1220, 1225 (9th Cir. 2008) (citing *Lujan*, 504 U.S. at 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351).

A party moving to dismiss under Rule 12(b)(1) may make a facial challenge by asserting that "the allegations contained in [the] complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  The Court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. 490, 501, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975).  "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss, we presume that general allegations embrace those specific facts that are necessary to support the claim." *Lujan*, 504 U.S. at 561, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (internal quotation marks and citation omitted).

### 2.     Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)

Under Rule 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. In ruling on a motion to dismiss, the court may consider only "the complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice." *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008) (citation omitted).  In deciding whether the plaintiff has stated a claim, the court must assume the plaintiff's allegations are true and draw all reasonable inferences in the plaintiff's favor. *Usher v. City of L.A.*, 828 F.2d 556, 561 (9th Cir. 1987).  However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).

To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  This "facial plausibility" standard requires the

1   plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted

2   unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

3       Courts should freely give leave to amend unless the district court determines that it is clear

4   that the complaint's deficiencies cannot be cured by amendment. *Lucas v. Dep't of Corr.*, 66 F.3d

5   245, 248 (9th Cir. 1995). When amendment would be futile, the court may dismiss without leave

6   to amend. *Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996).

7       **B.    Analysis**

8       Plaintiffs allege that due to Defendant's unlawful conduct, Plaintiffs' printers and supply

9   cartridges were "rendered incompatible and inoperable." Dkt. 42 ¶ 7. Further, Plaintiffs allege

10  that they "would not have purchased an HP printer had they known HP was engaged in and would

11  engage in [this] conduct." *Id.* Finally, Plaintiffs allege that as a result of HP's misconduct, they

12  "sustained damages, including but not limited to the loss of the value of the supply cartridges they

13  purchased that are no longer compatible with their printers, loss of time and effort to diagnose the

14  damage to their printers and to determine what remedial measures to take, the need to purchase

15  expensive HP supply cartridges, uncertainty in the functioning of their printers and supply

16  cartridges, and future remedial costs." *Id.* From these allegations, Plaintiffs assert eight claims:

17  (1) violation of the Computer Fraud and Abuse Act; (2) violation of the California

18  Comprehensive Computer Data Access and Fraud Act; (3) violation of the California False

19  Advertising Law; (4) violation of the California Unfair Competition Law under the fraudulent

20  prong; (5) violation of the California Unfair Competition Law under the unfair prong; (6) violation

21  of the California Unfair Competition Law under the unlawful prong; (7) trespass to chattels; and

22  (8) violation of the California Consumers Legal Remedies Act.

23      Defendant asserts that Plaintiffs' data-collection claims fail because Plaintiffs do not allege

24  that they suffered any injury as a result of Defendant's alleged data collection. Dkt. 44 at 12, 18-

25  19. Further, Defendant asserts an overarching argument that the TAC should be dismissed,

26  because Defendant's privacy policy advises consumers that Defendant "automatically" collects

27  "product usage data such as . . . ink or toner brand." *Id.* Defendant also contends that it publicly

28  discloses on its webpages that its printers are "dynamic security enabled" and that "[c]artridges

United States District Court
Northern District of California

9

1   using a non-HP chip may not work, and those that work today may not work in the future." *Id.* at

2   12-13.  Defendant also asserts arguments as to why certain claims individually should be

3   dismissed.  The Court turns to the arguments below.

### 1.   Article III Standing

5   "[T]he Court notes at the outset that the threshold question of whether Plaintiffs have

6   standing and the Court has jurisdiction is distinct from the merits of Plaintiffs' claim." *Fraley v.*

7   *Facebook, Inc.*, 830 F. Supp. 2d 785, 796 (N.D. Cal. 2011) (quoting *Maya v. Centex Corp.*, 658

8   F.3d 1060, 1068 (9th Cir. 2011)) (internal quotation marks omitted).  "Rather, the jurisdictional

9   question of standing precedes, and does not require, analysis of the merits." *Maya*, 658 F.3d at

10  1068 (quoting *Equity Lifestyle Props., Inc. v. Cnty. of San Luis Obispo*, 548 F.3d 1184, 1189 n.10

11  (9th Cir.2008)) (internal quotation marks omitted).  "At the same time, it is well established that

12  the actual or threatened injury required by Article III may exist solely by virtue of statutes creating

13  legal rights, the invasion of which creates standing." *Fraley*, 830 F. Supp. 2d at 796 (citing *Warth*

14  *v. Seldin*, 422 U.S. 490, 500, 95 S.Ct. 2197, 45 L. Ed. 2d 343 (1975)) (internal quotation marks

15  omitted).  Accordingly, "a plaintiff may be able to establish constitutional injury in fact by

