MARK L. JAVITCH (CA SBN 323729)
JAVITCH LAW OFFICE
480 S. Ellsworth Ave
San Mateo, CA 94401
Telephone: (650) 781-8000
Facsimile: (650) 648-0705
mark@javitchlawoffice.com

*Attorney for Plaintiffs*
And those similarly situated

[Additional Counsel on Signature Page]

GIBSON, DUNN & CRUTCHER LLP
SAMUEL LIVERSIDGE, SBN 180578
  sliversidge@gibsondunn.com
ILISSA SAMPLIN, SBN 314018
  isamplin@gibsondunn.com
SARAH KUSHNER, SBN 320077
  smkushner@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:    213.229.7000
Facsimile:    213.229.7520

JOSEPH R. ROSE, SBN 279092
  jrose@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone:    415.393.8200
Facsimile:    415.393.8306

Attorneys for Defendant HP INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MOBILE EMERGENCY HOUSING CORP., and TRACK RAT ENTERPRISES, INC. d/b/a PERFORMANCE AUTOMOTIVE & TIRE CENTER, and DAVID JUSTIN LYNCH, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>HP INC. d/b/a/ HP COMPUTING AND PRINTING INC., a Delaware Corporation,<br><br>Defendant. | CASE NO. 5:20-cv-09157-SVK<br><br>**JOINT SUBMISSION REGARDING PROPOSED PROTECTIVE ORDER**<br><br>Action Filed: December 17, 2020 |

Pursuant to Section 7 of the Court's Civil and Discovery Referral Matters Standing Order ("Standing Order"), Plaintiffs Mobile Emergency Housing Corp., Track Rat Enterprises, Inc., and David Justin Lynch (collectively, "Plaintiffs"), and Defendant HP Inc. ("HP"), by and through their respective counsel of record, file this Joint Submission Regarding Proposed Protective Order to ask the Court to resolve one dispute as to an otherwise stipulated Proposed Protective Order.

The parties have met and conferred regarding this matter by email and telephone, including during telephonic conferences on February 11, 2022 and February 25, 2022. Despite their best efforts, the parties have been unable to reach agreement on the definition of "Expert" to be included in the Proposed Protective Order, and therefore present their respective views on this issue below. Attached as **Exhibit A** is a copy of the parties' Proposed Protective Order redlined against the Northern District of California's Model Stipulated Protective Order For Litigation Involving Patents, Highly Sensitive Confidential Information and/or Trade Secrets. Standing Order § 7(1). In section 2.7, HP's proposed definition of "Expert" is highlighted in yellow, and Plaintiffs' proposed definition of "Expert" is highlighted in green. The parties have reached an agreement on the remaining terms of the Proposed Protective Order.

**I.     HP'S POSITION**

HP proposes the following definition of "Expert":

> [A] person with specialized knowledge or experience in a matter pertinent to the litigation who (1) has been retained by a Party or its counsel to serve as an expert witness or as a consultant in this action, (2) is not subject to a conflict of interest with a Party or a confidentiality agreement with a Party or a Party's competitor, and (3) at the time of retention, is not anticipated to become an employee of a Party or of a Party's competitor.

HP's proposed definition tracks the Model Stipulated Protective Order For Litigation Involving Patents, Highly Sensitive Confidential Information and/or Trade Secrets (the "Model"), but is less restrictive in that it would not bar all "past or current employee[s] of a Party or of a Party's competitor" from qualifying as an "Expert." Model § 2.7(2). HP respectfully submits that its proposed definition is appropriate because this case involves highly sensitive information relating to HP's intellectual property, and the parties' stipulated proposed Protective Order otherwise tracks the Model. Plaintiffs' proposed definition is a complete deviation from the Model on this issue—the Model they have

otherwise agreed to should be used in this litigation.

