1
2
3
4                          UNITED STATES DISTRICT COURT

5                         NORTHERN DISTRICT OF CALIFORNIA

6

7    MOBILE EMERGENCY HOUSING              Case No.  20-cv-09157-SVK
     CORP., et al.,
8
                      Plaintiffs,
9                                          **ORDER RE PLAINTIFFS' MOTION**
           v.                              **FOR LEAVE TO FILE FOURTH**
10                                         **AMENDED COMPLAINT**

11   HP, INC.,                             Re: Dkt. No. 72

                      Defendant.
12

13         Plaintiffs Mobile Emergency Housing Corp., Track Rat Enterprises, Inc. d/b/a

14   Performance Automotive & Tire Center, and David Lynch (together, "Plaintiffs") bring this class

15   action against Defendant HP, Inc. ("HP") for claims arising from HP's practices related to its

16   LaserJet printers.  For months, Plaintiffs have been trying to expand the scope of this lawsuit to

17   include claims related to HP's InkJet printers.  First, non-party Henry So asked the Court to relate

18   this two-year old action to So's recently filed class action lawsuit, which specifically targets HP

19   InkJet printers.  *Henry So v. HP, Inc.*, 22-cv-2327-BLF.  Dkt. 62.  The Court denied the motion in

20   light of the significant age disparity between the cases.  Dkt. 64.  Next, Plaintiffs sought to obtain

21   discovery related to HP InkJet printers in addition to the LaserJet printers that are the current

22   subject of this lawsuit.  Dkt. 67.  The Court denied the motion, limiting the scope of discovery to

23   LaserJet printers.  Dkt. 69.  Now, with fact discovery closing in three months, Plaintiffs move for

24   leave to file a fourth amended complaint that would add a new proposed class representative and

25   her claims related to issues she experienced with her InkJet printer.  Dkt. 72.  Because the current

26   class definitions are drawn too narrowly to embrace the proposed class representative's claims,

27   Plaintiffs also propose amendments to the class definition that would dramatically expand the

28   scope of this litigation to include "[a]ll persons and entities in the United States who own an HP

United States District Court
Northern District of California

1    printer." Dkt. 72-1 ("Fourth Amended Complaint").  Pursuant to Civil Local Rule 7-1(b), the

2    motion is suitable for disposition without oral argument.

3        Based on a careful review of Plaintiffs' submissions, the case schedule and relevant law,

4    and for the reasons set forth herein, the Court DENIES Plaintiffs' motion for leave to amend their

5    complaint.

6    **I.    BACKGROUND**

7        **A.    Relevant Procedural History Prior to Filing of Operative Complaint**

8        Plaintiffs filed their original class action complaint against Defendant HP, Inc. d/b/a HP

9    Computing and Printing Inc. ("HP") on December 17, 2020.  Dkt. 1.  After HP moved to dismiss

10   the initial complaint, Plaintiffs filed their First Amended Complaint on March 2, 2021.  Dkts. 24,

11   30.  The Parties subsequently stipulated to permit Plaintiffs to file their Second Amended

12   Complaint on March 19, 2021, which the Court granted.  Dkts. 37, 38, 39.  Not long thereafter, the

13   Parties again stipulated to permit Plaintiffs to file their Third Amended Complaint ("TAC") on

14   April 8, 2021, which the Court approved.  Dkts. 40, 42, 43.

15       **B.    The Operative Third Amended Complaint**

16       This discussion of the background facts is based on the allegations of Plaintiffs' Third

17   Amended Complaint ("TAC"), which Plaintiffs filed on April 8, 2021.  Dkt. 42.  Plaintiffs allege

18   that HP transmits firmware updates without authorization to HP printers through the Internet.  *Id.*

19   ¶¶ 1, 28.  Plaintiffs further allege that these firmware updates act as malware, "adding, deleting or

20   altering code, diminishing the capabilities of HP printers, and rendering the competitors' supply

21   cartridges incompatible with HP printers." *Id.* ¶¶ 1, 24, 26.  Further, while users are told that the

22   HP printers have a "supply problem," HP intentionally caused the issue by sending this malware

23   to render third-party supplies incompatible with HP products.  *Id.* ¶¶ 5, 24, 26, 29, 30.  Plaintiffs

24   allege that as a result of this malware, HP printer owners are either forced to buy HP cartridges or

25   they cannot use their printers until third parties can develop workarounds in their products.  *Id.* ¶

26   3.  Plaintiffs also allege that "HP uses this firmware update process to conceal that it is actually

27   collecting data on whether consumers are using HP or its competitors' cartridges" without their

28   consent.  *Id.* ¶¶ 1, 27.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   Plaintiff Mobile Emergency, through its authorized representative, purchased an HP Color
2   LaserJet Pro M254 for $238.96 on August 21, 2019 from a Staples store in New York.  *Id.* ¶ 35.
3   The printer came with an initial set of model 202 HP-brand toner supply cartridges.  *Id.* ¶ 37.
4   When those supply cartridges were exhausted, Mobile Emergency purchased a set of model 202
5   Greensky toner supply cartridges that were advertised to be compatible with this HP printer from
6   Amazon.com for $52.49.  *Id.* ¶ 39.  Plaintiffs allege that on or around November 18, 2020, HP sent
7   or activated a transmission to HP printers, which "altered the code and data" of the printer,
8   rendering the printer incompatible with third-party toner supply cartridges, including the Greensky
9   cartridges purchased by Mobile Emergency.  *Id.* ¶ 40.  HP did not notify Mobile Emergency of the
10  transmission, and Mobile Emergency only discovered this when the authorized representative
11  attempted to print a document, received an error message stating "[s]upply problem," and the
12  printer ceased printing.  *Id.* ¶¶ 41, 42.  On December 1, 2020, Mobile Emergency purchased a
13  black HP toner cartridge for $71.68 from Staples to replace the Greensky cartridges.  *Id.* ¶ 44.

