UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MOBILE EMERGENCY HOUSING
CORP., et al.,

           Plaintiffs,

      v.

HP, INC.,

           Defendant.

Case No.  20-cv-09157-SVK

**ORDER GRANTING IN PART AND
DENYING IN PART PLAINTIFFS'
MOTION FOR CLASS
CERTIFICATION**

Re: Dkt. No. 117

      This action exemplifies the importance of selecting representative individuals to spearhead a class action as named plaintiffs.  Plaintiffs Mobile Emergency Housing Corp. ("Mobile"), Track Rat Enterprises, Inc. d/b/a Performance Automotive & Tire Center ("Performance) and David Lynch sued Defendant HP Inc. ("HP") after their HP printers stopped working.  The cause, it turns out, was HP itself—the company periodically updates its printers as a "Dynamic Security" measure to prevent consumers from using certain third-party toner cartridges ("TPCs").  While Plaintiffs complain that this policy of "bricking" printers provides no societal benefit, they do not allege that the policy constitutes *per se* unlawful conduct.  Instead, they more narrowly focus on HP's disclosure of its Dynamic Security practices.  Specifically, they allege that HP did not sufficiently disclose that it would brick their printers if they used certain TPCs, including TPCs that previously posed no problem.

      Tailoring their lawsuit in this way creates an issue for Plaintiffs, because they themselves viewed no disclosures.  Despite this reality, they now seek to certify three classes of persons who experienced the same printer bricking, without any limitation as to who saw what.  *See* Dkt. 117 (the "Motion").  But many of the putative class members likely did view at least some of HP's disclosures, and HP could raise the sufficiency of these disclosures as a defense to those

individuals' claims.  HP could not, however, raise those same defenses against Plaintiffs, because they did not view any of HP's disclosures.  Plaintiffs therefore cannot satisfy the typicality requirement for class certification.

Regardless, the Court may reform proposed class definitions to cure such defects, and it does so here.  But while the Court's modifications fix some of the problems with certifying Plaintiffs' proposed classes, they cannot fix them all.  Accordingly, after considering the Parties' briefing and relevant law, after hearing oral argument, and for the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion.[1]

## I.     BACKGROUND

This action concerns HP's LaserJet printers, HP's practice of bricking those printers that use certain TPCs and Plaintiffs' experiences with HP's printers.

### A.     HP Bricks Printers Through Dynamic Security

HP's LaserJet printers function optimally when using HP toner cartridges.  *See* Dkt. 124 (the "Opposition") at 3.  When these printers use TPCs, they run the risk of "produc[ing] lower-quality prints, caus[ing] printer damage more frequently, and result[ing] in lower customer satisfaction than original HP cartridges."  *Id.*  TPCs may also infringe HP's intellectual property rights.  *See* Dkt. 126 ("Jeran Decl.") ¶ 6.  HP therefore guards against consumers' usage of TPCs to guarantee consumer satisfaction, protect its brand and protect its intellectual property rights.  *See id.* ¶¶ 38-40.  HP refers to this practice as "Dynamic Security."  *See* Opposition at 3.

Dynamic Security achieves this goal by preventing printers using certain TPCs from functioning.  *See id.* at 3-4.  Specifically, Dynamic Security attempts to ensure that printers will function only when using cartridges containing HP chips.  *See id.*  Some manufacturers of TPCs circumvent this measure by designing their cartridges to mimic HP chips, thereby permitting consumers to use HP printers with TPCs that do not contain HP chips.  *See id.*  HP combats such cartridge "cloning" and bolsters Dynamic Security by collecting data from printers.  *See* Dkt. 128 ("Sutherland Decl.") ¶¶ 1-2; Jeran Decl. ¶¶ 9-18; Dkt. 142 ("Hr'g Tr.") at 34:13-14 ("HP collects

---

[1] All Parties have consented to the jurisdiction of a magistrate judge.  *See* Dkts. 15, 21, 33.

United States District Court
Northern District of California

1  data on use of non-HP cartridges that may not have HP chips.").

2      **B.**    **Periodic Firmware Updates Implement Dynamic Security**

3      HP implements Dynamic Security by, *inter alia*, "including improvements in periodic

4  updates to the printers' firmware." *See* Opposition at 4.  Between November 2020 and January

5  2023, HP issued seven such firmware updates to the printers at issue in this action; printers

6  updated once in November 2020 and six times throughout 2022.  *See* Motion at 4; Jeran Decl. ¶¶

7  21, 50.  If Dynamic Security bricked a printer during this period for using a TPC, the printer

8  displayed one of two error messages (*see* Jeran Decl. ¶¶ 49-50):

9      •   Prior to the 2022 updates, printers displayed "Supply Problem."

10     •   Beginning with the 2022 updates, printers displayed "Non-HP Chip Detected."[2]

11     **C.**    **HP Disclosed Its Dynamic Security Measures And Data-Collection Practices**

12     Between November 2020 and January 2023, HP disclosed to consumers its use of

13 Dynamic Security and its underlying data collection.  Specifically, HP provided relevant language

14 on the printer boxes, on its website, through customer-service representatives and on the printers

15 themselves.  *See* Opposition at 4-5.  For example, the following disclosure appeared on HP's

16 printer boxes for the at-issue printers:  "Dynamic security enabled printer.  Only intended to be

17 used with cartridges using an HP original chip.  Cartridges using a non-HP chip may not work,

18 and those that work today may not work in the future."  *Id.* at 5 (citations omitted).  Such

19 disclosures are distinct from the error messages discussed above (*see* Section I.B, *supra*), because

20 HP provides these disclosures <u>before</u> bricking a printer; an error message appears after the

21 bricking occurs to notify a consumer of the issue.  HP also collected printer data from certain (but

22 not all) consumers and disclosed such data collection.  *See id.* at 6; Sutherland Decl. ¶ 2.

23 ///

24 ///

25

26

27

28

---

[2] Plaintiffs refer to two other error messages in the Motion.  *See* Motion at 1.  The Court's review of the record did not reveal any references to these additional error messages.  In any event, as discussed below, resolution of the Motion does not require consideration of these two other error messages.  *See* Section III.A.1.a, *infra*.

### D.    Plaintiffs Viewed No Disclosures

Plaintiffs underwent similar experiences after receiving the November 2020 update on their HP LaserJet printers (*see* Motion at 8-9):

- Plaintiff Mobile purchased an HP LaserJet printer in August 2019.  Beginning in October 2020, it used that printer with a TPC without issue.  Then, on or around November 18, 2020, the printer ceased functioning and presented a "Supply Problem" error message.

- Plaintiff Performance purchased an HP LaserJet printer in November 2018.  It used that printer with TPCs without issue for years.  Then, on or around November 18, 2020, the printer ceased functioning and presented a "Supply Problem" error message.

- Plaintiff Lynch purchased an HP LaserJet printer in March 2020.  He used that printer with TPCs without issue for months.  Then, around late December 2020 or early January 2021, the printer ceased functioning and presented a "Supply Problem" error message.

While Plaintiffs each received the November 2020 update on their printers, none received any of the six 2022 updates.  *See* Hr'g Tr. at 8:4-8.  Further, none viewed any of HP's disclosures prior to experiencing the TPC-bricking issue.  *See* Opposition at 7-8; Dkt. 137 (the "Reply") at 8; Hr'g Tr. at 27:1-3, 30:21-22, 45:18-46:21.