16  pleading violation of a right conferred by statute, so long as [he] can allege that the injury [he]

17  suffered was specific to [him]." *Id.*

18  Defendant contends that Plaintiffs' data-collection claims fail due to lack of standing to the

19  extent that they are predicated on their data collection theory. Dkt. 44 at 18.  Specifically,

20  Defendant argues that Plaintiffs' theory of injury that HP uses the data collected to punish its

21  customers is theoretical and is not an injury in fact.  *Id.* at 18-19.  Without assessing the merits of

22  Plaintiffs' claims, the Court finds that Plaintiffs allege that Defendant violated their individual

23  rights and that they suffered injuries as a result of Defendant's conduct.  *See* Dkt. 42 ¶¶ 86-157.

24  Additionally, the Court finds that Plaintiffs' alleged injuries are "concrete and particularized."

25  The TAC contains specific allegations describing what losses Plaintiffs suffered, including being

26  forced to purchase HP-authorized cartridges, purchasing other printers, paying to dispose of their

27  unused supplies, decreased market value of the printers, as well as money, time, and labor spent to

28  research and fix the issues.  *See id.* ¶¶ 97-99, 108-111, 121, 133, 141-42, 148, 155.  "[A]s the

United States District Court
Northern District of California

Ninth Circuit recently reminded, 'standing analysis, which prevents a claim from being adjudicated for lack of jurisdiction, [may not] be used to disguise merits analysis, which determines whether a claim is one for which relief can be granted if factually true." *Fraley*, 830 F. Supp. 2d at 800 (quoting *Catholic League for Religious and Civil Rights v. City & Cnty. of S.F.*, 624 F.3d 1043, 1049 (9th Cir. 2010) (en banc)). "At this stage, the Court must presume 'that general allegations embrace those specific facts that are necessary to support the claim.'" *Id.* (citing *Lujan*, 504 U.S. at 561); *see also Ruiz v. Gap, Inc.*, 540 F. Supp. 2d 1121, 1126 (N.D. Cal. 2008) (denying motion to dismiss for lack of standing but noting that "[s]hould it become apparent that [plaintiff's] alleged injury is in fact too speculative or hypothetical, the Court will conclude, as it must, that [plaintiff] lacks standing"). The Court finds that Plaintiffs have set forth sufficient "general factual allegations of injury resulting from the defendant's conduct" to survive a 12(b)(1) motion to dismiss. *See Lujan*, 504 U.S. at 561. Accordingly, Defendant's motion to dismiss pursuant to Rule 12(b)(1) is **DENIED**.

### 2.   HP's Public Disclosures

Defendant first argues that several of Plaintiffs' claims fail to state a claim because Defendant's privacy policy advises consumers that Defendant "automatically" collects "product usage data such as . . . ink or toner brand." Dkt. 44 at 12. Defendant also contends that it publicly discloses on its webpages that its printers are "dynamic security enabled" and that "[c]artridges using a non-HP chip may not work, and those that work today may not work in the future." *Id.* at 12-13.

In the TAC, Plaintiffs allege that HP did not advise them of the unsolicited transmission that rendered their printers incompatible with third-party toner supply cartridges. Dkt. 42 ¶¶ 40-41, 52-53, 62-63. Further, Plaintiffs allege that "HP uses the firmware update process to conceal that it is actually collecting data on whether consumers are using HP or its competitors' cartridges." *Id.* ¶ 1. Additionally, in its opposition, Plaintiffs contend that no plaintiff visited any HP store page, any HP website at any relevant time, and did not rely on "any statements of HP that arguably could have put any of them on notice that automatic firmware updates might render a [] [p]rinter inoperable." Dkt. 47 at 14. In contrast, in *Parziale II*, the Court stated that plaintiffs

were expressly notified that cartridges using a non-HP chip may not work, concluding that

"Plaintiff was on notice of the potential firmware update and its effects." *Parziale II*, 2020 WL

5798274, at *7.  At the motion to dismiss stage, the Court is not prepared to find that Defendant's

statements, which Plaintiffs purport that they did not view or rely on, establish an absolute bar to

Plaintiffs' claims.  *Usher*, 828 F.2d at 561 ("On a motion to dismiss for failure to state a claim, the

court must presume all factual allegations of the complaint to be true and draw all reasonable

inferences in favor of the nonmoving party.") (citation omitted).