HP submits that there is no reason to depart entirely from the Model on this one issue. Such a departure would allow Plaintiffs to use an expert in this litigation who is subject to a conflict of interest or confidentiality agreement with HP and/or was anticipated to become an employee of HP or an HP competitor at the time of retention. In other words, it would permit Plaintiffs to share some of HP's most confidential and sensitive documents—including documents designated for Attorneys' Eyes Only protection—with persons who are subject to conflicts of interest with HP or are affiliated with one of HP's direct competitors. That is not reasonable or justifiable—indeed, Plaintiffs could not articulate any valid justification during the parties' meet and confers. And courts in this district regularly reject attempts to modify the Model in ways that would allow plaintiffs to hire experts who are subject to apparent conflicts of interest. In *Corley v. Google, Inc.*, 2016 WL 3421402, at *2 (N.D. Cal. June 22, 2016), for example, the court rejected one such modification, emphasizing the "unnecessary risk of competitive harm if the court permitted Plaintiffs to hire the former employees of [Defendant's] competitors as experts." As the court explained in *Corley*, "[t]his court has repeatedly ruled that it is usually improper to hire an opponent's former employee as an expert because such an expert is substantially likely to inflict unfair prejudices which the former employer cannot realistically discover or guard against." *Id.* (collecting cases). In other words, *Corley* held that *all* former employees are "substantially likely" to inflict "unfair prejudices" on their former employers and therefore should be barred from seeing protected material. *Id.* Here, HP's proposed definition is no broader than is necessary to protect against the "substantial[] like[lihood]" of "unfair prejudice[]" that former employees present, *id.*, as it would preclude only those who are "subject to a conflict of interest" with HP or "a confidentiality agreement" with HP or an HP competitor (or anticipated to become an employee of HP or an HP competitor) from seeing HP's confidential and sensitive information.

Plaintiffs have offered no valid reason to diverge from these decisions. Rather, they cite cases involving disputes over whether confidential materials could be turned over to retained experts *after* protective orders were entered. *See, e.g.*, *Olin v. Facebook, Inc.*, 2019 WL 5802020, at *1–2 (N.D. Cal. Nov. 7, 2019) (analyzing discovery dispute that arose after the protective order was entered). Plaintiffs also say HP's proposed definition—which borrows heavily from the Model—is inapplicable because

this is not a patent infringement case. But the Model is not so limited: it explicitly applies in "Litigation Involving Patents, Highly Sensitive Confidential Information ***and/or*** Trade Secrets." Model (emphasis added). Plaintiffs' apparent position that HP has failed to "demonstrate" the Model is the one that should be followed is bewildering given that Plaintiffs have—with the exception of the definition of "Expert"—agreed the Model should govern in this case. Lastly, Plaintiffs' vagueness challenge to the phrase "a Party's competitor" in HP's proposed definition is puzzling, as that phrase comes from the otherwise-agreed upon Model. *See* Model § 2.7(2)–(3).

There are *many* experts Plaintiffs can hire for this litigation. A witness subject to a conflict of interest or affiliated with a competitor of HP should not be an option in this case involving HP's highly sensitive confidential information, including intellectual property.

## II. PLAINTIFFS' POSITION

Plaintiffs propose that the Protective Order provide the following definition of "Expert":

> "A person with specialized knowledge or experience in a matter pertinent to the litigation who has been retained by a Party or its counsel to serve as an expert witness or as a consultant in this action."

*See* §2.6, Northern District of California Standard Model Protective Order, available at https://www.cand.uscourts.gov/wp-content/uploads/forms/model-protective-orders/CAND_StandardProtOrd.pdf.

Although Plaintiffs maintain that the entirety of the Standard Model Protective Order provides ample protection in this matter for the parties, Plaintiffs were nevertheless willing to agree to HP's demand to use terms from the more protective Model Protective Order for Litigation Involving Patents, Highly Sensitive Confidential Information and/or Trade Secrets as a general matter. Plaintiffs reserve their rights under the provisions of the Protective Order to challenge HP's designations of any documents. *See* Section 6 of the Protective Order. However, Plaintiffs must draw the line at Defendant's proposed definition of "expert" because it is unduly narrow, without any justification, and attempts to gain an unfair litigation advantage by disqualifying most, if not all, of the qualified experts. To make matters worse, Defendant's proposed language does not actually track the language of *any* model protective order, is vague, and invites further disagreements.

To resolve a dispute over disclosure of confidential information to experts, courts "balance [one party's] interest in selecting the consultant most beneficial to the case, considering the specific expertise of this consultant and whether other consultants possess similar expertise, against the disclosing party's interest in protecting confidential commercial information from disclosure to competitors." *Nellson N. Operating, Inc. v. Elan Nutrition, LLC*, 238 F.R.D. 544, 546 (D. Vt. 2006) (quoting *BASF Corp. v. United States*, 321 F.Supp.2d 1373, 1378 (C.I.T.2004)). The party opposing the expert has the burden of showing a risk of inadvertent disclosure. *Streck, Inc. v. Research & Diagnostic Sys., Inc.*, 250 F.R.D. 426, 430 (D. Neb. 2008).