14  Plaintiff Performance Automotive, through its authorized representative, used rewards
15  points to purchase an HP Color LaserJet Pro MFP M281fdw Laser Multifunction Printer from HP
16  in November 2018.  *Id.* ¶¶ 46-47.  The printer came with an initial set of model 202 HP-brand
17  toner supply cartridges.  *Id.* ¶ 49.  When those supply cartridges were exhausted, Performance
18  Automotive purchased model 202 GPC Image, Linkyo, and Greensky toner cartridges for
19  approximately $60 per set that were advertised to be compatible with this HP printer from
20  Amazon.com.  *Id.* ¶ 51.  Plaintiffs allege that on or around November 18, 2020, HP sent or
21  activated a transmission to HP printers, which "altered the code and data" of the printer, rendering
22  the printer incompatible with third-party toner supply cartridges, including the GPC Image,
23  Linkyo, and Greensky cartridges purchased by Performance Automotive.  *Id.* ¶ 52.  HP did not
24  notify Performance Automotive of the transmission, and Performance Automotive only discovered
25  the effects of the transmission when it attempted to print a document and received an error
26  message stating "[s]upply problem."  *Id.* ¶ 53.  Performance Automotive's printer ceased printing
27  and when its authorized representative checked the printer, he saw that the BIOS version had been
28  changed.  *Id.* ¶ 54.  The authorized representative researched the issue and discovered that HP had

1   issued a "Bios Update," which caused the printer to cease working.  *Id.* ¶ 55.  As a result of the

2   update, Performance Automotive's printer and supply cartridges were disabled, and it purchased a

3   printer from a different printer manufacturer.  *Id.* ¶ 56.

4           Plaintiff Lynch purchased an HP Color LaserJet Pro M254dw Wireless Printer for $239.25

5   from Best Buy on March 3, 2020.  *Id.* ¶ 58.  The printer came with an initial set of model 202 HP

6   brand toner supply cartridges.  *Id.* ¶ 59.  When those supply cartridges were exhausted, Lynch

7   purchased a set of high-capacity model 202 toner cartridges for $215.46 from Express-Inks that

8   were advertised to be compatible with this HP printer.  *Id.* ¶ 60.  In January 2021, HP sent or

9   activated a transmission which altered the code and data of the printer, rendering the printer

10  incompatible with third-party toner supply cartridges, including the Express-Inks cartridges

11  purchased by Lynch.  *Id.* ¶ 62.  HP did not notify Lynch of the transmission, and Lynch only

12  discovered the effects of the transmission when he attempted to print a document, his printer

13  ceased printing, and he received an error message stating "[s]upply problem."  *Id.* ¶¶ 63-65.  The

14  printer also displayed an error message stating that "[t]he indicated supplies are not

15  communicating correctly with the printer. Try reinstalling the supplies. If the problem persists,

16  replace the supplies to continue printing."  *Id.* ¶ 66.  As a result of the transmission, Lynch

17  purchased new HP cartridges from Amazon.com to get the printer operating again.  *Id.* ¶¶ 68-69.

18          Plaintiffs bring this action for damages and injunctive and other equitable relief as a class

19  action on behalf of themselves and the following classes:

20
21          Device Owner Class: All persons and entities in the United States who own a Class
            Printer.

22          Damages Subclass: All persons and entities in the United States who own a Class
23          Printer that displayed a diagnostic error, such as "Supply Problem" or other similar
            error code, as a result of HP's transmission of a firmware update.

24          State Consumer Subclass: All persons and entities residing in California and States
25          with a similar consumer protection statute to Cal. Civ. Code 1770(a)(15), who own
            a Class Printer that displayed a diagnostic error, such as "Supply Problem" or other
26          similar error code, as a result of HP's transmission of a firmware update.

27  *Id.* ¶ 74.

28

United States District Court
Northern District of California

### C.   Intervening Procedural History

On May 24, 2021, HP moved to dismiss the TAC, which the Court granted in part and denied in part on October 15, 2021.  Dkts. 44, 52.  Pursuant to the Court's order, the following claims were dismissed: (1) Plaintiffs' Computer Fraud and Abuse Act ("CFAA") claim was dismissed with leave to amend to the extent their CFAA claim is premised on 18 U.S.C. § 1030(a)(2)(C); (2) Plaintiffs' Computer Data Access and Fraud Act ("CDAFA") claim was dismissed without leave to the amend to the extent it was based on Cal. Penal Code § 502(c)(7) only; and (3) Plaintiffs' trespass to chattels claim was dismissed with leave to amend.  Dkt. 52 at 23.  Additionally, the Court permitted Plaintiffs to file an amended complaint by October 29, 2021 but warned that Plaintiffs could not "add new causes of action or parties without leave of the Court or stipulation of the parties pursuant to Federal Rule of Civil Procedure 15."  *Id.* at 24.  On October 29, 2021, Plaintiffs notified the Court that they did not intend to amend the TAC at that time.  Dkt. 53 at 2.

HP filed its answer to the remaining claims in the TAC on December 3, 2021.  Dkt. 55. The Court entered the operative stipulated protective order on April 7, 2022.  Dkt. 60.  Non-party Henry So, the named plaintiff in *So v. HP, Inc.*, No. 22-cv-2327-BLF, filed an administrative motion asking the Court to consider whether his case should be related to this action on April 29, 2022.  Dkt. 62.  The *So* lawsuit alleges that HP "wrongfully compels users of its printers to buy and use only ink and toner supplies . . . by transmitting firmware updates without authorization to HP printers over the Internet that lock out its competitors' refilled, new build, or remanufactured ink and toner supply cartridges [.]"  *So v. HP, Inc.*, No. 22-cv-2327-BLF, Dkt. 1 at ¶ 1 ("*So* Complaint").  Plaintiffs define the Class Printers in that action as "all models of HP Printers that use ink supply cartridges, including HP DeskJet, ENVY, OfficeJet, and OfficeJet Pro printers and all-in-ones," including those set forth in the *So* Complaint's "non-exhaustive list of HP printers and all-in-one products and product series[.]"  *So* Complaint at ¶ 90.  As relevant here, the *So* Complaint sets forth the following class definitions:

> **Device Owner Class**. All persons and entities in the United States who own a Class Printer or a similar HP InkJet Printer.

**Damages Subclass**. All persons and entities in the United States who own a Class Printer that displayed a diagnostic error, such as "Supply Problem," "Cartridge Problem," "Cartridge Communication Error," or other similar error code, as a result of HP's transmission of a firmware update and other conduct described in this Complaint.

**State Consumer Subclass**. All persons and entities residing in California and States with a similar consumer protection statute to Cal. Civ. Code 1770(a)(15), who own a Class Printer that displayed a diagnostic error, such as "Supply Problem," "Cartridge Problem," "Cartridge Communication Error," or other similar error code, as a result of HP's transmission of a firmware update.