Mobile also asserts that HP collected data from its printer without consent.  *See* Opposition, Ex. 3 at 138:19-22.  Performance and Plaintiff Lynch are not aware of HP collecting any data from their printers.  *See* Dkts. 117-4 at 112:13-25, 117-5 at 161:14-25.

### E.    Procedural History

Plaintiffs commenced this lawsuit on December 17, 2020, seeking injunctive and monetary relief for HP's alleged failure to sufficiently disclose its Dynamic Security measures prior to bricking their printers.  *See* Dkt. 1.  They subsequently amended their complaint three times.  *See* Dkts. 30, 39, 42 (the "TAC").  In the TAC, Plaintiffs also allege HP failed to disclose its data-collection practices.  *See* TAC ¶¶ 116, 119, 130, 138.

Upon HP's motion to dismiss the TAC, the Court dismissed three of Plaintiffs' claims.  *See* Dkt. 52.  The following claims remain, based on HP's alleged failure to sufficiently disclose (1) the TPC-bricking issue and (2) its data-collection practices:

United States District Court
Northern District of California

United States District Court
Northern District of California

1      • Violation of Section 1030(a)(5)(A) of the Computer Fraud and Abuse Act (the "CFAA").

2      • Violation of Sections 502(c)(1)-(5) of the California Comprehensive Computer Data

3          Access and Fraud Act (the "CCDAFA").

4      • Violation of the California Unfair Competition Law (the "UCL").

5      • Violation of the California False Advertising Law (the "FAL").

6      • Violation of Section 1770(a)(15) of the California Consumers Legal Remedies Act (the

7          "CLRA").[3]

8  In connection with these claims, Plaintiffs now seek to certify three proposed classes for the period

9  January 1, 2017 through October 1, 2021 (*see* Hr'g Tr. at 12:6-9; Motion at 1):

10     • **Device Owner Class.**  All persons and entities in the United States who own a Class

11         Printer.

12     • **Damages Subclass.**  All persons and entities in the United States who own a Class Printer

13         that displayed a diagnostic error:  "Cartridge Problem," "Supply Problem," "Non-HP

14         Chip," or "Non-HP Chip Detected" error code, as a result of HP's transmission of a

15         firmware update.

16     • **State Consumer Subclass.**  All persons and entities residing in California, and States with

17         a similar consumer protection statute to Cal. Civ. Code 1770(a)(15), who own a Class

18         Printer that displayed a diagnostic error:  "Cartridge Problem," "Supply Problem," "Non-

19         HP Chip," or "Non-HP Chip Detected" error code as a result of HP's transmission of a

20         firmware update.[4]

21         The Parties appeared before the Court for a hearing on the Motion on November 14, 2023,

22  and the Motion is now ripe for resolution.  *See* Hr'g Tr. at 1.

23

24  [3] In its Order granting in part and denying in part HP's motion to dismiss Plaintiffs' TAC, the
    Court dismissed with prejudice Plaintiffs' claim based on Section (c)(7) of the CCDAFA and
25  dismissed with leave to amend Plaintiffs' claims based on (1) the tort of trespass to chattels and
    (2) Section 1030(a)(2)(C) of the CFAA.  *See* Dkt. 52.  Plaintiffs later notified the Court that they
26  did not intend to amend their TAC.  *See* Dkt. 53.  The Court subsequently denied Plaintiffs'
    request to amend their complaint once more.  *See* Dkt. 82.

27  [4] Plaintiffs define "Class Printers" as certain enumerated models of HP LaserJet printers purchased
28  during the proposed class period.  *See* Motion at 1 n.1.

## II.      LEGAL STANDARD

Federal Rule of Civil Procedure 23 governs motions for class certification.  Under Rule 23, the Court must conduct a two-step analysis.  At the first step, the Court must determine whether a plaintiff satisfies the four requirements of Rule 23(a):  numerosity, commonality, typicality and adequacy.  *See* Fed. R. Civ. P. 23(a).  If a plaintiff satisfies these four requirements, the Court will turn to the second step, at which it must determine whether the plaintiff also satisfies the requirements of any of the three subcategories of Rule 23(b).  *See United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. ConocoPhillips Co.*, 593 F.3d 802, 806 (9th Cir. 2010).  If a plaintiff does so, the Court may certify a class.

"Rule 23 does not set forth a mere pleading standard."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  Instead, "the party seeking class certification . . . bears the burden of demonstrating that she has met each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b)."  *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001) (citation omitted); *see also Dukes*, 564 U.S. at 350 ("A party seeking class certification must <u>affirmatively demonstrate his compliance</u> with the Rule . . . ." (emphasis added)).  With respect to demonstrating compliance with the Rule 23(b) requirements, a plaintiff must provide "evidentiary proof."  *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013).

The Court retains "broad discretion to certify a class."  *Zinser*, 253 F.3d at 1186.  Even so, the Court must conduct a "rigorous analysis" that operates "within the framework of Rule 23."  *See Dukes*, 564 U.S. at 351; *Zinser*, 253 F.3d at 1186.  "Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim.  That cannot be helped."  *Dukes*, 564 U.S. at 351.  Such "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."  *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013) (citations omitted).

Where a proposed class fails to satisfy the requirements of Rule 23 as overbroad, the Court may redefine the class.  *See Olean Wholesale Grocery Coop. v. Bumble Bee Foods LLC*, 31 F.4th 651, 669 n.14 (9th Cir. 2022) ("[T]he problem of a potentially 'over-inclusive' class 'can and

often should be solved by refining the class definition rather than by flatly denying class

certification on that basis.'" (citation omitted)); *see, e.g.*, *Melgar v. CSk Auto, Inc.*, No. 13-cv-

03769-EMC, 2015 WL 9303977, at *6-8 (N.D. Cal. Dec. 22, 2015) (redefining class definition

where "proposed class definition is overbroad").

## III.   DISCUSSION

Plaintiffs satisfy the requirements of Rule 23(a) and Rule 23(b)(2) for certification of an

injunctive class, only.  They do not satisfy the requirements of certifying any other class.

### A.      Plaintiffs Satisfy The Requirements Of Rule 23(a)

The first step in the Court's analysis requires determining whether Plaintiffs satisfy the

four requirements of Rule 23(a).  They do.  However, as a threshold matter, the Court observes

that Plaintiffs' proposed class definitions do not distinguish between the TPC-bricking issue and

the data-collection issue, even though the two issues allegedly caused discrete harms that do not

necessarily overlap among all putative class members.  For example, an individual may have

experienced the TPC-bricking issue even though HP did not collect their printer data.  Conversely,

HP may have collected printer data from an individual who did not experience the TPC-bricking

issue.  Allowing Plaintiffs to subsume both harms in any single class definition may therefore

result in putative class members recovering for harms they did not experience.  Accordingly, the

Court will eliminate such overbreadth by revising Plaintiffs' class definitions to distinguish

between the two alleged harms.