### 3.     Computer Fraud and Abuse Act ("CFAA") Claim

The CFAA provides that "[a]ny person who suffers damages or loss by reason of a

violation of this section may maintain a civil action against the violator to obtain compensatory

damages and injunctive relief or other equitable relief."  18 U.S.C. § 1030(g).  "The CFAA

prohibits a number of different computer crimes, the majority of which involve accessing

computers without authorization or in excess of authorization, and then taking specified forbidden

actions, ranging from obtaining information to damaging a computer or computer data." *LVRC*

*Holdings LLC v. Brekka*, 581 F.3d 1127, 1135 (9th Cir. 2009) (citing 18 U.S.C. §§ 1030(a)(1)-(7)

(2004)).  In the TAC, Plaintiffs allege that HP violated Sections 1030(a)(5)(A) and 1030(a)(2)(C).

Section 1030(a)(5)(A) creates liability for whomever "knowingly causes the transmission of a

program, information, code, or command, and as a result of such conduct, intentionally causes

damage without authorization, to a protected computer."  Section 1030(a)(2)(C) creates liability

for whomever "intentionally access a computer without authorization or exceeds authorized

access, and thereby obtains . . . information from any protected computer."

### a.     18 U.S.C. § 1030(a)(5)(A)

Defendant argues that Plaintiffs' Section 1030(a)(5)(A) claim fails because its firmware

updates do not meet the statutory definition of "damage."  Dkt. 44 at 29.  Specifically, Defendant

contends that "Plaintiffs do not allege that the updates destroyed their printers or data on them, or

made their printers less secure." *Id.*  Additionally, Defendant argues that Plaintiffs fail to allege

that the damage was "without authorization" as defined by the statute. *Id.* at 30.  Defendant argues

that Plaintiffs were also on notice that the printers are "[d]ynamic security enabled" and that

"[c]artridges using a non-HP chip may not work, and those that work today may not work in the future." *Id.*

Section 1030(e)(8) defines "damage" as "any impairment to the integrity or availability of data, a program, a system, or information." "[D]istrict courts in the Ninth Circuit have expressly held that, under the CFAA, it is not necessary for data to be physically changed or erased to constitute damage to that data." *NovelPoster v. Javitch Canfield Group*, 140 F. Supp. 3d 954, 962 (N.D. Cal. 2014). In the TAC, Plaintiffs allege that after the firmware update transmission, the printers and cartridges stopped printing, displayed a "[s]upply problem" error message, and the printer and supply cartridges were disabled. Dkt. 42 ¶¶ 1, 41-42, 44, 53-56, 63-67. The Court finds that this qualifies as an "impairment to the integrity or availability of . . . a system," as required to show damage under the CFAA. *See* 18 U.S.C. § 1030(e)(8). Further, Plaintiffs allege that Defendant knowingly transmitted the firmware update and intentionally caused damage, and Defendant did not have permission or authorization from Plaintiffs to make these updates. *See* Dkt. 42 ¶¶ 91-95. The Court finds that these allegations are sufficient at the pleading stage. *See San Miguel v. HP Inc.*, 317 F. Supp. 3d 1075, 1085-86 (N.D. Cal. 2018) ("To the extent Plaintiffs' CFAA claim is based upon subsection (A), the claim is cognizable because subsection (A) does not require accessing a computer 'without authorization.'"). Finally, as discussed in Section III.B.2., the Court declines to find at this stage that Plaintiffs were on notice that the printers are "[d]ynamic security enabled" and that "[c]artridges using a non-HP chip may not work, and those that work today may not work in the future."

### i.   CFAA's Loss Requirement

In order to bring a civil action under the CFAA, a person must "suffer[] damage or loss by reason of a violation" of the statute. 18 U.S.C. § 1030(g). Plaintiffs must allege "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value." *Id.* at § 1030(c)(4)(A)(i)(I). Loss is defined as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." *Id.* at § 1030(e)(11).

Defendant contends that Plaintiffs cannot satisfy this statutory "loss" requirement.  Dkt. 44 at 31.  Defendant argues that "the TAC does not plead that the alleged violation . . . resulted in any loss—much less loss of 'at least $5,000.'"  *Id.* at 32 (emphasis omitted).

Courts have found "that the legislative history of the CFAA revealed that Congress intended to permit aggregation of damages, so long as those damages arose from the same act by a defendant."  *In re Apple & AT & TM Antitrust Litigation*, 596 F. Supp. 2d 1288, 1308 (N.D. Cal. 2008) ("The Court therefore permits Plaintiffs to aggregate their individual damages to reach the $5,000 threshold.").  Plaintiffs allege that Mobile Emergency purchased its printer for $238.96 and purchased Greensky toner supply cartridges for $52.49.  Dkt. 42 ¶¶ 97-98.  Performance Auto purchased multiple sets of GPC Image, Linkyo, and Greensky supply cartridges for approximately $60 per set and then purchased a printer from another manufacturer.  *Id.* ¶ 97.  Lynch spent $239.25 for his HP printer, bought supply toner cartridges from Express-Inks for $215.46, and then spent $493.56 to get his printer working again.  *Id.* ¶¶ 97-98.  Plaintiffs allege that "[t]he firmware transmission also caused loss to Plaintiffs and Class members, as they had to expend money, time, and labor to investigate and repair disabled Class Printers."  *Id.* ¶ 99.  Further, Plaintiffs allege that "Defendant sent this transmission to at least ten thousand (10,000) Class Printers."  *Id.* ¶ 79.  In sum, the Court concludes that Plaintiffs sufficiently plead cognizable loss of at least $5,000 in value to satisfy CFAA's loss requirement.