Defendant cannot establish that there is a sufficient risk of disclosure of damaging information simply by adopting the Standard Model Protective Order definition of expert. *See Olin v. Facebook, Inc.*, Case No. 18-cv-01881-RS (TSH), 2019 U.S. Dist. LEXIS 195155, 2019 WL 5802020, at *11-12 (N.D. Cal. Nov. 7, 2019) (expert cannot be excluded merely on the basis that the expert used to be a former employee, unless a risk of harm is demonstrated). Defendant has not shown that the information subject to discovery in this matter remains highly sensitive or warrants any greater protection sufficient to deprive Plaintiffs of their choice of experts. This case is not a patent infringement matter, nor has Defendant established that it involves highly sensitive trade secrets "that might be valuable in other litigation" against Defendant by competitors. *Intel Corp. v. VIA Techs., Inc.*, 198 F.R.D. 525, 528-31 (N.D. Cal. 2000). Defendant's narrow definition of expert is inapplicable outside the patent infringement context. *cf. Shared Memory Graphics, LLC v. Apple, Inc.*, No. C-10-2475 VRW (EMC), 2010 U.S. Dist. LEXIS 125184, 2010 WL 4704420, at *1 (N.D. Cal. Nov. 12, 2010) ("This is a patent infringement case…where the party asserting infringement is in the business of acquiring intellectual property and enforcing it against other entities using the allegedly infringing technology, there is little doubt that the alleged infringer's confidential information could be of value") (internal citation omitted).

To the contrary, Plaintiffs bring this consumer protection matter against Defendant for its widespread public-facing conduct that has impacted and continues to impact a large number of consumers. Defendant has not demonstrated that any patents or trade secrets apply in this case. Any member of the public can reverse engineer Defendant's printers and supply cartridges. Defendant has not shown that its devices' source code, or the firmware updates, contain or constitute proprietary or

highly sensitive information. This is especially doubtful in a case like this, where numerous third parties have already researched and developed ink cartridges designed to be compatible with HP's devices.

Here, the Standard Model Protective Order's definition of "expert" gives Defendant ample protection from disclosure by requiring experts to sign an acknowledgement and agreement to be bound by the protective order. *See In re Lithium Ion Batteries Antitrust Litig.*, Case No. 13-md-02420-YGR (DMR), 2017 U.S. Dist. LEXIS 34181, 2017 WL 930317, at *3 (N.D. Cal. Mar. 9, 2017) (finding adequate protection because "the protective order already requires experts and consultants to execute the "Agreement to Be Bound by Protective Order" prior to receiving material designated confidential or highly confidential"). Courts do not easily discount an independent expert's attestations that they will abide by the confidentiality agreement. *See Streck*, 250 F.R.D. at 430 ("When evaluating Dr. Simson's actual activity and relationship to the competitor, it appears Dr. Simson will not have difficulty keeping separate the information he may learn in this case from his consulting arrangement.").

Defendant's proposed language is inadvisable for additional reasons. The phrase "not subject to a conflict of interest," and the phrase "a Party's competitor," are far too open ended, beg the question, and invite disputes in the future as to whether any selected expert has a relationship that qualifies as a "conflict of interest" or is a "competitor" of a party. This is far too vague to be adopted in the protective order, and would require the Court to hold an evidentiary hearing to decide these issues on a case-by-case basis. For all of HP's pleas not to "depart" from this District's model orders, HP's proposal to depart from the model order by including such an ambiguous definition should be rejected.

Dated:  March 18, 2022

JAVITCH LAW OFFICE

By: /s/  Mark L. Javitch
JAVITCH LAW OFFICE
Mark L. Javitch (SBN 323729)
480 S. Ellsworth Ave
San Mateo CA 94401
Telephone: (650) 781-8000
Facsimile: (650) 648-0705

Thomas A. Zimmerman, Jr.*
ZIMMERMAN LAW OFFICES, P.C.
77 West Washington Street, Suite 1220
Chicago, Illinois 60602
Telephone: (312) 440-0020

Facsimile: (312) 440-4180
Email: tom@attorneyzim.com
*Admitted *Pro Hac Vice*

*Attorneys for Plaintiffs*
and those similarly situated


Dated: March 18, 2022                    GIBSON, DUNN & CRUTCHER LLP

                                         By:    /s/ Samuel Liversidge
                                                     Samuel Liversidge

                                         Attorneys for Defendant HP INC.


### SIGNATURE ATTESTATION

I, Mark L. Javitch, hereby attest that concurrence in the filing of this document has been obtained from the above signatories.


Dated: March 18, 2022            By:    /s/ Mark L. Javitch
                                             Mark L. Javitch