*So* Complaint at ¶ 106.  On May 6, 2022, the Court denied Mr. So's motion to relate the two cases.  Dkt. 64.

In advance of the June 14, 2022 initial case management conference, the Parties advised the Court that they "do not currently anticipate any further amendments to the pleadings."  Dkt. 66 at 5.  The Court adopted the Parties' proposed case schedule at the initial case management conference, which establishes, *inter alia*, a deadline of March 3, 2023, for the completion of fact discovery.  Dkt. 68.  Consistent with the Parties' representation regarding further amendments, the proposed case schedule did not include deadlines for adding parties or for amending the operative pleadings.

On June 7, 2022, the Parties' filed a discovery letter brief regarding the threshold issue of the scope of pre-certification discovery.  Dkt. 67.  In brief, Plaintiffs sought to obtain discovery from HP regarding both HP LaserJet and InkJet printers, which HP resisted on the grounds that the dispute, as drawn by the TAC, restricted the lawsuit to LaserJet printers.  *Id.*  The Court agreed with HP, explaining that the "Class Allegations and the Class Printers are more narrowly drawn than the general allegations, and it is the class parameters that the Court relies upon to determine the scope of discovery at this stage of the proceedings."  Dkt. 69 at 2.  Accordingly, the Court excluded HP InkJet printers from discovery.  *Id.*

On August 22, 2022, Plaintiffs filed the motion for leave to file a fourth amended complaint that is presently before this Court.  Dkt. 72.  The Parties stipulated to an extended briefing schedule.  Dkts. 73, 74.  HP opposed Plaintiffs' motion, and Plaintiffs filed a reply.  Dkts. 75, 76.

**D.      Proposed Fourth Amended Complaint**

The proposed fourth amended complaint differs from the operative TAC in two key respects.  First, the fourth amended complaint would add Paige Vollmer as a named plaintiff.  *See* Dkts. 72, 72-3.  Ms. Vollmer, a Pennsylvania citizen who resides in Birdsboro, PA, purchased an HP OfficeJet Pro 8025e Wireless Color All-in-One Inkjet Printer for $225.  Dkt. 72-2 at ¶¶ 13, 70.  After using up the HP Inkjet supply cartridges that came with her Inkjet printer, Ms. Vollmer bought a cheaper "set of high capacity Janmore model 910XL InkJet cartridges" from Amazon for $49.89 on December 20, 2021, because they were advertised as compatible with her InkJet printer.  *Id.* ¶ 72.  In or around June 2022, HP "sent or activated an unsolicited and malicious transmission" to Ms. Vollmer's InkJet printer that "altered the [printer's] code and data" and rendered her printer "incompatible with third-party ink or toner supply cartridges, including the Jansmore cartridges" she had purchased.  *Id.* ¶ 74.  HP did not advise Ms. Vollmer of the transmission.  *Id.* ¶ 75.  Ms. Vollmer discovered the effects of the "malware transmission" when she tried to print a document and received the following error messages from her InkJet printer: "Non-HP Chip Detected" and "The indicated cartridges have been blocked by the printer firmware because they contain a non-HP chip."  *Id.*  ¶¶ 75, 77.  Ms. Vollmer's printer stopped printing after receiving HP's transmission, and her printer and supply cartridges were disabled.  *Id.* ¶¶ 76, 78.  Consequently, Ms. Vollmer was forced to purchase another printer.  *Id.* ¶ 79.

Ms. Vollmer seeks to assert the same claims against HP as the other named plaintiffs: (1) Computer Fraud and Abuse Act violation under 18 U.S.C. § 1030(a)(5)(A); (2) California Comprehensive Computer Data Access and Fraud Act violation under Cal. Penal Code § 502; (3) California False Advertising Law ("FAL") violation under Cal. Bus. & Prof. Code § 17500; (4) California Unfair Competition Law ("UCL") – Fraudulent Prong violation under Cal. Bus. & Prof. Code § 17200; (5) California Unfair Competition Law – Unfair Prong violation under Cal. Bus. & Prof. Code § 17200; and (6) California Unfair Competition Law – Unlawful Prong violation under Cal. Bus. & Prof. Code § 17200.  Dkt. 72-2.  It is unclear whether Ms. Vollmer also seeks to assert a claim for violation of the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1770(a)(15), as a member of the proposed State Consumer Subclass.  *See id.* ¶¶ 161-69.

The second, significant amendment proposed by Plaintiffs would eliminate the definition of "Class Printers" entirely and expand the class definitions as follows:

> Device Owner Class: All persons and entities in the United States who own an HP printer.

> Damages Subclass: All persons and entities in the United States who own an HP printer that displayed a diagnostic error, such as "Supply Problem," "blocked by the printer firmware," or other similar error code, as a result of HP's transmission of a firmware update.

> State Consumer Subclass: All persons and entities residing in California and states with a similar consumer protection statute to Cal. Civ. Code 1770(a)(15), who own an HP printer that displayed a diagnostic error, such as "Supply Problem," "blocked by the printer firmware," or other similar error code, as a result of HP's transmission of a firmware update.

Dkt. 72-2 at ¶ 84.

## II.    LEGAL STANDARD

Under Rule 15(a)(2), a party may amend its pleadings with the opposing party's written consent or by leave of court.  *See* Fed. R. Civ. Proc. 15(a)(2). "The court should freely give leave when justice so requires."  *Id.*  This policy is applied with "extreme liberality," *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (internal citation omitted), but leave to amend "is not to be granted automatically."  *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001). The decision whether to grant leave to amend remains within the discretion of the district court.  *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).  The nonmovant bears the burden of demonstrating why leave to amend should not be granted.  *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987).  The Supreme Court of the United States has identified five factors to consider in deciding whether to grant leave to amend: (1) bad faith or dilatory motive on the part of the movant, (2) undue delay by the movant, (3) repeated failure to cure deficiencies in the complaint by the movant, (4) undue prejudice to the nonmovant, and (5) futility of the proposed amendment.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  "Absent prejudice, or a strong showing of any of the remaining [] factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend."  *Eminence*, 316 F.3d at 1052 (emphasis in original).  "Amendments seeking to add claims are to be granted more

1   freely than amendments adding parties." *Union Pac. R.R. Co. v. Nevada Power Co.*, 950 F.2d

2   1429, 1432 (9th Cir. 1991).