#### 1.      Plaintiffs' Claims Are Typical Of A Narrowed Class Of Persons

Typicality concerns whether "the claims or defenses of the representative parties are

typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  "The test of typicality 'is

whether other members have the same or similar injury, whether the action is based on conduct

which is not unique to the named plaintiffs, and whether other class members have been injured by

the same course of conduct.'"  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)

(citation omitted).  Here, several issues arise regarding typicality with respect to Plaintiffs'

proposed class definitions in connection with both the TPC-bricking issue and the data-collection

issue.  However, after the Court narrows Plaintiffs' proposed class definitions, none prove fatal to

the Motion.

a.  *TPC-Bricking Issue And Data-Collection Issue:
Plaintiffs Viewed No Disclosures And One Error Message*

Where a defendant may raise a particular defense against the claims of the members of the putative class, but not against the claims of the named plaintiffs, no typicality exists.  *See, e.g.*, *Avilez v. Pinkerton Gov't Servs., Inc.*, 596 F. App'x 579, 579 (9th Cir. 2015) (no typicality where defenses applicable to class members are not applicable to named plaintiff); *Tan v. Grubhub, Inc.*, No. 15-cv-05128-JSC, 2016 WL 4721439, at *3 (N.D. Cal. July 19, 2016) (no typicality where class members "are potentially subject to some form of class action waiver" inapplicable to named plaintiff); *see also Romberio v. UnumProvident Corp.*, 385 F. App'x 423, 431 (6th Cir. 2009) ("[W]here there are defenses unique to the individual claims of the class members, . . . the typicality premise is lacking . . . ." (citation omitted)); *J.H. Cohn & Co. v. Am. Appraisal Assocs., Inc.*, 628 F.2d 994, 999 (7th Cir. 1980) ("[T]he presence of even an arguable defense peculiar to . . . a small subset of the plaintiff class may destroy the required typicality of the class . . . ." (citation omitted)); *cf. Hanon*, 976 F.2d at 508 ("We agree that a named plaintiff's motion for class certification should not be granted if 'there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it.'" (citation omitted)).

Here, each of Plaintiffs' remaining claims implicates the sufficiency of HP's disclosures or error messages, and the sufficiency of an at-issue disclosure or error message constitutes a defense to those claims:

- **The CFAA.**  Plaintiffs' CFAA claims assert that HP accessed their printers "without authorization."  *See* 18 U.S.C. § 1030(a)(5)(A); TAC ¶¶ 86-100.  Whether HP acted without authorization requires an evaluation of the disclosures presented by HP.  *See also* Motion at 15 (characterizing HP's disclosures as attempts to "obtain[] authorization").  A sufficient disclosure, therefore, constitutes a defense to Plaintiffs' CFAA claims.

- **The CCDAFA.**  Plaintiffs' CCDAFA claims assert that HP accessed, used or disrupted their computers "without permission."  *See* Cal. Penal Code §§ 502(c)(1)-(5); TAC ¶¶ 101-13.  Whether HP acted without permission requires an evaluation of the disclosures

presented by HP.  *See also* Motion at 20 (acknowledging sufficiency of disclosures as "defense that HP had permission").  A sufficient disclosure, therefore, constitutes a defense to Plaintiffs' CCDAFA claims.

- **The FAL.**  Plaintiffs' FAL claims assert that HP disseminated untrue or misleading statements in connection with its printer practices.  *See* Cal. Bus. & Prof. Code § 17500; TAC ¶¶ 114-27.  Whether HP's statements were untrue or misleading requires an evaluation of the disclosures presented—a sufficient disclosure necessarily cannot be untrue or misleading.  A sufficient disclosure, therefore, constitutes a defense to Plaintiffs' FAL claims.

- **The CLRA.**  Plaintiffs' CLRA claims assert that HP's error messages misrepresented Plaintiffs' need to replace their TPCs.  *See* Cal. Civ. Code § 1770(a)(15); TAC ¶¶ 158-66. Whether HP's error messages misrepresented the need to replace TPCs requires an evaluation of the error messages presented—a sufficient error message necessarily cannot misrepresent information.  A sufficient error message, therefore, constitutes a defense to Plaintiffs' CLRA claims.

- **The UCL.**  Plaintiffs' UCL claims assert that HP acted fraudulently, unlawfully and unfairly by misrepresenting and misinforming Plaintiffs of its printer practices and by engaging in the other statutory violations alleged by Plaintiffs.  *See* Cal. Bus. & Prof. Code § 17200; TAC ¶¶ 130, 138, 147.  Whether HP misrepresented or misinformed Plaintiffs of its printer practices requires an evaluation of the disclosures presented by HP—a sufficient disclosure necessarily cannot misrepresent or misinform.  And, as discussed above, analyzing Plaintiffs' remaining claims likewise requires an evaluation of the disclosures and error messages presented by HP.  A sufficient disclosure or error message, therefore, constitutes a defense to Plaintiffs' UCL claims.

However, Plaintiffs viewed <u>no disclosures</u> before (1) they experienced the TPC-bricking issue or (2) HP collected their printer data, and Plaintiffs saw no error messages other than the "Supply Problem" error message.  *See* Section I.D, *supra*.  Their claims are therefore not typical of the claims of those putative class members who did view HP's disclosures or other error

*United States District Court
Northern District of California*

message—HP could raise the sufficiency of its disclosures and other error message as a defense to the claims of those putative class members, but not as a defense to the claims of Plaintiffs.  *See also* Hr'g Tr. at 30:22-31:1 ("We're talking about, you know, potentially having a trial about whether, you know, these statements were clear, whether they were deceptive, whether, you know, they put people on notice.  And we don't have anyone that saw it." (emphasis added)).

Plaintiffs' proposed class definitions are therefore overbroad to the extent they capture individuals who viewed HP disclosures or other error message that Plaintiffs did not themselves see.  The Court will accordingly narrow Plaintiffs' proposed class definitions to capture only those individuals who viewed no disclosures prior to experiencing the TPC-bricking issue or data-collection issue and saw the "Supply Problem" error message at the time the TPC-bricking issue occurred.

Plaintiffs argue that the Court need not distinguish between individuals who did and did not view HP's disclosures, because none were sufficient.  *See* Reply at 8 ("[W]hether or not any Class member viewed the disclaimer, the disclaimer does not provide authorization or permission.").  In other words, in Plaintiffs' view, someone who viewed any of HP's disclosures stands in the same shoes as someone who viewed no disclosures, thereby rendering Plaintiffs typical of putative class members regardless of which disclosures (if any) they viewed.

The Court declines to resolve the merits of the sufficiency of HP's disclosures at this juncture.  While resolving that issue now may result in certifying broader classes than the ones the Court certifies in this Order, the Court does not need to decide that question to certify a class.  *See Amgen*, 568 U.S. at 466 ("Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." (emphasis added) (citations omitted)); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 308 F.R.D. 606, 616 (N.D. Cal. 2015) ("[T]he Court is not to enter the merits of this case more than is necessary to determine if certification of the class is appropriate." (citation omitted)); *see, e.g., Nitsch v. Dreamworks Animation SKG Inc.*, 315 F.R.D. 270, 311 (N.D. Cal. 2016) ("[T]he Court limits its consideration of the merits of Defendants' evidence to the extent necessary to determine whether class certification is appropriate . . . ." (citation omitted)).