### b.    18 U.S.C. § 1030(a)(2)(C)

Defendant argues that Plaintiffs' Section 1030(a)(2)(C) claim fails because Defendant did not act "without authorization" given that Plaintiffs concede "not only that HP had permission to access their printers, but also that HP had the 'exclusive ability' to access them."  Dkt. 44 at 29 (citing Dkt. 42 ¶ 4).  Defendant also argues that Plaintiffs' theory is not plausible given that HP makes public disclosures regarding its practice of "automatically" collecting "product usage data such as . . . ink or toner brand."  *Id.*

Here, Plaintiffs allege that "[o]n a repeated basis, HP accessed Plaintiffs' and Class members' Class Printers without their authorization or knowledge, and obtained information on the type of printer cartridge Plaintiffs and Class members were using."  Dkt. 42 ¶ 90.  However,

1    Plaintiffs also allege that HP "has the exclusive ability to install firmware updates to the printers it

2    sells that are connected to the Internet." *Id.* ¶ 4.  Accordingly, this subsection is not applicable in

3    light of Plaintiffs' allegations in the TAC regarding HP's ability to install firmware updates.  *See*

4    *San Miguel*, 317 F. Supp. 3d at 1085 (finding that certain subsections of 18 U.S.C. § 1030 cannot

5    apply because plaintiffs alleged that HP had "authorized access" and "can communicate with HP

6    printers after it sells them by updating their firmware").  Further, "Congress enacted the CFAA in

7    1984 primarily to address the growing problem of computer hacking, recognizing that '[i]n

8    intentionally trespassing into someone else's computer files, the offender obtains at the very least

9    information as to how to break into that computer system.'"  *U.S. v. Nosal*, 676 F.3d 854, 858 (9th

10   Cir. 2012) (en banc).  "The CFAA should be interpreted in a manner that 'maintains the CFAA's

11   focus on hacking rather than turning it into a sweeping Internet-policing mandate.'"  *San Miguel*,

12   317 F. Supp. 3d at 1085 (citing *Nosal*, 676 F.3d at 858).  The Court finds that Plaintiffs have not

13   alleged facts to show that HP accessed their printers "without authorization."

14         Accordingly, the motion to dismiss Plaintiffs' CFAA claim is **DENIED** to the extent that

15   the CFAA claim is based on Section 1030(a)(5)(A) and **GRANTED WITH LEAVE TO**

16   **AMEND** to the extent that the CFAA claim is based on Section 1030(a)(2)(C).

17         **4.     Comprehensive Computer Data Access and Fraud Act ("CDAFA")
                     Claim**

18
     California Penal Code § 502 imposes liability on a person who commits certain acts that

19
     constitute a public offense.  Cal. Penal Code § 502(c).  The relevant provision of the CDAFA

20
     provides that a person is liable who:

21

22         (1) Knowingly accesses and without permission alters, damages,
           deletes, destroys, or otherwise uses any data, computer, computer
23         system, or computer network in order to either (A) devise or execute
           any scheme or artifice to defraud, deceive, or extort, or (B)
24         wrongfully control or obtain money, property, or data.

25         (2) Knowingly accesses and without permission takes, copies, or
           makes use of any data from a computer, computer system, or
26         computer network, or takes or copies any supporting documentation,
           whether existing or residing internal or external to a computer,
27         computer system, or computer network.

28

United States District Court
Northern District of California

(3) Knowingly and without permission uses or causes to be used computer services.

(4) Knowingly accesses and without permission adds, alters, damages, deletes, or destroys any data, computer software, or computer programs which reside or exist internal or external to a computer, computer system, or computer network.

(5) Knowingly and without permission disrupts or causes the disruption of computer services or denies or causes the denial of computer services to an authorized user of a computer, computer system, or computer network.

\*\*\*

(7) Knowingly and without permission accesses or causes to be accessed any computer, computer system, or computer network.

Cal. Penal Code § 502(c)(1)-(5), (7).