3   **III.    DISCUSSION**

4          Plaintiffs seek to amend their TAC to add a new plaintiff, Ms. Vollmer, and amend the

5   class definitions to embrace claims related to InkJet printers.  Dkt. 72.  Plaintiffs argue that the

6   Court should grant leave to amend because none of the *Foman* factors are present, and justice so

7   requires.  *Id.* at 1, 4-5.  HP opposes, arguing that: (1) the proposed amendment is unduly

8   prejudicial; (2) Plaintiffs unduly delayed in bringing its motion to amend; and (3) Plaintiffs'

9   proposed amendments are futile as to their consumer deception claims because they are

10  duplicative of claims pending in *So v. HP, Inc.*, No. 22-cv-02327-BLF and are foreclosed by this

11  Court's prior order granting in part and denying in part HP's motion to dismiss.  Dkt. 75 at 9-14

12  (citing Dkt. 52 at 19).

13          **A.    Bad Faith or Dilatory Motive**

14          A court may deny leave to amend if the amendment would "not save the complaint or the

15  plaintiff is merely seeking to prolong the litigation by adding new but baseless legal theories."

16  *Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 881 (9th Cir. 1999); *see also Trans Video*

17  *Electronics, Ltd. v. Sony Electronics, Inc.*, 278 F.R.D. 505, 510 (N.D. Cal. 2011), *aff'd* 475 Fed.

18  App'x 334 (Fed. Cir. 2012) (finding bad faith where plaintiff moved to amend "as a lastditch [sic]

19  attempt to avoid the case being dismissed in its entirety" after court granted defendant's motion

20  for summary judgment); *Wood v. Santa Barbara Chamber of Commerce, Inc.*, 705 F.2d 1515,

21  1520 (9th Cir. 1983) (affirming denial of leave to amend where proposed amendment would

22  duplicate other pending litigation and constituted a dilatory tactic).  Courts also have denied leave

23  to amend where a plaintiff intends to protract the litigation "indefinitely" by seeking to expand the

24  scope of the litigation.  *Sols. for Utilities, Inc. v. Cal. Public Utilities Comm'n*, No. 11-cv-4975,

25  2022 WL 3575308, at *4 (C.D. Cal. July 20, 2022) (denying motion for leave to file third

26  supplemental complaint where plaintiffs sought to assert claims that had arisen since the fifth

27  amended and second supplemental complaint despite narrow issue on remand from Ninth Circuit).

28          HP argues that the "new inkjet claims Plaintiffs seek to add are already pending in this

United States District Court
Northern District of California

9

1    district before a different judge in *Henry So v. HP, Inc.*, No. 22-cv-2327-BLF, which the Court

2    declined to relate to this case." Dkt. 75 at 1, 6-7. Although not clearly framed as an argument that

3    Plaintiffs have acted in bad faith or with a dilatory motive in moving to amend their complaint, the

4    Court finds that it is proper to construe HP's argument as such. The Court has twice denied

5    attempts to expand the scope of this case to encompass claims raised in the recently-filed *So* case:

6    first, the Court declined to relate this action to the *So* case [Dkt. 64]; second, the Court denied

7    Plaintiffs' motion for discovery into InkJet printers based on Plaintiffs' own "narrowly drawn"

8    class parameters that focused exclusively on HP's LaserJet printers [Dkt. 69]. It is troubling that,

9    at this late date, Plaintiffs seek, for a third time, to expand the scope of this case to encompass

10   InkJet printers, which would unequivocally duplicate claims already present in the *So* case

11   pending before the Honorable Judge Freeman.[1] The Court's concern is enhanced by Plaintiffs'

12   failure to acknowledge the *So* case in their reply let alone respond to Defendants' arguments

13   regarding the overlap between the proposed classes in the Fourth Amended Complaint and the *So*

14   case. *See* Dkt. 76.

15       A comparison of the proposed class definitions in the *So* lawsuit and in Plaintiffs' Fourth

16   Amended Complaint demonstrates that that Plaintiffs are attempting an end-run around this

17   Court's prior order declining to relate the two cases. Plaintiffs' proposed Fourth Amended

18   Complaint defines the "Device Owner Class" as follows: "All persons and entities in the United

19   States who own an HP printer." Dkt. 72-2 at ¶ 84. The *So* Complaint defines the "Device Owner

20   Class" as "All persons and entities in the United States who own a Class Printer or a similar HP

21   InkJet Printer." *So* Complaint at ¶ 106. Plaintiffs' elimination of "Class Printers" and expanded

22   definition of the "Device Owner Class" in the proposed Fourth Amended Complaint completely,

23   and apparently intentionally, subsumes the "Device Owner Class" in the *So* case.

24       Plaintiffs assert that they are not "seeking to amend for an improper purpose, dilatory

25   motive or in bad faith." Dkt. 72 at 7. Plaintiffs point to their belief that they have "consistently

26   informed the Court from the beginning of this case that they intend to include owners of both ink

27

28   _____

[1] For example, HP notes that Ms. Vollmer is likely already a putative class member in the *So*
action. Dkt. 75 at 1. Plaintiffs do not dispute this. Dkt. 76.

United States District Court
Northern District of California

and laserjet printers" and their representations at the initial case management conference on July 14, 2022, that they had received complaints from individuals regarding printers that were not LaserJet printers. *Id.* As to Plaintiffs' first point, Plaintiffs already have taken the opportunity to amend their complaint three times in the nearly two years this case has been pending. *See* Dkts. 30, 39, 42. While general allegations in the complaints have referred to both ink and toner cartridges as the object of HP's alleged unlawful conduct, Plaintiffs have, until the present motion, consistently defined the class narrowly to include putative class members who had received error messages from HP LaserJet printers. Dkt. 42 (TAC) at ¶¶ 33, 74. Plaintiffs have never, until now, sought to include claims specific to InkJet printers, undermining their claimed intention to include both Ink- and LaserJet printers from this case's inception. Regarding Plaintiffs' second point, this veiled "warning" of an intent to amend is more properly considered as part of the prejudice and undue delay analysis and does not bear on whether Plaintiffs have brought this motion in bad faith or with the purpose of delaying the case.

Because the evidence on the docket suggests that Plaintiffs are bringing this motion in a bad faith effort to sidestep the Court's prior rulings, the Court finds that this factor weighs in favor of denying Plaintiffs' motion.