*b.        TPC-Bricking Issue:  The Class Period Begins Too Early*

Plaintiffs propose a class period of January 1, 2017 through October 1, 2021.  *See* Section I.E, *supra*.  However, Plaintiffs experienced the TPC-bricking issue only after their printers received the November 2020 update.  *See* Section I.D, *supra*.  Accordingly, for purposes of the TPC-bricking issue, the class period may not begin prior to November 2020, as any TPC-bricking issue experienced by a putative class member prior to then would not have been caused by the same act of HP that caused Plaintiffs' alleged harm.  *See Hanon*, 976 F.2d at 508 ("The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members <u>have been injured by the same course of conduct</u>.'" (emphasis added) (citation omitted)).

*c.        TPC-Bricking Issue:  Some Putative Class
Members Did Not Experience The TPC-Bricking Issue*

Plaintiffs' proposed class definitions capture individuals unaffected by the TPC-bricking issue.

**With respect to the Device Owner Class**, the proposed definition covers all individuals who own an at-issue printer regardless of whether they experienced the TPC-bricking issue.  By Plaintiffs' own estimate, less than 10% of the printers within this proposed class experienced the TPC-bricking issue.  *See* Motion at 10; *see also* Opposition at 15.

**With respect to the Damages Subclass and State Consumer Subclass**, the proposed definitions cover individuals who received one of four error messages.  But as HP explains, the "Supply Problem" error message—the only relevant error message (*see* Section III.A.1.a, *supra*)—"can be caused by other events, unrelated to" the TPC-bricking issue.  *See* Opposition at 13.

Such overbreadth defeats typicality, because no typicality exists with respect to individuals who did not experience the TPC-bricking issue; these individuals necessarily did not experience the same alleged harm as did Plaintiffs.  *See Hanon*, 976 F.2d at 508 ("The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" (citation omitted)).

United States District Court
Northern District of California

United States District Court
Northern District of California

Thus, the Court must narrow the proposed class definitions to ensure that they cover only those individuals who actually experienced the TPC-bricking issue.  The Court believes that the universe of individuals using a TPC in an at-issue printer which displayed the "Supply Problem" error message during the class period should closely approximate the universe of individuals who experienced the TPC-bricking issue and therefore suffered the same alleged harm as Plaintiffs.

HP opposes inclusion of the "Supply Problem" error message within the class definitions, because issues other than the TPC-bricking issue caused that error message to appear.  *See* Opposition at 6, 13.  But the Court's revisions will limit the classes it certifies to only those individuals who also used a TPC at the time they received the "Supply Problem" error message, which should (at least partially) address HP's concern.  In any event, a class definition need not encapsulate only those who properly belong in the class with 100% certainty; approximations may suffice.  *See Cepelak v. HP Inc.*, No. 20-cv-02450-VC, 2022 WL 16824309, at *1 (N.D. Cal. Oct. 20, 2022) ("[A] class definition need not be perfectly drawn . . . ."); *see, e.g.*, *Rhodes v. Nat'l Collection Sys., Inc.*, No. 15-cv-02049-REB, 2016 WL 7377125, at *2 (D. Colo. Dec. 16, 2016) ("Relying on potential members' last known Colorado addresses as a proxy for membership in the class may be an imperfect gauge, but neither Rule 23 nor due process require perfection in this regard." (citation omitted)).

> ### d.  Data-Collection Issue:  HP Did
> ### Not Collect Data From Every Printer

HP collected printer data from only certain printers.  *See* Section I.C, *supra*.  Yet Plaintiffs' proposed class definitions do not limit membership to only those individuals whose printer data HP collected.  Such overbreadth defeats typicality, because no typicality exists with respect to individuals whose data HP did not collect; these individuals necessarily did not experience the same alleged harm as did Mobile.[5]  *See Hanon*, 976 F.2d at 508 ("The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the

---

[5] Plaintiffs do not assert that HP collected printer data from Performance or Plaintiff Lynch, and it appears HP did not do so.  *See* Section I.D, *supra*.

same course of conduct.'" (citation omitted)).  Thus, the Court must narrow the proposed class definitions to ensure that they cover only those individuals whose data HP collected.

### 2.    Plaintiffs' Proposed Classes Are Numerous

Numerosity concerns whether "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  Plaintiffs need not state an exact number to meet the threshold requirements of Rule 23.  Rather, the "numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations." *Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 330 (1980).  "In general, courts find the numerosity requirement satisfied when a class includes at least 40 members." *Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010) (citation omitted); *see also Hernandez v. Cnty of Monterey*, 305 F.R.D. 132, 153 (N.D. Cal. 2015) ("A class or subclass with more than 40 members 'raises a presumption of impracticability based on numbers alone.'" (citations omitted)).  "On the low end, the Supreme Court has indicated that a class of 15 'would be too small to meet the numerosity requirement.'" *Rannis*, 380 F. App'x at 651 (citation omitted); *see also Ehret v. Uber Techs., Inc.*, 148 F. Supp. 3d 884, 890 (N.D. Cal. 2015) ("While there is no fixed number that satisfies the numerosity requirement, as a general matter, a class . . . [with] less than twenty-one [members] does not." (citation omitted)).

While the Parties here offer competing estimates of the sizes of Plaintiffs' proposed classes (*compare* Motion at 10, *with* Opposition at 15), the smallest estimate offered by any Party is 3,000 individuals.  *See* Hr'g Tr. at 17:10-18:6.  Further, HP does not dispute that Plaintiffs satisfy the numerosity requirement.  Accordingly, the Court finds that Plaintiffs satisfy the numerosity requirement.  *See, e.g.*, *In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prods. Liab. Litig.*, 609 F. Supp. 3d 942, 959-60 (N.D. Cal. 2022) (numerosity satisfied where class sizes estimated at hundreds or thousands of members and numerosity not in dispute); *Akaosugi v. Benihana Nat'l Corp.*, 282 F.R.D. 241, 253-54 (N.D. Cal. 2012) (numerosity satisfied where class size estimated at 416 members and numerosity not in dispute).

///

///

///

United States District Court
Northern District of California

13

3.        Common Questions Exist

Commonality concerns whether "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  To satisfy this requirement, a question "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350.  The commonality requirement is "construed permissively," such that not all questions of fact and law need be common.  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011). Rather, "[e]ven a single [common] question will do." *Dukes*, 564 U.S. at 359 (quotation marks omitted).  Such a common question exists "where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members." *Gonzalez  v. U.S. ICE*, 975 F.3d 788, 808 (9th Cir. 2020) (citations omitted)); *see also Dukes*, 564 U.S. at 349-50 ("Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,' . . . depend[ing] upon a common contention . . . ." (citation omitted)).

At least three such common questions exist here:

**Question One.**  Regarding Plaintiffs' CFAA, CCDAFA, FAL and UCL claims based on the TPC-bricking issue, did HP violate any of these statutes with respect to individuals who viewed no disclosures?  This is a question that can be answered in one stroke for each putative class member, because it requires analysis of the same system-wide conduct, namely, (1) HP's bricking of certain printers using certain TPCs via the November 2020 update and (2) individuals experiencing this TPC-bricking issue after viewing none of HP's disclosures.  Indeed, courts analyze disclosures and omissions that allegedly violate the FAL and the UCL under a "reasonable consumer" test that applies generally (*i.e.*, that results in a single determination about the sufficiency of a disclosure that applies to the claims of each member of a putative class).  *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (FAL and UCL claims governed by "reasonable consumer" test).