Defendant contends that Plaintiffs have failed to allege that HP engaged in the conduct at issue "without permission." Dkt. 44 at 33. Specifically, Defendant argues that "Plaintiffs' admission that HP had the 'exclusive ability' to access their printers 'to install firmware updates'" as well HP's public disclosures regarding its dynamic security and data collection undermines Plaintiffs' theories. *Id.* Defendant also argues that Plaintiffs fail to allege that HP's data collection of firmware updates circumvented any technical barriers. *Id.*

The Ninth Circuit has held that § 502 is different from CFAA. *United States v. Christensen*, 828 F.3d 763, 789 (9th Cir. 2015). "In contrast to the CFAA, the California statute does not require unauthorized access. It merely requires knowing access." *Id.* (emphasis omitted). "Rather, whether there is liability under § 502 requires an analysis of the specific 'acts' that are alleged to constitute an offense and whether there was 'permission' to engage in those acts." *San Miguel*, 317 F. Supp. 3d at 1087. The Court finds that Plaintiffs' allegations that they received an allegedly false error message stating that the printer had a "supply problem" is sufficient to state a claim for violation of subsection (c)(1). Dkt. 42 ¶¶ 1, 5, 29, 30, 41, 53, 63, 65, 107. The Court also finds that Plaintiffs' allegations that Defendant collected data regarding the type of cartridges Plaintiffs were using to operate the printers is sufficient to state a claim for violation of subsections (c)(2) and (c)(3). *Id.* ¶¶ 1, 27, 107. The Court finds that Plaintiffs' allegations that Defendant transmitted firmware updates that disabled their printers is sufficient to state a claim for

16

1    violation of subsections (c)(4) and (c)(5).  *Id.* ¶¶ 1, 2, 6, 7,  24, 26, 42, 44, 54, 56, 64, 67, 107.  The

2    Court finds that the alleged violation of subsection (c)(7) fails because Plaintiffs acknowledge that

3    HP had permission to access their printers.  Accordingly, Defendant's motion to dismiss the

4    CDAFA claim is **DENIED** to the extent it is based upon subsections (c)(1)-(c)(5) and **GRANTED**

5    **WITHOUT LEAVE TO AMEND** to the extent it is based upon subsection (c)(7).  *See Allen v.*

6    *City of Beverly Hills*, 911 F.2d 367, 374 (9th Cir. 1990) (finding that "any further amendment to

7    the complaint would likely prove futile").

              **5.    False Advertising Law ("FAL"), Consumers Legal Remedies Act**
8                     **("CLRA"), and Unfair Competition Law ("UCL") Fraudulent Prong**
9                     **Claim**

10            Plaintiffs allege that HP made false and misleading statements and material omissions

11   regarding the compatibility of third-party ink cartridges with their printers in violation of the FAL,

12   CLRA, and the fraudulent prong of the UCL.  The FAL makes it unlawful for any person to

13   "induce the public to enter into any obligation" based on a statement that is "untrue or misleading,

14   and which is known, or which by the exercise of reasonable care should be known, to be untrue or

15   misleading."  Cal. Bus. & Prof. Code § 17500.  "Whether an advertisement is 'misleading' must

16   be judged by the effect it would have on a reasonable consumer."  *Davis v. HSBC Bank Nevada,*

17   *N.A.*, 691 F.3d 1152, 1161-62 (citing *Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th

18   Cir. 2008)).  "A reasonable consumer is the ordinary consumer acting reasonably under the

19   circumstances."  *Id.* at 1162 (internal quotation marks and citation omitted).  Similarly, the CLRA,

20   which prohibits "unfair methods of competition and unfair or deceptive acts or practices," are also

21   governed by the "reasonable consumer test."  Cal. Civ. Code § 1770; *In re Sony PS3 Other OS*

22   *Litigation*, 551 F. App'x 916, 920 (9th Cir. 2014).  "In order to state a cause of action under the

23   fraud prong of the UCL, a plaintiff must show that members of the public are likely to be

24   deceived," which is also "judged by the effect it would have on a reasonable consumer."  *In re*

25   *iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1073 (N.D. Cal. 2012) (citing *Schnall v. Hertz*

26   *Corp.*, 78 Cal. App. 4th 1144, 1167, 93 Cal. Rptr. 2d 439 (2000)); *Davis*, 691 F.3d at 1169

27   (quoting *Puentes v. Wells Fargo Home Mortg., Inc.*, 160 Cal. App. 4th 638, 72 Cal. Rptr. 3d 903,

28   909 (2008)).