### B.    Undue Delay and Previous Opportunities to Amend

While undue delay, by itself, may not be sufficient to justify denying a motion to amend, *Bowles v. Reade*, 198 F.3d 752, 759 (9th Cir. 1999), the repercussions of a long, unexplained delay may warrant denying leave to amend in certain circumstances. *See AmerisourceBergen Corp. v. Dialysis W., Inc.*, 465 F.3d 946, 953 (9th Cir. 2006) ("Even though eight months of discovery remained, requiring the parties to scramble and attempt to ascertain whether the Procrit purchased by AmerisourceBergen was tainted, would have unfairly imposed potentially high, additional litigation costs on Dialysist West that could have easily been avoided had AmerisourceBergen pursued its 'tainted product' theory in its original complaint or reply."); *Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 799 (9th Cir. 1991) (affirming denial of leave to amend where litigant did not move to amend until "eight months after the district court granted summary judgment against it, and nearly two years after filing the initial complaint"); *Jackson v. Bank of*

*Hawaii*, 902 F.2d 1385, 1387-88 (9th Cir. 1990) (affirming denial of leave to amend where eight-month delay in seeking leave to amend, coupled with finding of undue prejudice, warranted denial of leave to amend).  Undue delay may also warrant denial of a motion for leave to amend brought "on the eve of the discovery deadline."  *Solomon v. N. Am. Life & Cas. Ins. Co.*, 151 F.3d 1132, 1139 (9th Cir. 1998) (upholding denial of motion to amend brought two weeks before the discovery deadline and which would require reopening discovery).

In evaluating undue delay, courts must consider "whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading." *Jackson*, 902 F.2d at 1388.  "Late amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action." *Royal Ins. Co. of Am. v. Sw. Marine*, 194 F.3d 1009, 1016-17 (9th Cir. 1999) (quotations omitted).  Additionally, the district court's discretion to deny leave to amend is "particularly broad" where a plaintiff has amended the complaint previously.  *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989); *Fidelity Fin. Corp. v. Fed. Home Loan Bank of S.F.*, 792 F.2d 1432, 1438 (9th Cir. 1986) (affirming denial of leave to file fourth amended complaint where factual bases of plaintiff's claims were known to plaintiff "long before").

Plaintiffs argue that they have not unduly delayed in bringing their motion to amend because the case remains "in a relatively early stage," and the facts of the case are "still unfolding" in light of HP's refusal to cease the behavior that is the subject of this suit.  Dkt. 72 at 6.  HP disputes Plaintiffs' characterization of this case as being in an "early stage" and further argues that Plaintiffs have amended their complaint three times previously without raising claims about HP InkJet printers despite having known of the alleged issues with InkJet printers since the case's inception.  Dkt. 75 (citing Dkt. 67 at 1-2).

In the instant case, the Court agrees with HP that Plaintiffs have unduly delayed in seeking leave to amend.  First, this action is not in its "early stage," as Plaintiffs contend.  Dkt. 72 at 6. Plaintiffs initiated this case nearly two years ago, during which time Plaintiffs have filed three amended complaints, the Court has granted in part and denied in part HP's motion to dismiss the TAC, and the Parties have engaged in vigorous discovery.  Dkts. 30, 39, 42, 52, 67, 69.

United States District Court
Northern District of California

Second, although the facts specific to Ms. Vollmer's claims arose in June 2022, Dkt. 72-2 at ¶ 74, and to the extent Plaintiffs assert a different legal theory related to the error message she allegedly received from HP, Plaintiffs' prior complaints demonstrate that they have been aware of customer complaints regarding non-LaserJet printers since the inception of this suit. *See* Dkt. 1 ("Complaint") at ¶ 56; Dkt. 30 ("First Amended Complaint") at ¶ 70; Dkt. 39 ("Second Amended Complaint") at ¶ 70; Dkt. 42 ("Third Amended Complaint") at ¶ 71. Moreover, those customer complaints were publicly available online before Plaintiffs filed their initial complaint. *See, e.g.*, Dkt. 1 at ¶ 56 ("I am posting this on November 2, 2020. My HP 6960 All In One just stopped allowing 3rd party ink cartridges through Firmware update. To top it off, my local stores are out of tri-color cartridges & I had to order direct from HP. I'm so angry.") (quoting https://borncity.com/win/2019/01/20/does-hp-blocks-3rd-party-ink-cartridges-again-on-its-printers-jan-2019/#comment-12712). Despite previously taking the opportunity to amend the class definitions, at no point prior to the proposed Fourth Amended Complaint did Plaintiffs seek to amend the class definitions to include InkJet printers. *Compare* Dkt. 1 at ¶ 57 *with* Dkt. 30 at ¶ 71. Further, after the Court granted in part and denied in part HP's motion to dismiss with leave to amend, Plaintiffs filed a notice that they did not intend to amend the TAC at that time. Dkt. 53 at 1. Yet, Plaintiffs' counsel represents that they "*continue* to receive additional complaints from individuals who own InkJet printers related to the same conduct at issue in this case," Dkt. 72-1 (Javitch Decl.) at ¶ 4 (emphasis added), which appears to corroborate that Plaintiffs knew or should have known of similar complaints regarding non-LaserJet printers long before they brought this motion. *See Do v. Tri City Healthcare Dist.*, 2020 WL 7318119, at *5-6 (S.D. Cal. Dec. 11, 2020); *U.S. E.E.O.C. v. Global Horizons, Inc.*, No. 11-0257, 2013 WL 12123697, at *3 (D. Haw. Sept. 10, 2013).

Third, permitting Plaintiffs to amend their complaint for the fourth time at this stage of the proceedings would unduly delay the litigation. As set forth above, the Parties independently negotiated and proposed the current case schedule to the Court at the case management conference. Dkts. 66, 68. In doing so, Plaintiffs omitted room in the schedule for future amendments and represented to the Court that the Parties did not "anticipate any further

United States District Court
Northern District of California

amendments to the pleadings." Dkt. 66 at 5.  The Court adopted the Parties' schedule.  Dkt. 68.
As a result, the case is now in its closing months of discovery, exactly where Plaintiffs have
always known it would be at this point in time.  To move now to amend to include claims of
which, as demonstrated above, Plaintiffs have long been aware, strongly suggests a motive to
delay the case.