**Question Two.**  Did HP violate the CLRA based on the TPC-bricking issue with respect to individuals who viewed no disclosures and saw the "Supply Problem" error message at the time they experienced the TPC-bricking issue?  As with Question One, this is a question that can be

14

1    answered in one stroke for each putative class member, because it requires analysis of the same

2    system-wide conduct, namely, (1) HP's bricking of certain printers using certain TPCs via the

3    November 2020 update and (2) individuals experiencing this TPC-bricking issue after viewing

4    none of HP's disclosures and seeing the "Supply Problem" error message.  Further, the same

5    generally applicable "reasonable consumer" test that applies to FAL and UCL claims applies to

6    CLRA claims.  *See Gerber*, 552 F.3d at 938.

7        **Question Three.**  Do putative class members whose data HP collected have Article III

8    standing?  This is a question that can be answered in one stroke for each putative class member,

9    because it requires analysis of the impact of the same facts which must be resolved in the same

10   way for each individual.  Specifically, the determination would concern <u>for each putative class

11   member</u> whether unauthorized collection of printer data, without more, constitutes an injury

12   sufficient to confer Article III standing.  *See also* Opposition at 17.

13       Although HP purports to oppose the existence of common questions in the Opposition, its

14   arguments actually focus on the presence of individualized inquiries that assertedly defeat

15   certification of a Rule 23(b)(3) class.  *See* Opposition at 9-20.  The Court addresses the presence

16   of individualized inquiries in its analysis under Rule 23(b)(3).  *See* Section III.B.1, *infra*.

17           4.    <u>Plaintiffs And Their Counsel Are Adequate Representatives</u>

18       Adequacy concerns whether "the representative parties will fairly and adequately protect

19   the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "Adequate representation as required by

20   Federal Rules of Civil Procedure Rule 23(a)(4) 'depends on the qualifications of counsel for the

21   representatives, an absence of antagonism, a sharing of interests between representatives and

22   absentees, and the unlikelihood that the suit is collusive.'"  *Brown v. Ticor Title Ins. Co.*, 982 F.2d

23   386, 390 (9th Cir. 1992) (citation omitted); *see also* Fed. R. Civ. P. 23(g)(1) (courts must consider

24   adequacy of counsel).  Representatives must also "be part of the class and 'possess the same

25   interest and suffer the same injury' as the class members."  *Amchem Prods., Inc. v. Windsor*, 521

26   U.S. 591, 625-26 (1997) (citation omitted).  The adequacy requirement

27

28       "tend[s] to merge" with the commonality and typicality criteria of Rule 23(a),
         which "serve as guideposts for determining whether . . . maintenance of a class

United States District Court
Northern District of California

15

action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."

*Id.* at 626 n.20 (citation omitted).

As discussed above, Plaintiffs satisfy the typicality and commonality requirements of Rule 23—their interests are aligned with those of the members of their putative classes (as narrowed by the Court), and common questions exist such that proceeding as a class action would be economical (at least without consideration of Rule 23(b)(3)'s requirements). *See* Sections III.A.1, 3, *supra*. Further, Plaintiffs' counsel have competently prosecuted this action and have significant experience litigating class actions. *See* Dkts. 117-8, 117-9. The Court therefore concludes that Plaintiffs satisfy the adequacy requirement.

HP challenges Plaintiffs' adequacy on four grounds:

**First**, HP blends the typicality and adequacy requirements, arguing that Plaintiffs do not satisfy either requirement with respect to putative class members who (1) received printer updates that Plaintiffs did not receive (which concerns the TPC-bricking issue) or (2) viewed disclosures that Plaintiffs did not view. *See* Opposition at 23-24. The Court agrees that these concerns could implicate adequacy, but they do not do so here—the Court's narrowed class period for the TPC-bricking issue encompasses the November 2020 update only, which Plaintiffs received[6], and the Court's narrowed class definitions exclude those individuals who viewed disclosures and the error message that Plaintiffs did not themselves view. *See* Section III.A.1, *supra* (narrowing proposed class definitions to address typicality concerns).

**Second**, HP argues that, with respect to the TPC-bricking issue, Performance did not suffer any injury similar to the alleged injuries suffered by putative class members, because it "reverted to an older firmware version and has been printing with non-HP cartridges since December 2020[,] . . . did not spend any money responding to the November 2020 update and has never purchased an HP original cartridge." Opposition at 24. But the common injury experienced by

---

[6] Six of the seven at-issue updates occurred in 2022. *See* Section I.B, *supra*. They therefore fall outside the class period which terminates in 2021. *See* Section III.A, *supra*.

United States District Court
Northern District of California

1   Plaintiffs and members of the putative class is the TPC-bricking issue, and Performance did

2   experience that issue.  Even if the Court accepted HP's argument, the remaining Plaintiffs would

3   still satisfy the adequacy requirement.

4       *Third*, HP argues Plaintiff Lynch cannot represent the proposed classes with respect to

5   Plaintiffs' CLRA claims, because Plaintiff Lynch "could have avoided harm and mitigated

6   damages by providing the information HP requested in response to [Plaintiff Lynch's] CLRA

7   demand."  *Id.*  HP is correct that the CLRA does not permit a plaintiff to maintain a damages

8   action against a defendant that timely agreed to provide an appropriate remedy.  *See* Cal. Civ.

9   Code § 1782(b).  But because the Court nevertheless declines to certify a damages class under

10  Rule 23(b)(3) (*see* Section III.B.1, *infra*), this issue implicates only Plaintiff Lynch's individual

11  claim for damages under the CLRA and not his ability to represent a class seeking damages under

12  the CLRA.  The Court therefore declines to resolve this merits inquiry at this juncture.  Even if the

13  Court accepted HP's argument, the remaining Plaintiffs would still satisfy the adequacy

14  requirement.

15      *Fourth*, HP argues that neither Mobile nor Performance may recover under their

16  California-law claims as non-residents of California who purchased their printers outside of

17  California.  *See* Opposition at 24.  Rather than resolve this merits inquiry regarding the

18  extraterritorial application of California statutes[7] at this juncture, the Court will further modify the

19  revised class definitions to moot the potential impact on class certification of such extraterritorial

20  application.  To the extent Plaintiffs seek to recover for alleged violations of California law, a

21  class limited to California residents will suffice; HP does not argue that California law does not

22  apply to California residents.  To the extent Plaintiffs seek to recover for alleged violations of the

23  CFAA—a <u>federal</u> statute—a nationwide class will suffice.  *See Miss. Band of Choctaw Indians v.*

24

25  ───────────────

    [7] Whether a statute applies extraterritorially constitutes a merits inquiry.  *See Morrison v. Nat'l*
26  *Austl. Bank Ltd.*, 561 U.S. 247, 253-54 (2010) (extraterritoriality concerns an action's merits); *see,*
    *e.g.*, *Shaffer v. Cont'l Cas. Co.*, 362 F. App'x 627, 633 (9th Cir. 2010) (Bea, J., specially
27  concurring) ("[T]he dismissal related to the claim's merits—whether Landau stated a claim under
    the Illinois Consumer Fraud Act.  Because the Act lacks extraterritorial effect, Landau failed to
28  state a claim.").