United States District Court
Northern District of California

Defendant contends that Plaintiffs cannot pursue relief under the FAL and UCL and Lynch cannot pursue equitable relief under the CLRA because the alleged injuries can be remedied with monetary damages.  Dkt. 44 at 19-21.  In *Sonner v. Premier Nutrition Corp.*, the Ninth Circuit held that a plaintiff "must establish that she lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL and CLRA."  971 F.3d 834, 884 (9th Cir. 2020) (citations omitted).  "[E]quitable relief can come in different forms – for example, injunctive relief or restitution."  *Julian v. TTE Technology, Inc.*, No. 20-cv-02857-EMC, 2020 WL 6743912, at *4 (N.D. Cal. Nov. 17, 2020).  Further, "[t]he holding in *Sonner* applies only to 'equitable restitution for past harm under the UCL,' not to an injunction for future harm."  *Brooks v. Thomson Reuters Corporation*, No. 21-cv-01418-EMC, 2021 WL 3621837, at *10 (N.D. Cal. Aug. 16, 2021) (citing *Sonner*, 971 F.3d at 884) (finding that "Plaintiffs are not barred from seeking equitable relief in the form of an injunction under the UCL") (emphases omitted).  Plaintiffs' FAL, UCL, and CLRA claims seek equitable relief in the form of an injunction.  *See* Dkt. 42 ¶¶ 124-27, 134-35, 143-44, 150-51, 165-66.  Accordingly, Plaintiffs are not barred from seeking equitable relief under these claims.  *See Brooks*, 2021 WL 3621837, at *11 (noting that "[m]ore recently, . . . other courts have declined to apply *Sonner* to bar UCL claims for injunctive relief, recognizing that the prospect of paying damages is sometimes insufficient to deter a defendant from engaging in an alleged unlawful, unfair, or fraudulent business practice") (citations omitted).

Defendant argues that the information that Plaintiffs contend HP omitted regarding the dynamic security and the data collection was disclosed on various HP webpages, including the store pages and the Troubleshooting Page.  Dkt. 44 at 22-23.  As previously discussed in Section III.B.2., at the motion to dismiss stage, the Court declines to find that Plaintiffs were on notice that Defendant "automatically" collects "product usage data such as . . . ink or toner brand" or that the printers are "[d]ynamic security enabled" and that "[c]artridges using a non-HP chip may not work, and those that work today may not work in the future."

Defendant argues that it did not have a duty to make any disclosures regarding dynamic security and that "the duty to disclose is limited to a physical product defect relating to the central function of the product or a safety defect."  *Id.* at 22.  Defendant also argues that Plaintiffs' claims

United States District Court
Northern District of California

United States District Court
Northern District of California

1   under the FAL and fraudulent prong of the UCL based on the "supply problem" error message is

2   not viable because members of the public are not "likely to be deceived" by the message.  *Id.* at

3   24-25.  Further, Defendant argues that the error message also cannot support a CLRA violation

4   because the relevant provision prohibits representing that a replacement part is needed when in

5   fact it is not.  *Id.*  Finally, Defendant contends that Plaintiffs cannot establish that the error

6   message caused injury.  *Id.* at 25.

7         In the TAC, Plaintiffs allege that Defendant's printers displayed a "supply problem" error

8   message even though there was no supply problem, and it "intentionally misrepresented the cause

9   of the printer issue, suggesting that the third-party supply cartridges were broken when, instead,

10  the transmission simply disabled the supply cartridges that had previously functioned satisfactorily

11  and would have continued to function but for HP's transmission of the update."  Dkt 42 ¶¶ 5, 30,

12  41, 53, 63, 65-66.  "The alleged omission, that HP intentionally used a firmware update to disable

13  printers that were using non-HP ink cartridges, is arguably contrary to the explanations for the

14  printer failure stated in the error messages."  *San Miguel*, 317 F. Supp. 3d at 1090.  At the

15  pleading stage, the Court finds that Plaintiffs' allegations are sufficient to state fraud by omission

16  under the FAL, CLRA, and the UCL.  Accordingly, Defendant's motion to dismiss Plaintiffs'

17  claims for fraud by false and misleading statements or omission under the FAL, CLRA, and the

18  UCL are **DENIED**.

19              **6.        Remaining Unfair Competition Law ("UCL") Claims**

20        The UCL creates a cause of action for business practices that are: (1) unlawful; (2) unfair,

21  or (3) fraudulent.  Cal. Bus. & Profs. Code § 17200.  Each "prong" of the UCL provides a separate

22  and distinct theory of liability.  *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th

23  Cir. 2007).  Further, to have standing to pursue this claim, plaintiffs must show that they "lost

24  money or property" because of Defendant's conduct.  Cal. Bus. & Prof. Code § 17204; *see In re*

25  *Facebook, Inc., Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 804 (N.D. Cal. 2019).