This suggestion is further buttressed by HP's unrefuted evidence that Plaintiffs' proposed
amendments in the Fourth Amended Complaint will require HP to "redo most if not all of its work
to date in conducting internal investigations, collecting and reviewing documents and data,
identifying document custodians, and developing search terms . . . ."  Dkt. 75-1 (Rose Decl.) at ¶
9.  Plaintiffs appear to have delayed roughly two months between learning of the facts pertaining
to Ms. Vollmer and bringing this motion.  *See* Dkts. 72 and 72-2 at ¶ 74.  While this is not a
significant delay, Plaintiffs then inexplicably agreed to an extended briefing schedule with the
result that the instant motion was not fully briefed until October 10, 2022.  Dkts. 73, 74.  This
additional delay has left the Parties with three months to complete merits discovery.  *See* Dkt. 68.
While Plaintiffs argue that HP has "yet to significantly respond to Plaintiffs' document requests,
and depositions have not yet been scheduled," Dkt. 76 at 7, Plaintiffs do not dispute that, as HP
contends, there is no overlap between the discovery that has been completed and the discovery that
would need to be undertaken given "the technological differences between HP's inkjet printers
and ink cartridges on the one hand and LaserJet printers and toner on the other, the fact the former
are developed and marketed by a different group within HP as compared to the latter, and the fact
Plaintiffs' LaserJet printer models, unlike Paige Vollmer's inkjet printer model, are no longer sold
by HP."  Dkt. 75-1 (Rose Decl.) at ¶ 9.  Indeed, Plaintiffs have indicated that they are unable to
complete the discovery needed for this much narrower class within the confines of the current
schedule.  On December 6, 2022, the Parties filed a joint status report in which Plaintiffs ask the
Court to extend the deadlines, including fact discovery cutoff, by two months.  Dkt. 80 at 11-12.
Were the Court to grant Plaintiffs leave to file a Fourth Amended Complaint that drastically
expands the class definition, it is virtually certain that the case deadlines would need to be
extended significantly and further delay a case that has already been pending for two years.

United States District Court
Northern District of California

Accordingly, the Court finds that Plaintiffs unduly delayed in filing their motion for leave to file a fourth amended complaint, Plaintiffs have previously amended their complaint three times and allowing Plaintiffs to amend now would unduly delay this case.  These factors, taken together, weigh against allowing the proposed amendment.

### C.    Prejudice

The party resisting amendment "bears the burden of showing prejudice."  *DCD Programs*, 833 F.2d at 187.  Courts in the Ninth Circuit have found "undue prejudice" where the proposed amendment "would have greatly altered the nature of the litigation and would have required defendants to have undertaken, at a late hour, an entirely new course of defense."  *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990)).  Showings of prejudice include having to reopen discovery and delaying the proceedings because of the amendment.  *See Solomon*, 151 F.3d at 1139 (upholding decision to deny motion to amend brought two weeks before the discovery deadline and which would require reopening discovery); *see also AmerisourceBergen Corp.*, 465 F.3d at 953 (upholding denial of leave to amend and noting the Ninth Circuit has "held that an eight month delay between the time of obtaining a relevant fact and seeking leave to amend is unreasonable") (citation omitted); *uSens, Inc. v. Shi*, No. 18-cv-1959-SVK, 2019 WL 13201985, at *3-4 (N.D. Cal. Mar. 12, 2019) (denying motion for leave to add new defendant where plaintiff's undue delay in seeking to add defendant would result in "significant prejudice" to proposed defendant).  However, the attendant burden of having to defend against a new claim, by itself, is not undue prejudice under Federal Rule 15.  *See DCD Programs*, 833 F.2d at 186; *United States v. Webb*, 655 F.2d 977, 980 (9th Cir. 1981).  Prejudice to the opposing party carries the "greatest weight."  *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

In class action cases, courts have found prejudice where the new discovery would need to take place "within the span of weeks," *Harris v. Vector Mktg. Corp.*, 2010 WL 11484806, at *1 (N.D. Cal. Apr. 5, 2010), where "the proposed amendments represent a significant expansion of the nature of the suit," *L.H. v. Schwarzenegger*, No. 06-cv-2042, 2008 WL 268983, at *4 (E.D. Cal. Jan. 29, 2008), and where plaintiffs' proposed amendments to subclass definitions

15

1    "substantively change the scope of the purported class action" on the eve of defendant's deadline

2    to oppose class certification, *In re Taco Bell Wages and Hour Actions*, No. 07-cv-1314, 2011 WL

3    1740990, at *6 (E.D. Cal. May 3, 2011).  *See also Kennedy v. Natural Balance Pet Foods, Inc.*,

4    No. 07-cv-1082, 2008 WL 2053551, at *2 (S.D. Cal. May 13, 2008) (denying leave to amend

5    sought "[s]hortly before the close of discovery" that would "significantly expand the number of

6    products referred to in the complaint, as well as expand the time period covered by the definition

7    of the putative class.").  By contrast, courts have found a lack of prejudice where roughly six

8    months remained before the close of discovery and defendant would "not be required to start its

9    discovery efforts from scratch," *Rao v. Apple, Inc.*, No. 18-cv-2813-EJD, 2020 WL 3616317, at *3

10   (N.D. Cal. July 2, 2020) (Davila, J.), where the proposed amendments to class definitions did not

11   "reflect a 'radical shift in direction' or otherwise significantly expand the scope of litigation," *S.*

12   *Peninsula Hosp. v. Xerox State Healthcare, LLC*, No. 15-cv-0177, 2018 WL 11417374, at *4 (D.

13   Ak. June 21, 2018) (citation omitted), and where the proposed amendment to the class definition

14   was strictly temporal in nature, *Dep't of Fair Employment and Housing v. Law School Admission*

15   *Council, Inc.*, No. 12-cv-1830, 2013 WL 485830, at *6 (N.D. Cal. Feb. 6, 2013).

16         HP argues that granting Plaintiffs leave to amend will result in undue prejudice because

17   Plaintiffs' InkJet allegations already are the subject of the separate *So* lawsuit, and adding those

18   claims here "would require new discovery and undo the progress HP has made in this case to

19   date." Dkt. 75 at 10.  Specifically, HP contends that its investigation and discovery productions

20   have focused exclusively on the search terms, documents, data and custodians for LaserJet

21   printers.  *Id.*; *see also* Dkt. 72-1 (Rose Decl.) ¶¶ 7, 9.  HP has identified only one document

22   custodian with relevant experience in InkJet printers to date.  Dkt. 72-1 at ¶ 7.  This is because

23   InkJet and LaserJet printers employ a different technology, were developed and marketed by

24   different groups within HP, and were marketed and sold at different times.  *Id.* ¶ 9.  Plaintiffs

25   respond that this case remains in its nascent stages, noting that no depositions have been taken and

26   that HP's discovery responses thus far have not been "significant[]."  Dkt. 76 at 7.  The Court

27   agrees with HP.  Plaintiffs have failed to refute HP's evidence that the discovery into LaserJet

28   printers thus far does not overlap with any of the discovery that would be needed were the Court

United States District Court
Northern District of California

16

to grant Plaintiffs leave to amend.