United States District Court
Northern District of California

*Holyfield*, 490 U.S. 30, 43 (1989) ("[F]ederal statutes are generally intended to have uniform nationwide application." (citations omitted)); *Jerome v. United States*, 318 U.S. 101, 104 (1943) ("[T]he application of federal legislation is nationwide . . . ." (citation omitted)).  If the Court ultimately agrees with HP and later determines at the merits stage that the at-issue California statutes do not apply extraterritorially to the putative class members' alleged harms, certification of a nationwide class would remain appropriate, because it would capture all class members bringing CFAA claims.  Thus, whether the at-issue California statutes apply extraterritorially does not influence whether the Court should grant the Motion.

\* \* \*

In sum, while Plaintiffs do not satisfy the Rule 23(a) requirements with respect to their broadly defined classes, they do satisfy those requirements for narrowed subsets of those classes. Accordingly, and as discussed above, the Court revises Plaintiffs' proposed class definitions, yielding the following four putative classes:

- **Nationwide TPC-Bricking Class.**  All persons and entities who, during the period November 1, 2020 through October 1, 2021:  (1) resided in the United States; (2) owned a Class Printer; (3) used a third-party cartridge on the printer; (4) viewed a "Supply Problem" error message on the printer at a time when the printer was using a third-party cartridge; and (5) did not view any disclosures from HP regarding the potential for printers using third-party cartridges to cease functioning before they viewed the "Supply Problem" error message.

- **California TPC-Bricking Class.**  All persons and entities who, during the period November 1, 2020 through October 1, 2021:  (1) resided in California; (2) owned a Class Printer; (3) used a third-party cartridge on the printer; (4) viewed a "Supply Problem" error message on the printer at a time when the printer was using a third-party cartridge; and (5) did not view any disclosures from HP regarding the potential for printers using third-party cartridges to cease functioning before they viewed the "Supply Problem" error message.

- **Nationwide Data-Collection Class.**  All persons and entities who, during the period January 1, 2017 through October 1, 2021:  (1) resided in the United States; (2) owned a

18

Class Printer; (3) had HP collect their printer's data; and (4) did not view any disclosures about HP's data-collection practices before HP collected their printer's data.

- **California Data-Collection Class.**  All persons and entities who, during the period January 1, 2017 through October 1, 2021:  (1) resided in California; (2) owned a Class Printer; (3) had HP collect their printer's data; and (4) did not view any disclosures about HP's data-collection practices before HP collected their printer's data.

With these revised definitions at hand, the Court proceeds with its analysis under Rule 23(b).

> **B.**     **Plaintiffs Do Not Satisfy
> The Rule 23(b) Requirements For Certifying
> A Damages Class But Do Satisfy The Rule 23(b)
> Requirements For Certifying An Injunctive Class**

Because Plaintiffs satisfy the requirements of Rule 23(a), the Court proceeds to determine whether Plaintiffs meet the requirements of any of the three subcategories of Rule 23(b).  Here, Plaintiffs do not satisfy the requirements for certifying a class under Rule 23(b)(3).  They do, however, satisfy the requirements for certifying a class under Rule 23(b)(2).

> 1.     Individualized Inquiries Would Overwhelm
> Analysis Of The Putative Class Members' Claims,
> Thereby Precluding Certification Of A Rule 23(b)(3) Damages Class

To certify a damages class under Rule 23(b)(3), a plaintiff must satisfy the predominance and superiority requirements.  Predominance concerns whether "questions of law or fact common to class members predominate over any questions affecting only individual members," and superiority concerns whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Where resolving claims would require conducting many inquiries on an individual basis, neither of the predominance or superiority requirements are met.  *See, e.g.*, *Lara v. First Nat'l Ins. Co. of Am.*, 25 F.4th 1134, 1139-40 (9th Cir. 2022) (no predominance or superiority where analyzing claims required "involved inquir[ies] for each person" and "adjudicating issues specific to each class member's claim[] . . . would be unmanageable"); *Juarez v. Jani-King of Cal., Inc.*, 273 F.R.D. 571, 584 (N.D. Cal. 2011) ("[T]he Court finds the issue of breach of good faith to be highly factual, and to be dependent on individual proof.  As such, it finds that common issues do not predominate and

that [a] class action would not be superior to individual actions."); *see also Tarrify Props., LLC v. Cuyahoga Cnty., Ohio*, 37 F.4th 1101, 1107 (6th Cir. 2022) ("Look at what you wish—ascertainability, predominance, or superiority—the district court reasonably rejected this class-certification motion given the individualized nature of each inquiry into the fair market value of each property at the time of transfer.").  Courts may also consider difficulties in identifying members of a putative class in conducting analysis under Rule 23(b)(3).  *See Walker v. Life Ins. Co. of the Sw.*, 953 F.3d 624, 632 (9th Cir. 2020) ("In light of the significant degree of variation in federal courts' approaches to member identification, we find wisdom in the Sixth Circuit's conclusion that a district court's class-certification analysis would have been 'equally sufficient,' 'regardless of whether th[e] [member-identification] concern [was] properly articulated as part of ascertainability, Rule 23(b)(3) predominance, or Rule 23(b)(3) superiority.'" (citation omitted)); *Norton v. LVNV Funding, LLC*, No. 18-cv-05051-DMR, 2020 WL 5910077, at *5 (N.D. Cal. Oct. 6, 2020) (courts may consider "class identification issues" under Rule 23(b)(3)).

HP argues that analysis of the putative class members' claims would require conducting several individualized inquiries sufficient to defeat class certification.  *See* Opposition at 9-20.

**With respect to both the TPC-bricking and data-collection classes**, among the individualized inquiries posed by HP is the determination of which disclosures each putative class member viewed.  That inquiry implicates both the identification of putative class members and the merits of this dispute.

Regarding identifying putative class members, the revised class definitions sweep within the classes only those individuals who "did not view any disclosures" before experience the TPC-bricking issue or data-collection issue.  *See* Section III.A, *supra*.  But no common proof exists about which individuals viewed which, if any, of HP's disclosures.  Indeed, HP engaged in individualized discovery for each of Plaintiffs to determine that none of them viewed any of HP's disclosures.  *See* Opposition at 7-8 (citing deposition transcripts for propositions that Plaintiffs viewed no HP disclosures).  Determining whether putative class members viewed any of HP's

disclosures would require conducting similar individualized discovery.[8]  *See, e.g., Philips v. Ford Motor Co.*, No. 14-cv-02989-LHK, 2016 WL 7428810, at *16 (N.D. Cal. Dec. 22, 2016) ("[I]t would require extensive individualized inquiries to know which class members had the opportunity to read these portions of the owner's manuals [containing warnings] before purchasing their vehicles." (citation omitted)), *aff'd*, 726 F. App'x 608 (9th Cir. 2018); *see also Perrine v. Sega of Am., Inc.*, No. 13-cv-01962-JD, 2015 WL 2227846, at *3 (N.D. Cal. May 12, 2015) ("[T]here is no good way to identify individuals who have been exposed to Defendants' at-issue advertising . . . [and] there is no good way to identify which purchasers viewed which videos prior to purchasing the game." (quotation marks and citation omitted)).