26              **a.        Unfair Prong**

27        "The UCL also creates a cause of action for a business practice that is 'unfair' even if not

28  specifically proscribed by some other law."  *In re iPhone Application Litig.*, 844 F. Supp. 2d at

1072 (citing *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1143, 131 Cal. Rptr. 2d 29, 63 P.3d 937 (2003)).  "The UCL does not define the term 'unfair.'  In fact, the proper definition of 'unfair' conduct against consumers 'is currently in flux' among California courts." *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 866 (9th Cir. 2018) (quoting *Davis*, 691 F.3d at 1169). "Before *Cel-Tech*, courts held that 'unfair' conduct occurs when that practice 'offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'"  *Davis*, 691 F.3d at 1169 (citing *S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 85 Cal. Rptr. 2d 301, 316 (1999)).  The balancing test in *S. Bay Chevrolet* requires the Court to "weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim."  *Davis*, 691 F.3d at 1169 (internal quotation marks and citation omitted).  In *Cel-Tech*, the California Supreme Court established a more concrete definition of "unfair," defining it as "conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition."  20 Cal. 4th at 187, 83 Cal. Rptr. 2d 548, 973 P.2d 527.  Further, "any finding of unfairness to competitors under section 17200 [must] be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition."  *Id.* at 186-87.  While the *Cel-Tech* test did not apply to actions by consumers, "some courts in California have extended the *Cel-Tech* definition to consumer actions."  *Davis*, 691 F.3d at 1170.

Defendant contends that Plaintiffs fail to state a plausible claim under either test.  Dkt. 44 at 26.  Defendant argues that under the *South Bay* test, Plaintiffs fail to plausibly allege that the conduct at issue is sufficient to state a claim.  *Id.*   Specifically, Defendant argues that HP's dynamic security feature benefits customers, HP disclosed the third-party cartridge compatibility issue as well as the product usage data they collect, and the alleged omissions do not "rise to the level of immoral or substantially injurious conduct."  *Id.* at 26-27.  Defendant also argues that under the *Cel-Tech* test, Plaintiffs only allege in conclusory terms that HP's conduct "offends an established public policy."  *Id.*

As previously discussed in Section III.B.2., the Court declines to find that Plaintiffs were

on notice that Defendant "automatically" collects "product usage data such as . . . ink or toner brand" or that the printers are "[d]ynamic security enabled" and that "[c]artridges using a non-HP chip may not work, and those that work today may not work in the future" at the pleading stage. Further, at the motion to dismiss stage, the Court cannot say that the benefits from HP's business practices of collecting product usage data and its dynamic security feature outweighs the harm. *See In re iPhone Application Litig.*, 844 F. Supp. 2d at 1073 ("While the benefits of Apple's conduct may ultimately outweigh the harm to consumers, this is a factual determination that cannot be made at this stage of the proceedings."). Accordingly, Defendant's motion to dismiss on the unfair prong of the UCL is **DENIED.**

### b.    Unlawful Prong

"The unlawful prong of the UCL prohibits anything that can properly be called a business practice and that at the same time is forbidden by law." *In re iPhone Application Litig.*, 844 F. Supp. 2d at 1072 (citing *Cel-Tech*, 20 Cal.4th at 180) (internal quotation marks omitted)). Section 17200 of the Business and Professions Code permits injured customers to "borrow" violations of other laws and treat them as unfair competition that is independently actionable. *Id.*

In the TAC, Plaintiffs allege that "[e]ach of HP's malicious transmissions constitutes a violation of 18 U.S.C. § 1030(a)(5)(A) of the CFAA, Cal. Penal Code § 502, California's False Advertising Law, and trespass to chattels." Dkt. 42 ¶ 147. The Court has already considered the adequacy of Plaintiffs' allegations related to 18 U.S.C. § 1030(a)(5)(A) of the CFAA (Section III.B.3), Cal. Penal Code § 502 (Section III.B.4), and FAL (Section III.B.5). Further, the Court discusses trespass to chattels below in Section III.B.7. Accordingly, Plaintiffs' UCL claim survives to the extent it is based upon 18 U.S.C. § 1030(a)(5)(A) of the CFAA, the remaining subsections under Cal. Penal Code § 502, and the FAL. Thus, Defendant's motion to dismiss Plaintiffs' UCL claim under the unlawful prong is **DENIED**.

### 7.    Trespass to Chattels

The California Supreme Court has held that the principles underlying the tort of trespass to chattels for "unauthorized entry" apply to allegations of digital trespass. *See Intel Corp. v. Hamidi*, 30 Cal. 4th 1342, 1 Cal. Rptr. 3d 32, 71 P.3d 296 (2003). "[T]o prevail on a claim for

trespass based on accessing a computer system, the plaintiff must establish: (1) defendant intentionally and without authorization interfered with plaintiff's possessory interest in the computer system; and (2) defendant's unauthorized use proximately resulted in damage to plaintiff."  *eBay, Inc. v. Bidder's Edge, Inc.*, 100 F.Supp.2d 1058, 1069-70 (N.D. Cal. 2000).