Plaintiffs further argue that Ms. Vollmer has "nearly the same experiences as the other Plaintiffs and proposed Class members." Dkt. 72 at 6-7. However, Plaintiffs fail to explain how the alleged similarity of Ms. Vollmer's experiences to the current Plaintiffs' experiences impacts the breadth and volume of discovery that will be needed regarding InkJet printers. Nor do Plaintiffs dispute that there are key differences between the factual basis for Ms. Vollmer's claims and the factual bases for the claims of the current Plaintiffs—differences that will need to be explored in discovery. For example, the current Plaintiffs' LaserJet printers all were affected by the same November 2020 firmware update. Dkt. 42 (TAC) at ¶ 26. By contrast, Ms. Vollmer's InkJet printer was affected by a June 2022 firmware update. Dkt. 72-2 at ¶ 74. Additionally, the current Plaintiffs received a "supply problem" error message when they used third-party cartridges, which Plaintiffs allege was misleading because the message failed to disclose that HP's firmware update is what disabled the third-party cartridges. Dkt. 42 (TAC) at ¶¶ 29, 41, 53, 65. Ms. Vollmer, on the other hand, received the following message from her InkJet printer: "The indicated cartridges have been blocked by the printer firmware because they contain a non-HP chip." Dkt. 72-2 at ¶ 77. To the extent Plaintiffs are asserting a different legal theory based on the latter error message, Plaintiffs do not explain in the proposed Fourth Amended Complaint how this statement is allegedly "false" and "misleading," or how it allegedly deceived Ms. Vollmer. Dkt. 72-2 at ¶¶ 8, 29.

Plaintiffs attempt to characterize the differences in Plaintiffs' and Ms. Vollmer's experiences as "a distinction without a difference." Dkt. 76 at 7. Once again, the Court disagrees. While Ms. Vollmer's experience is similar to those of the current Plaintiffs, HP has presented unrefuted evidence that Ms. Vollmer's InkJet printer involves an entirely different line of products with different associated teams that will require different discovery into a different set of facts and, to the extent asserted, into a different legal theory. *See* Dkt. 75-1 (Rose Decl.) at ¶ 9. *IXYS Corp. v. Advanced Power Tech., Inc.*, No. 02-cv-03942, 2004 WL 135861, at *3 (N.D. Cal. Jan. 22, 2004) ("[T]he need for a party to conduct supplemental discovery or to consider a new line of legal argument are classic sources of prejudice that have regularly proven sufficient to defeat a

1    motion for leave to amend.") (citing *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir.

2    2002)).

3           HP notes, too, that Plaintiffs allegedly have been aware of customer complaints related to

4    non-LaserJet printers since the inception of this case and repeatedly have foregone opportunities

5    with prior amended complaints to amend the class definitions to embrace both InkJet and LaserJet

6    printers.  Dkt. 75 at 11.  The result, HP claims, is that it will have to re-do its discovery and

7    investigation "at a substantial cost that could have been avoided[.]"  Dkt. 75 at 12.  While HP is

8    silent as to actual costs it expects to incur, Plaintiffs do not dispute that the amendment likely

9    would cause HP to undertake significant expenses.  *See* Dkt. 76.  Rather, Plaintiffs argue that

10   because they have "consistently complained of firmware transmissions generally," HP cannot

11   claim that it is surprised, and thus prejudiced, by the new allegations.  *Id.* at 7; *see, e.g.*, *Sousa ex*

12   *rel. Will of Sousa v. Unilab Corp.*, 252 F. Supp. 2d 1046, 1059 (E.D. Cal. 2002) (finding good

13   cause existed to permit amendment of the schedule under Federal Rule 16 where evidence showed

14   that plaintiffs were aware of the statute of limitations defense defendants had raised).  As noted

15   above, Plaintiffs' initial and subsequent amended complaints make general allegations related to

16   non-LaserJet printers.  *See* Dkt. 1 at ¶ 56; Dkt. 30 at ¶ 70; Dkt. 39 at ¶ 70; Dkt. 42 at ¶ 71; Dkt. 42

17   (TAC) at ¶¶ 1, 24, 32.  However, as the Court previously explained, the "Class Allegations and the

18   Class Printers [in the TAC] are more narrowly drawn than the general allegations[.]"  Dkt. 69 at 2.

19   Plaintiffs' catchall phrase, "all other models affected by HP malware transmissions," in the TAC's

20   definition of "Class Printers" was too vague and overbroad to permit discovery into InkJet printers

21   where the Plaintiffs had only purchased LaserJet printers.  *Id.*  Similarly, Plaintiffs' allusions to

22   non-LaserJet printers in the TAC and preceding complaints are too vague and overbroad to have

23   put HP fairly on notice prior to the June 2022 discovery dispute that Plaintiffs seek to challenge

24   HP's practices regarding all of its printer models—LaserJet and InkJet alike.  *See, e.g.*, *L.H.*, 2008

25   WL 268983, at *5 (finding insufficient notice where the first amended complaint contained

26   references to hearings other than parole revocation hearings but were "incidental to the thrust of

27   the complaint, which was the inadequacy of parole revocation hearings").

28           Finally, the Court finds that Plaintiffs' proposed "Device Owner Class" definition, which

18

significantly expands the putative class, would "greatly alter[]" the nature of the litigation, and would require HP to "undertake[], at a late hour, an entirely new course of defense," increasing litigation costs, and prejudicing HP.  *Morongo Band of Mission Indians*, 893 F.2d at 1079; *see also AmerisourceBergen Corp.*, 465 F.3d at 953; *L.H.*, 2008 WL 268983 at *4 (finding proposed "clarifications" actually would expand suit from procedures regarding parole revocations to encompass more than fifteen additional hearings when the focus of the case to that point had been parole revocations); *Abelyan v. Onewest Bank*, No. 09-cv-7163, 2011 WL 13189883, at *2 (C.D. Cal. Mar. 21, 2011) ("Even though discovery has not yet commenced, allowing plaintiff to join new parties, include class action allegations, and assert four additional claims will significantly expand the scope of the case and require defendants to undertake a new course of defense.").