Regarding the merits, as discussed above, HP may raise the sufficiency of a particular disclosure viewed by an individual as a defense against their claims.  *See* Section III.A.1.a, *supra*. Thus, the Court would need to confirm for each putative class member that they did indeed view no disclosures; if they viewed any, HP could raise the sufficiency of those disclosures as a defense to their claims.[9]  And as explained above, determining whether an individual viewed any disclosures requires conducting individualized discovery.

To be sure, courts routinely permit putative class members to self-identify by submitting affidavits attesting to certain facts.  But such a mechanism finds no purchase here, where submitting an affidavit would require a putative class member to attest to not seeing one of several potential disclosures more than two years ago about something as innocuous and unmemorable in an individual's life as their printer, a fact not susceptible to objective verification.  *See, e.g., In re Hulu Privacy Litig.*, No. 11-cv-03764-LB, 2014 WL 2758598, at *15-16 (N.D. Cal. June 17, 2014) (no self-identification by affidavit permitted where "the claims apparently are not amenable to ready verification" and "the court cannot tell how potential class members reliably could

---

[8] It appears that a majority of printer users viewed at least some of HP's disclosures.  *See* Opposition at 11 ("Per Plaintiffs' proffered survey, the overwhelming majority of class members fall into this category:  82.2% of respondents recalled seeing a dynamic security disclosure in at least one place, and 67.8% in multiple places." (citation omitted)).

[9] Of course, viewing disclosures would also require an individual's removal from the classes as redefined by the Court.

United States District Court
Northern District of California

establish by affidavit the answers to the potential questions" which are subject to "subjective memory problems"); *Xavier v. Philip Morris USA Inc.*, 787 F. Supp. 2d 1075, 1090 (N.D. Cal. 2011) (no self-identification by affidavit permitted where putative class members expected to attest to facts subject to "subjective memory problem" and defendant "would be forced to accept [those facts] without the benefit of cross-examination"); *cf. Wortman v. Air N.Z.*, 326 F.R.D. 549, 561 (N.D. Cal. 2018) (putative class members may self-identify where data permits plaintiffs to "verify proposed class members' claims," and putative class members "would likely recall their purchase" of airline tickets, "a major expense").[10]

Although determining whether a putative class member viewed any of HP's disclosures constitutes an individualized inquiry sufficient to defeat class certification under Rule 23(b)(3), the Court also addresses one of the other individualized inquiries raised by HP, namely, that determining whether a printer was used by an individual or a business constitutes an individualized inquiry. *See* Opposition at 18. This inquiry is relevant, because the Court's revised class definitions include both "persons and entities," but Plaintiffs' CLRA claims apply only to consumers and not businesses. *See* Section III.A, *supra*; Cal. Civ. Code §§ 1761(d), 1770(a). However, the Court need not further revise its class definitions to ensure they apply only to individuals. Even if the Court agrees with HP that determining whether a printer was used by an individual or a business constitutes an individualized inquiry, this inquiry does not implicate any of Plaintiffs' non-CLRA claims. Thus, to the extent a business encompassed within the revised class definitions could not recover under the CLRA, it could nevertheless recover under the remaining statutes. There is also no risk of a business encompassed by the revised class definitions improperly recovering damages under the CLRA, because the Court declines to certify

---

[10] The Court recognizes that the *Hulu* and *Xavier* courts characterized their discussions of self-identification by affidavit as concerning the ascertainability requirement of Rule 23(b)(3), a requirement rejected by the Ninth Circuit to the extent it analyzes the "administrative feasibility" of maintaining a class action. *See Bruton v. Gerber Prods. Co.*, 703 F. App'x 468, 470 (9th Cir. 2017); *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124 n.4, 1133 (9th Cir. 2017). As explained above, however, the Ninth Circuit does permit district courts to consider issues concerning identification of putative class members as part of their Rule 23(b)(3) analysis, and the Court does so here in relying on *Hulu* and *Xavier*. The Court does not analyze ascertainability or administrative feasibility in this Order.

United States District Court
Northern District of California

a 23(b)(3) damages class.  The Court, therefore, will not exclude entities from its revised class definitions.

**With respect to the data-collection classes**, HP also argues that determining whether it collected an individual's printer data constitutes an individualized inquiry.  *See* Opposition at 17.  This inquiry implicates the identification of putative class members, because only those whose printer data HP collected belong in the class, as HP did not collect data from all of the at-issue printers.  *See* Section I.C, *supra*.  But no common proof exists regarding from whose printers HP collected data.  *See* Hr'g Tr. at 34:9-11 (HP aggregates the data collected from printers).  Self-identification via affidavit by putative class members that HP collected their printers' data will also not suffice for the same reasons discussed above in the context of attestations that an individual viewed no disclosures; submitting an affidavit would require a putative class member to attest to HP collecting their printer's data more than two years ago, something innocuous and unmemorable in an individual's life and a fact not susceptible to objective verification.  Indeed, it is not clear how a person could even know whether HP collected their printer data.

In sum, determining whether (1) a putative class member viewed any of HP's disclosures or (2) HP collected a putative class member's printer data would require conducting individualized inquiries that would predominate over common questions and render the class-action vehicle a non-superior method of adjudication.  The Court therefore declines to certify a damages class under Rule 23(b)(3).

2.    Certification Of An Injunctive Class Under Rule 23(b)(2) Is Appropriate

The Court may certify an injunctive class under Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  Rule 23(b)(2)'s "requirements are unquestionably satisfied when members of a putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class as a whole."  *Parsons v. Ryan*, 754 F.3d 657, 688 (9th Cir. 2014) (citation omitted).  Plaintiffs easily meet that standard, because they seek injunctive relief from HP's generally applicable policies of (1) bricking printers using certain TPCs and (2)

collecting printer data. *See* Motion at 13.

HP opposes certification of a Rule 23(b)(2) class chiefly on the basis that Plaintiffs do not primarily seek injunctive relief and that "the prayer for relief [in the TAC is] dominated by requests for monetary relief." Opposition at 24. But HP misunderstands this primary-relief inquiry. That inquiry concerns whether putative class representatives seek to certify a class under Rule 23(b)(2) for purposes of obtaining both monetary and injunctive relief. Under such circumstances, if putative class representatives primarily seek monetary relief, a court may not certify a damages class under Rule 23(b)(2). The court may, however, still certify the proposed class for purposes of granting injunctive or declaratory relief. For example, in *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523 (N.D. Cal. 2012), a case HP itself cites (*see* Opposition at 24), the court determined that the plaintiffs' request for monetary relief could "hardly be said to be incidental to the injunctive relief sought." *Ries*, 287 F.R.D. at 541. The court therefore denied certification under Rule 23(b)(2) "to the extent plaintiffs seek monetary damages" but nevertheless certified a Rule 23(b)(2) class "for purposes of declaratory and injunctive relief." *See id.* at 542.