Plaintiffs allege that HP "wrongfully, intentionally, and without authorization interfered with the ownership, possession, and use of the Class Printers and Plaintiffs' and Class members' supply cartridges" when it sent malware to the printers which disabled printers containing non-HP cartridges, rendering those cartridges and printers inoperable.  Dkt. 42 ¶ 154.  Additionally, Plaintiffs allege that HP also accessed the printers "without the users' knowledge or permission to obtain data on the types of cartridges being used to operate the devices."  *Id.*  As previously discussed in Section III.B.3.b, while Plaintiffs allege that HP acted "without authorization," Plaintiffs also allege that HP "has the exclusive ability to install firmware updates to the printers it sells that are connected to the Internet."  *Id.* ¶ 4.  Accordingly, this subsection is not applicable in light of Plaintiffs' allegations in the TAC regarding HP's ability to install firmware updates.  Thus, Defendant's motion to dismiss Plaintiffs' trespass to chattels claim is **GRANTED WITH LEAVE TO AMEND.**

### 8.   Plaintiffs' Request for Injunctive Relief

Defendant contends that Plaintiffs' request for prospective injunctive relief should be dismissed or stricken because Plaintiffs lack Article III standing to pursue this relief.  Dkt. 44 at 35.  Defendant argues that in the TAC, Plaintiffs allege that Performance Automotive alleges that it purchased a different printer to avoid further losses and Mobile Emergency and Lynch replaced their third-party cartridges with HP-branded cartridges.  *Id.* (citing Dkt. 42 ¶¶ 44, 56, 68).  Further, Defendant argues that Plaintiffs' allegations that they "would continue to use" their printers "with non-HP toner supply cartridges if given the opportunity to do so without risk of future malware transmissions from HP" is insufficient to establish Plaintiffs' standing to pursue injunctive relief.  *Id.* at 35-36 (citing Dkt. 42 ¶ 7).

In the TAC, Plaintiffs consistently allege that they "would continue to use their [printers] with non-HP toner supply cartridges if given the opportunity to do so without the risk of future

malware transmissions from HP."  Dkt. 42 ¶¶ 7, 38, 45, 50, 57, 61, 70.  Here, "the threat of a

future firmware update that could further modify Plaintiffs' printers is sufficiently 'concrete and

particularized' to establish standing."  *Parziale v. HP, Inc.*, 445 F.Supp.3d 435, 452 (2020)

(finding that "[t]he injury is particularized because it would affect Plaintiff, as an owner of HP

printers, in a personal and individual way") (internal quotation marks omitted).  The Court finds

that at the motion to dismiss stage, Plaintiffs have shown a sufficient likelihood that they will be

wronged again in a similar way to establish standing for injunctive relief.  Thus, HP's motion to

dismiss or strike Plaintiffs' request for injunctive relief is **DENIED**.

## IV.    CONCLUSION

For the reasons stated above, the Court **DENIES** Defendant's motion to dismiss pursuant

to Rule 12(b)(1).  Additionally, the Court **GRANTS IN PART AND DENIES IN PART**

Defendant's motion to dismiss pursuant to Rule 12(b)(6).  Specifically, Defendant's motion to

dismiss Plaintiffs' claims for violations of CFAA to the extent that the CFAA claim is based on

Section 1030(a)(5)(A), CDAFA to the extent it is based upon subsections (c)(1)-(c)(5), FAL,

CLRA, UCL, and Plaintiffs' request for injunctive relief are **DENIED**.  Defendant's motion to

dismiss Plaintiffs' claims against Defendant for violations of CFAA to the extent that the CFAA

claim is based on Section 1030(a)(2)(C) and trespass to chattels are **GRANTED WITH LEAVE**

**TO AMEND**.  Defendant's motion to dismiss Plaintiffs' claim against Defendant for violation of

CDAFA to the extent it is based upon subsection (c)(7) is **GRANTED WITHOUT LEAVE TO**

**AMEND**.  Additionally, Defendant's motion to strike Plaintiffs' request for injunctive relief is

**DENIED**.

////

////

////

////

////

////

////

1    Plaintiffs may file an amended complaint by **October 29, 2021**.  Plaintiffs may not add

2  new causes of actions or parties without leave of the Court or stipulation of the parties pursuant to

3  Federal Rule of Civil Procedure 15.

4    **SO ORDERED.**

5  Dated: October 15, 2021

6

7

8  SUSAN VAN KEULEN
   United States Magistrate Judge

9

10

11

12

13

United States District Court
Northern District of California

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28