Accordingly, while denying Plaintiffs leave to amend will not work a substantial injustice on Ms. Vollmer, who appears to be a putative class member in the *So* lawsuit, the Court finds that granting Plaintiffs leave to file their Fourth Amended Complaint would unduly prejudice HP at this stage of this litigation.  This factor, therefore, weighs in favor of denying leave to amend.

### D.    Futility

"Futility of amendment can, by itself, justify the denial of a motion for leave to amend." *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995).  "Leave to amend need not be given if a complaint, as amended, is subject to dismissal."  *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 538 (9th Cir. 1989).  "[A] proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense."  *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988), *overruled on other grounds by Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  The test for futility is the same as one used when considering the sufficiency of a pleading challenged under Rule 12(b)(6).  *Id.* at 214.

HP urges the Court to find the proposed amendments futile, arguing chiefly that Ms. Vollmer's omissions-based consumer deception claims under the FAL and UCL fail as a matter of law under Federal Rule 12(b)(6).  Dkt. 75 at 14.  Specifically, HP argues that in opposing HP's motion to dismiss the TAC, Plaintiffs claimed that the "supply problem" error message they received from their HP LaserJet printers misrepresented what had actually happened—that HP had

sent a firmware update that caused Plaintiffs' third-party cartridges to cease functioning. *Id.* (citing Dkt. 52 at 19).  Here, however, the error message Ms. Vollmer received from her InkJet printer accurately represented the source of the problem: "The indicated cartridges have been blocked by the printer firmware because they contain a non-HP chip."  Dkt. 72-2 at ¶ 77.  Plaintiffs counter that Ms. Vollmer's UCL and FAL claims are not futile because the error message she received represents only a partial disclosure of HP's "scheme of deception" and that HP still fails to "disclose its entire scheme at the outset[.]"  Dkt. 76 at 5.

The Court previously denied HP's motion to dismiss Plaintiffs' FAL and UCL claims based on the "supply problem" error message, finding that the TAC's allegations were sufficient to state fraud by omission under the FAL and UCL at the pleading stage.  Dkt. 52 at 18-19.  "The alleged omission, that HP intentionally used a firmware update to disable printers that were using non-HP ink cartridges, is arguably contrary to the explanations for the printer failure stated in the error messages."  *San Miguel v. HP Inc.*, 317 F. Supp. 3d 1075, 1090 (N.D. Cal. Mar. 29, 2018).  Here, although the proposed Fourth Amended Complaint defines Ms. Vollmer as one of the collective "Plaintiffs," Plaintiffs fail to allege that the new and different message Ms. Vollmer received was false, misleading or failed to disclose the source of the malfunction.  *See* Dkts. 72-2 at ¶¶ 70-80, 123-36, 137-44, 145-53.  For example, Plaintiffs allege:

> HP made uniform representations and material omissions that communicated to Plaintiffs and Class members that there was a *supply problem* when that was false—just [sic] moments before HP sent the transmission, there had been no problem.  HP omitted the material fact that the purported *supply problem* was caused by HP's intentional transmission of firmware designed to render third-party supplies incompatible with HP printers.  HP had a duty to disclose the truthful cause of the problem.

Dkt. 72-2 at ¶ 126 (emphasis added).  They further allege, "Plaintiffs were left with uncertainty as to the best course of action after seeing the false *'supply problem' message*."  *Id.* ¶ 140 (emphasis added).  Nowhere in the proposed Fourth Amended Complaint do Plaintiffs describe the error message Ms. Vollmer received as a "supply problem" message.  *See* Dkt. 72-2.  To the extent Ms. Vollmer is attempting to assert a UCL or FAL claim based on the specific error message she received, the proposed amendment is futile as to these claims given the absence of

United States District Court
Northern District of California

1    allegations that the error message was false, misleading or likely to deceive the public.  *See* Cal.

2    Bus. & Prof. Code § 17500; Cal. Bus. & Prof. Code § 17200.  The Court finds it more likely,

3    however, that Ms. Vollmer is not seeking to assert a UCL or FAL claim based on the specific error

4    message she received.  This conclusion is bolstered by a comparison of the TAC and proposed

5    Fourth Amended Complaint.  For instance, Plaintiffs allege in the TAC as to their CLRA claim,

6    "Plaintiff was left with uncertainty as to the best course of action after seeing the false 'supply

7    problem' message."  Dkt. 42 at ¶ 165.  The proposed Fourth Amended Complaint strikes the

8    reference to "false 'supply problem' message" and revises to, "Plaintiffs were left with uncertainty

9    as to the best course of action after seeing the error messages."  Dkt. 72-2 at ¶ 168.   Accordingly,

10   to the extent Ms. Vollmer purports to assert UCL and FAL claims based on the error message her

11   InkJet printer displayed, the proposed amendment is futile.  To the extent Ms. Vollmer is not

12   seeking to assert UCL and FAL claims based on the error message, HP's futility argument is

13   moot.  As HP does not attack Ms. Vollmer's UCL and FAL claims on other grounds—or the other

14   claims she seeks to assert—the Court finds that the proposed amendment likely is not futile as to

15   all claims.

16        In sum, the majority of the factors, including bad faith and prejudice, weigh against

17   granting Plaintiffs leave to file a Fourth Amended Complaint.  Plaintiffs' proposed amendment

18   apparently seeks to circumvent the Court's prior orders, and the amendment would add Ms.

19   Vollmer and her claims and significantly expand the proposed class definitions such that they

20   would subsume the proposed classes in the *So* lawsuit with little time left prior to the close of

21   merits discovery.

22        //

23        //

24        //

25        //

26        //

27        //

28        //

## IV.    CONCLUSION

For the reasons set forth above, the Court DENIES Plaintiffs' motion for leave to file a fourth amended complaint.  **The Court has vacated the status conference currently scheduled for December 13, 2022.  Dkt. 81.  The Parties shall appear for a further status conference on February 14, 2023, at 9:30 a.m. and shall file a joint status report by February 7, 2023.**

**SO ORDERED.**

Dated: December 7, 2022

_____
SUSAN VAN KEULEN
United States Magistrate Judge