Here, Plaintiffs seek to certify their proposed classes under Rule 23(b)(2) for purposes of obtaining injunctive relief only. *See* Motion at 12; Reply at 10-11. To be sure, Plaintiffs also seek to certify their proposed classes under Rule 23(b)(3) as damages classes. *See* Motion at 14 ("For all of the proposed Classes, Rule 23(b)(3) is met." (emphasis added)). But "Ninth Circuit precedent indicates that [courts] can separately certify an injunctive relief class and if appropriate, also certify a Rule 23(b)(3) damages class." *Brown v. Google, LLC*, No. 20-cv-03664-YGR, 2022 WL 17961497, at *20 (Dec. 12, 2022) (citation omitted). Thus, the Court may certify an injunctive class under Rule 23(b)(2) regardless of whether Plaintiffs primarily seek to obtain monetary relief in this action overall.

HP offers three additional arguments in opposition to certifying a 23(b)(2) class, but the Court rejects them all.

***First***, HP argues that "the injunctive relief Plaintiffs now seek is broader than that sought in the complaint." Opposition at 25. Even if true, that fact would not counsel in favor of denying certification of a Rule 23(b)(2) class. At best, HP could argue at the merits stage that Plaintiffs

may not seek injunctive relief outside the scope of the injunctive relief requested in the TAC.  But at the class-certification stage, the Court may conclude that HP "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief . . . is appropriate respecting the class as a whole," without addressing the propriety of granting the specific injunctive relief requested.  Fed. R. Civ. P. 23(b)(2).

*Second*, HP argues that "Plaintiffs' proposed injunction has no relationship to the substance of their claims based on alleged misrepresentations and omissions."  Opposition at 25. But again, HP acts prematurely; it raises an argument opposing <u>granting</u> the requested injunctive relief, but on this Motion, the Court addresses only <u>certification</u> under Rule 23.

*Third*, HP argues that "the overwhelming majority of Plaintiffs' proposed injunction class . . . did not experience cartridges blocked by dynamic security, so an injunction related to dynamic security would not 'provide relief to each member of the class.'"  *Id.* at 25 (citations omitted).  The Court's revised TPC-bricking class definitions address this concern, as they encompass only those individuals who experienced the TPC-bricking issue.  *See* Section III.A, *supra*.

In sum, the Court will certify under Rule 23(b)(2) the four classes encompassed by its revised class definitions for purposes of granting injunctive relief.  In doing so, the Court does not decide the merits of any forthcoming request for injunctive relief or endorse the injunctive relief Plaintiffs describe in the Motion.  Nevertheless, the Court observes that it does not appear that granting the injunctive relief identified in the briefing would be appropriate.  That is because Plaintiffs' claims do not attack as a whole the propriety of HP's practices of bricking printers using TPCs or collecting printer data, but instead more narrowly focus on instances in which such bricking or data collection occurred without sufficient disclosures.  Therefore, as HP correctly notes, any injunctive relief remedying such alleged harm must concern HP's disclosures (*e.g.*, an injunction requiring HP to improve its disclosures).  *See* Opposition at 25; *see also Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1140 (9th Cir. 2009) ("Injunctive relief . . . must be tailored to remedy the specific harm alleged." (citation omitted)).  Plaintiffs, however, indicate that they intend to seek injunctive relief that, *inter alia*, prohibits HP from (1) preventing printers using TPCs from functioning and (2) collecting printer data.  *See* Motion at 13.  Such relief ostensibly falls outside

1    the scope of any permissible injunctive remedy.

2         **C.    The Court Will Not Certify A Class Under Rule 23(c)(4)**

3         In addition to certifying one of the three Rule 23(b)(3) classes, courts may also, "[w]hen

4    appropriate," certify "a class action with respect to particular issues."  Fed. R. Civ. P. 23(c)(4).

5    The Court may certify such a Rule 23(c)(4) class only when resolving the particular issues in

6    question will "materially advance[] the disposition of the litigation as a whole."  *Rahman v. Mott's*

7    *LLP*, 693 F. App'x 578, 579 (9th Cir. 2017) (citations omitted)).

8         Here, Plaintiffs seek certification of a Rule 23(c)(4) class to address three issues on a

9    classwide basis:  (1) "issues concerning whether HP's uniform conduct is unlawful," (2) "issues

10   concerning the elements of Plaintiffs' claims and HP's defenses" and (3) "certain issues of

11   damages . . . that will go a long way to resolve the claims of all Class members in one go."  *See*

12   Motion at 25.

13        **With respect to Issues (1) and (2)**, the Parties will already address these issues on a

14   classwide basis in connection with Plaintiffs' forthcoming request for injunctive relief, as the

15   Court will certify injunctive classes implicating these issues under Rule 23(b)(2).  *See* Section

16   III.B.2, *supra*.

17        **With respect to Issue (3)**, Plaintiffs do not explain what they mean by "certain issues of

18   damages" or how resolving these issues will "go a long way to resolve the claims of all Class

19   members in one go."  The Court declines to certify a class for purposes of addressing such

20   amorphous issues and where Plaintiffs do not explain how doing so will "materially advance[] the

21   disposition of the litigation as a whole."  *Rahman*, 693 F. App'x at 579.

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

United States District Court
Northern District of California

## IV.   CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion as follows:

- The Court declines to certify any damages class under Rule 23(b)(3).

- The Court declines to certify any class as to particular issues under Rule 23(c)(4).

- The Court certifies the following four injunctive classes under Rule 23(b)(2), subject to the same definitions and exclusions proposed by Plaintiffs (*see* Motion at 1 nn.1-2):

  o **Nationwide TPC-Bricking Class.**  All persons and entities who, during the period November 1, 2020 through October 1, 2021:  (1) resided in the United States; (2) owned a Class Printer; (3) used a third-party cartridge on the printer; (4) viewed a "Supply Problem" error message on the printer at a time when the printer was using a third-party cartridge; and (5) did not view any disclosures from HP regarding the potential for printers using third-party cartridges to cease functioning before they viewed the "Supply Problem" error message.

  o **California TPC-Bricking Class.**  All persons and entities who, during the period November 1, 2020 through October 1, 2021:  (1) resided in California; (2) owned a Class Printer; (3) used a third-party cartridge on the printer; (4) viewed a "Supply Problem" error message on the printer at a time when the printer was using a third-party cartridge; and (5) did not view any disclosures from HP regarding the potential for printers using third-party cartridges to cease functioning before they viewed the "Supply Problem" error message.

  o **Nationwide Data-Collection Class.**  All persons and entities who, during the period January 1, 2017 through October 1, 2021:  (1) resided in the United States; (2) owned a Class Printer; (3) had HP collect their printer's data; and (4) did not view any disclosures about HP's data-collection practices before HP collected their printer's data.

  o **California Data-Collection Class.**  All persons and entities who, during the period January 1, 2017 through October 1, 2021:  (1) resided in California; (2) owned a Class

United States District Court
Northern District of California

Printer; (3) had HP collect their printer's data; and (4) did not view any disclosures about HP's data-collection practices before HP collected their printer's data.

- Mobile, Performance and Plaintiff Lynch are appointed as class representatives.
- Plaintiffs' counsel Thomas Zimmerman, Jr., Jeffrey Blake and Mark Javitch are appointed as class counsel.

**SO ORDERED.**

Dated: December 8, 2023

_____
SUSAN VAN KEULEN
United States Magistrate Judge

United States District Court
Northern District of California