Mark L. Javitch
*mark@javitchlawoffice.com*
Javitch Law Office
3 East 3rd Avenue Ste. 200
San Mateo, California 94401
Telephone: (650) 781-8000
Facsimile: (650) 648-0705

Thomas A. Zimmerman, Jr. (*pro hac vice*)
*tom@attorneyzim.com*
Jeffrey D. Blake (*pro hac vice*)
*jeff@attorneyzim.com*
Zimmerman Law Offices, P.C.
77 W. Washington Street, Suite 1220
Chicago, Illinois 60602
Telephone: (312) 440-0020
Facsimile: (312) 440-4180
*www.attorneyzim.com*

*Class Counsel*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

MOBILE EMERGENCY HOUSING CORP.,
TRACK RAT ENTERPRISES, INC. d/b/a
PERFORMANCE AUTOMOTIVE & TIRE
CENTER, and DAVID JUSTIN LYNCH,
individually, and on behalf of all others
similarly situated,

              Plaintiffs,

v.

HP INC. d/b/a/ HP COMPUTING AND
PRINTING INC., a Delaware Corporation,

              Defendant.

CASE NO. 5:20-cv-09157-SVK

**PLAINTIFFS' NOTICE OF UNOPPOSED MOTION; UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Judge:  The Hon. Susan van Keulen

Complaint Filed: December 17, 2020
Motion Date: December 10, 2024
Time: 10:00 a.m.
Room: 6 - 4th Floor

**NOTICE OF UNOPPOSED MOTION, AND
<u>UNOPPOSED MOTION FOR PRELIMINARY APPROVAL</u>**

**PLEASE TAKE NOTICE** that on December 10, 2024, at 10:00 a.m., or as early as this matter may be heard before the Honorable Susan van Keulen, Plaintiffs Mobile Emergency Housing Corp. ("MEH"), Track Rat Enterprises, Inc. d/b/a Performance Automotive & Tire Center ("TRE"), and David Justin Lynch ("Lynch") (collectively, "Plaintiffs" or "Class Representatives") will and hereby do move the Court for an Order:

A.    Granting preliminary approval of the proposed Class Action Settlement Agreement ("Settlement" or "Agreement") entered into between Plaintiffs and Defendant HP Inc. ("HP"), attached as Exhibit A to the Declaration of Thomas A. Zimmerman, Jr. ("Zimmerman Decl.") submitted herewith;

B.    Staying all non-Settlement related proceedings in the above-captioned case (the "Action") pending final approval of the Settlement; and

C.    Setting a Fairness Hearing and certain other dates in connection with the final approval of the Settlement.

This unopposed motion is based on this notice of motion and motion, the accompanying memorandum of points and authorities, the Settlement, including all exhibits thereto, the accompanying Declaration of Thomas A. Zimmerman, Jr., the argument of counsel, all papers and records on file in this matter, and such other matters as the Court may consider.

DATED: October 31, 2024          <u>s/ Thomas A. Zimmerman, Jr.</u>

Thomas A. Zimmerman, Jr. (*pro hac vice*)
*tom@attorneyzim.com*
Jeffrey D. Blake (*pro hac vice*)
*jeff@attorneyzim.com*
Zimmerman Law Offices, P.C.
77 W. Washington Street, Suite 1220
Chicago, Illinois 60602
Telephone: (312) 440-0020
Facsimile: (312) 440-4180

Mark L. Javitch
*mark@javitchlawoffice.com*
Javitch Law Office
3 East 3rd Avenue Ste. 200
San Mateo, California 94401
Telephone: (650) 781-8000
Facsimile: (650) 648-0705

*Class Counsel*

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL

**TABLE OF CONTENTS**

I.   INTRODUCTION ...............................................................................................................1

II.  OVERVIEW OF THE LITIGATION ..............................................................................2

III. THE PROPOSED SETTLEMENT TERMS AND SCHEDULE OF EVENTS..................4

     A.   Summary of Settlement Benefits ............................................................................4

     B.   Proposed Schedule of Events..................................................................................9

IV.  PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE ..................9

     A.   The Class Representatives and Class Counsel Have
          Adequately Represented the Class........................................................................10

     B.   The Settlement Was Negotiated at Arm's Length .................................................11

     C.   The Settlement Relief Is Adequate and Equitable ...............................................12

     D.   The Recommendation of Experienced Counsel Favors Approval ........................15

V.   CONCLUSION................................................................................................................16

**TABLE OF AUTHORITIES**

*Cases*

*Campbell v. Facebook, Inc.*,
   951 F.3d 1106 (9th Cir. 2020) ...................................................................12

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ...................................................................11

*Cotter v. Lyft, Inc.*,
   176 F. Supp. 3d 930 (N.D. Cal. 2016) ......................................................10

*Dyer v. Wells Fargo Bank, N.A.*,
   303 F.R.D. 326 (N.D. Cal. 2014) ..............................................................14

*Ellis v. Naval Air Rework Facility*,
   87 F.R.D. 15 (N.D. Cal. 1980). .................................................................11

*Hanlon v. Chrysler Corp*,
   150 F.3d 1011 (9th Cir. 1998) ..............................................................10, 15

*Harris v. Vector Mktg. Corp.*,
   No. C-08-5198 EMC, 2012 WL 381202 (N.D. Cal. Feb. 6, 2012)............10

*Hendricks v. Starkist Co*,
   No. 13-cv-00729-HSG, 2015 WL 4498083 (N.D. Cal. July 23, 2015) ......12

*In re Heritage Bond Litig.*,
   No. 02-ML-1475-DT, 2005 WL 1594403 (C.D. Cal June 10, 2005) ..........11

*In re High-Tech Employee Antitrust Litig.*,
   No. 11-cv-02509-LHK, 2014 WL 3917126 (N.D. Cal. Aug. 8, 2014) ........10

*Knight v. Red Door Salons, Inc*,
   No. 08-01520 SC, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ..................15

*Lilly v. Jamba Juice Co*,
   No. 13-cv-02998-JST, 2015 WL 1248027 (N.D. Cal. Mar. 18, 2015) ........9

*Linney v. Cellular Alaska P'ship*,
   No. C-96-3008 DLJ, 1997 WL 450064 (N.D. Cal. July 18, 1997)..............16

*Lyon v. United States Immigration and Customs Enf't*,
   300 F.R.D. 628 (N.D. Cal. 2014) ................................................................9

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL

*Newman v. Stein*,
    464 F.2d 689 (2d Cir. 1972) ...............................................................................................13

*Rodriguez v. West Publishing Corp*,
    563 F.3d 963 (9th Cir. 2009) ..............................................................................................13

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) ..........................................................................................................9

*In re Yahoo Mail Litig.*,
    No. 13-CV-4980-LHK, 2016 WL 8114216 (N.D. Cal. Mar. 15, 2016) ...................................14

*In re Yahoo Mail Litig.*,
    No. 13-CV-4980-LHK, 2016 WL 4474612 (N.D. Cal. Aug. 25, 2016) .....................................9

**<u>Statutes, Regulations, and Rules</u>**

28 U.S.C. § 1715 ..........................................................................................................................8

Fed. R. Civ. P. 23(e) ...........................................................................................................9, 10, 16

**<u>Miscellaneous Authorities</u>**

Manual for Complex Litigation (Fourth) § 21.632 (2004) ...........................................................12

Newberg on Class Actions § 11.25 (4th ed. 2002) .................................................................11, 12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Plaintiffs submit for the Court's preliminary approval a proposed Settlement resolving the Action. The Agreement is attached as Exhibit A to the Zimmerman Declaration.

The Action alleges that HP collected data from consumers' Class Printers[1] and disabled cartridges using non-HP chips without the owners' permission or authorization in violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("CFAA"), California Comprehensive Computer Data Access and Fraud Act, Cal. Penal Code § 502 ("CDAFA"), California False Advertising Law, Cal. Bus. & Prof. Code § 17500 ("FAL"), California Unfair Competition Law Cal. Bus. & Prof. Code § 17200 ("UCL"), and California Consumers Legal Remedies Act, Cal. Civ. Code § 1770 ("CLRA").

After years of hard-fought litigation, HP and Plaintiffs (the "Parties") have reached an Agreement that would resolve the individual claims of Plaintiffs and the injunctive relief claims of the Rule 23(b)(2) certified classes. As detailed in the Settlement, HP has agreed to continue making certain disclosures to users of Class Printers about Dynamic Security and data collection, and to continue to allow users of Class Printers to either agree to install or decline to install firmware updates that include Dynamic Security features.  The disclosures that HP has agreed to continue making include the disclosure that HP collects printer cartridge data from Class Printers through the HP Smart App, and that HP's Dynamic Security measures are designed to block cartridges using a non-HP chip, and may be delivered to printers through periodic firmware updates.

Further, the Settlement provides an opportunity for those who experienced a "Supply Problem" as a result of the November 2020 firmware update, and who have their printers configured to update firmware automatically without a notification, to receive the disclosure and an opportunity to decline Dynamic Security firmware updates, to the extent HP releases such an update for those printers.

The Settlement is the product of extensive arm's length negotiations between the Parties and their experienced and informed counsel. Settlement negotiations spanned over six months and

---

[1] Unless otherwise specified, all capitalized terms used herein have the same meanings as set forth in the Agreement.

1    included multiple mediation sessions before a highly respected and skilled mediator, Hon. Elizabeth

2    LaPorte (Ret.). Prior to reaching a resolution, and through four years of hard-fought litigation, Class

3    Counsel thoroughly examined both the facts and law involved in this case, reviewed and analyzed

4    thousands of documents produced by HP, deposed five witnesses for HP, defended four depositions

5    of Plaintiffs' witnesses, achieved certification of four classes for injunctive relief, and fully briefed

6    cross-motions for summary judgment. Class Counsel possess a firm understanding of both the

7    strengths and weaknesses of their case. Both prior to and during the negotiations, Class Counsel faced

8    formidable opposition from HP, which zealously defended its position. Both sides were well-

9    represented by seasoned and informed counsel who vigorously pursued their respective clients'

10   interests.

11       In sum, the Settlement achieves significant relief and benefits the Class now, without the

12   inherent risks of continued litigation and ***without requiring Class Members to release any claims***

13   ***they may have for monetary relief***. Consequently, the Settlement is fair, reasonable, and adequate,

14   and satisfies the criteria for preliminary approval.

15   **II.    OVERVIEW OF THE LITIGATION**

16       On December 17, 2020, Plaintiffs filed a complaint in the Action, alleging that HP violated

17   the law by installing firmware updates that disabled HP printers using cartridges manufactured by

18   HP's competitors without lawful justification or authorization from Plaintiffs. Plaintiffs alleged that,

19   in or around early November 2020, numerous users of HP printers reported that their HP printers

20   equipped with third-party toner cartridges ("TPCs") suddenly and without warning stopped working

21   due to what the printer's interface referred to as a "Supply Problem." Dkt. 1.

22       On May 24, 2021, HP moved to dismiss the Third Amended Complaint, and Plaintiffs opposed

23   the motion on June 24, 2021. Dkts. 44, 47.  On October 15, 2021, the Court granted in part and denied

24   in part HP's motion to dismiss (Dkt. 52), dismissing Plaintiffs' claims for Trespass to Chattels and

25   for alleged violations of 18 U.S.C. § 1030(a)(2)(C) and California Penal Code § 502(c)(7). The claims

26   that survived the motion to dismiss were for violations of Section 1030(a)(5)(A) of the CFAA,

27   Sections 502(c)(1)-(5) of the CDAFA, the three prongs of the UCL, the FAL, and Section 1770(a)(15)

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL

of the CLRA.

The Parties engaged in extensive discovery, including the production and review of thousands of pages of documents, survey experts, fact and expert depositions of nine witnesses, informal conferences and discussions, and substantial discovery motion practice.

On July 6, 2023, Plaintiffs moved for class certification. On December 8, 2023, the Court granted in part and denied in part the motion, and certified four classes under Rule 23(b)(2) for purposes of injunctive relief (Dkt. 143-1):

(1)    Nationwide TPC-Bricking Class: All persons and entities who, during the period November 1, 2020 through October 1, 2021:  (1) resided in the United States; (2) owned a Class Printer; (3) used a third-party cartridge in the printer; (4) viewed a "Supply Problem" error message on the printer at a time when the printer was using a third-party cartridge; and (5) did not view any disclosures from HP regarding the potential for printers using third-party cartridges to cease functioning before they viewed the "Supply Problem" error message.

(2)    California TPC Bricking Class: All persons and entities who, during the period November 1, 2020 through October 1, 2021:  (1) resided in California; (2) owned a Class Printer; (3) used a third-party cartridge in  the printer; (4) viewed a "Supply Problem" error message on the printer at a time when the printer was using a third-party cartridge; and (5) did not view any disclosures from HP regarding the potential for printers using third-party cartridges to cease functioning before they viewed the "Supply Problem" error message.

(3)    Nationwide Data-Collection Class: All persons and entities who, during the period January 1, 2017 through October 1, 2021: (1) resided in the United States; (2) owned a Class Printer; (3) had HP collect their printer's data; and (4) did not view any disclosures about HP's data-collection practices before HP collected their printer's data.

(4)    California Data Collection Class: All persons and entities who, during the period

January 1, 2017 through October 1, 2021: (1) resided in California; (2) owned a Class Printer; (3) had HP collect their printer's data; and (4) did not view any disclosures about HP's data-collection practices before HP collected their printer's data.

Informed by the Court's rulings and the extensive discovery, the Parties engaged in settlement discussions and spent several months negotiating a resolution of these claims. Despite progress being made, the Parties were unable to reach an agreement, and they filed cross-motions for summary judgment. On August 12, 2024, after the motions for summary judgment were fully briefed, the Parties reached an agreement in principle. The Court then allowed until September 20, 2024, to prepare settlement papers (Dkt. 194). The Parties were able to agree on a comprehensive set of terms to settle the claims, and they did not discuss the amount of Plaintiffs' Service Awards, attorneys' fees, or litigation expenses prior to agreeing to the merits of the Settlement. On September 20, 2024, the Court granted the Parties' stipulation affording a final extension until October 31, 2024 for this preliminary approval filing. Dkt. 194.

## III.    THE PROPOSED SETTLEMENT TERMS AND SCHEDULE OF EVENTS

### A.    Summary of Settlement Benefits

The four settlement classes proposed in the Settlement are identical to the four injunctive relief classes certified in the Court's Order on Class Certification ("Certification Order") (Dkt. 143-1). Agreement, § 1.3.[2]

Consistent with the Certification Order, the Settlement achieves and memorializes a significant continuation of HP's disclosures regarding its collection of data and its Dynamic Security features. The Settlement ensures continued transparency regarding HP's practices related to its use of data collection and firmware updates to allow consumers to make an informed decision about their printer purchases, choice in toner supplies, and whether to accept firmware updates. During the pendency of the Action, HP made significant changes to the methods and manner of its disclosures

---

[2] Excluded from the Class are any Judge or Magistrate presiding over this action and members of their immediate families, HP, its officers, directors, and affiliates at all relevant times, members of their immediate families and their legal representatives, any entity in which HP had or has a controlling interest, Plaintiffs' counsel, and the legal representatives, successors, and assigns of any such excluded persons and entities. Agreement § 1.3.

1  relating to the challenged practices. The Settlement extends and buttresses these changes to Class

2  Printers in significant ways.

3          Specifically, Sections 2.3–2.5 of the Settlement Agreement require HP to:

4  1.    For a period of one year from the Effective Date of this Settlement Agreement, to the extent

5        HP incorporates Dynamic Security features into a firmware update delivered in the United

6        States to the Class Printers, HP will:

7        •       Continue to disclose the impact of Dynamic Security on the Learn About Dynamic

8                Security web page (www.hp.com/learn/ds) and the Learn About Supplies web page

9                (https://learn-about-supplies.ext.hp.com/).  These disclosures will continue to explain

10               that Dynamic Security measures are designed to block cartridges using a non-HP chip,

11               and that Dynamic Security measures may be delivered to printers through periodic

12               firmware updates.

13       •       Continue to include, in the notification on Class Printers when a firmware update that

14               includes Dynamic Security features becomes available for those printers, to the extent

15               users' printers are configured to receive such notifications, the following disclosure:

16               "As a reminder, this printer is intended to work only with new or reused cartridges that

17               have a new or reused HP chip, and it uses dynamic security measures to block

18               cartridges using a non-HP chip.  Periodic firmware updates like this one will maintain

19               the effectiveness of these measures and block cartridges that previously worked."

20       •       Continue to provide, in conjunction with any notification on Class Printers when a

21               firmware update that includes Dynamic Security features becomes available for those

22               printers, the ability for users of Class Printers to either agree to install the firmware

23               update or decline to install the firmware update.

24       •       Continue to include, on the HP web pages where firmware versions that include

25               Dynamic Security features for the Class Printers may be downloaded, a disclosure that

26               includes the following language: "This Firmware includes dynamic security measures,

27               which are used to block cartridges using a non-HP chip or modified or non-HP

28

electronic circuitry. The printer is intended to work only with new or reused cartridges that have a new or reused HP chip or circuitry."

- Continue to provide HP customer support representatives with information to use in discussing issues related to Dynamic Security in the Class Printers. The information provided will include the same language that is currently provided to HP's customer support representatives to use when discussing Dynamic Security issues with customers:

  o Dynamic security is part of HP's process for authenticating cartridges for use in HP printers.

  o Non-HP Chips and Modified or non-HP electronic circuitry are not produced or validated by HP.

  o HP cannot guarantee that these chips or circuitry will work in your printer now or in the future.

  o Refilled or remanufactured cartridges that still use an unmodified Original HP Chip or electronic circuitry continue to be authenticated by the printer.

2.    For a period of four years from the Effective Date of this Settlement Agreement, to the extent HP incorporates Dynamic Security features into a firmware update delivered in the United States to Relevant 180/254/281 Series Printers, HP will:

- Continue to include, in the notification sent to Relevant 180/254/281 Series Printers when a firmware update that includes Dynamic Security features becomes available for those printers, to the extent the printers are configured to receive such notifications, the following disclosure: "As a reminder, this printer is intended to work only with new or reused cartridges that have a new or reused HP chip, and it uses dynamic security measures to block cartridges using a non-HP chip. Periodic firmware updates like this one will maintain the effectiveness of these measures and block cartridges that previously worked."

- For Relevant 180/254/281 Series Printers that are not configured to receive

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL

notifications of firmware updates, when a firmware update that includes Dynamic Security next becomes available for those printers, HP will provide a notification that includes the following text: "As a reminder, this printer is intended to work only with new or reused cartridges that have a new or reused HP chip, and it uses dynamic security measures to block cartridges using a non-HP chip. Periodic firmware updates like this one will maintain the effectiveness of these measures and block cartridges that previously worked."

- Continue to provide, in conjunction with any notification sent to Relevant 180/254/281 Series Printers when a firmware update that includes Dynamic Security features becomes available for those printers, the ability for users of Class Printers to either agree to install the firmware update or decline to install the firmware update.

- Continue to include, on the HP web pages where firmware versions that include Dynamic Security features for Relevant 180/254/281 Series Printers may be downloaded, a disclosure that includes the following language: "This Firmware includes dynamic security measures, which are used to block cartridges using a non-HP chip or modified or non-HP electronic circuitry. The printer is intended to work only with new or reused cartridges that have a new or reused HP chip or circuitry."

- Continue to provide HP customer support representatives with information to use in discussing issues related to Dynamic Security in Relevant 180/254/281 Series Printers. The information provided will include the same language that is currently provided to HP's customer support representatives to use when discussing Dynamic Security issues with customers:

  o  Dynamic security is part of HP's process for authenticating cartridges for use in HP printers.

  o  Non-HP Chips and Modified or non-HP electronic circuitry are not produced or validated by HP.

  o  HP cannot guarantee that these chips or circuitry will work in your printer now

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL

or in the future.

    o    Refilled or remanufactured cartridges that still use an unmodified Original HP Chip or electronic circuitry continue to be authenticated by the printer.

3.    For a period of one year from the Effective Date of this Settlement Agreement:

    •    For users who choose to install the HP Smart App to manage their Class Printers, HP will continue to include the following language on one of the setup pages: "When using this app, HP collects some required functionality data from your mobile or desktop device.  The app uses this data to support HP Smart features and operation."

    •    In the HP Privacy Statement (https://www.hp.com/us-en/privacy/privacy.html), HP will continue to disclose that it collects data on "ink or toner cartridge type (in particular, whether non-original cartridges, or cartridges with a non-HP chip or electronic circuitry are used)."

SA §§ 2.3–2.5.

In exchange for the foregoing consideration, the Action will be dismissed with prejudice upon final approval of the Settlement, and the Settlement Class Members will release all claims which have been or could have been asserted against HP by any member of the Class in this Action, with the caveat that the ***release provided under the Settlement extends solely to claims for injunctive and non-monetary equitable relief. No Settlement Class Member, except for the Class Representatives, will release any claim for monetary relief and damages.*** SA § 2.6. In other words, the Class benefits and the Class release parallel the contours of the injunctive relief classes certified by the Court.

Additionally, after all of the terms of the Settlement were agreed upon, HP agreed not to oppose an application by Class Counsel for an award of up to $725,000 in Attorneys' Fees and Expenses (which represents a *negative lodestar multiplier*), and for Service Awards up to $5,000 to each of the three Class Representatives (for a total of $15,000). Agreement § 5.1. Finally, pursuant to the Agreement, HP is obligated to serve notice of the Settlement that meets the requirements of 28 U.S.C. § 1715, on the appropriate federal and state officials no later than 10 days following the filing of the Agreement with the Court. Agreement § 7.2. HP and Class Counsel also will post notice of the

Settlement on their websites. Agreement §§ 1.16; 3.1. The proposed notice is attached as Exhibit 1 to the Agreement.

As the class claims in this Action only pertain to injunctive relief and the Settlement does not include any release of Class Members' claims for monetary relief, notice to Class Members was not required after the Court's Certification Order, pursuant to Fed. R. Civ. P. 23(b)(2) and 23(c)(2)(A). *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2558 (2011); *Lilly v. Jamba Juice Co*., No. 13-cv-02998-JST, 2015 WL 1248027, at *9 (N.D. Cal. Mar. 18, 2015) ("[E]ven if notified of the settlement, the settlement class would not have the right to opt out from the injunctive settlement and the settlement does not release the monetary claims of class members, [therefore] the Court concludes that class notice is not necessary."); *In re Yahoo Mail Litig*., No. 13-CV-4980-LHK, 2016 WL 4474612, at *5 (N.D. Cal. Aug. 25, 2016) ("[B]ecause Rule 23(b)(2) provides only injunctive and declaratory relief, 'notice to the class is not required.'") (quoting in part *Lyon v. United States Immigration and Customs Enf't*, 300 F.R.D. 628, 643 (N.D. Cal. 2014)). Nevertheless, HP and Class Counsel will post notice of the Settlement on their websites.

## B.    Proposed Schedule of Events

Consistent with the provisions of the Settlement, Plaintiffs propose the following schedule:

- Notice published: 30 days after entry of the Preliminary Approval Order (Agreement § 1.16);

- Objection Deadline: 45 days after the first date of publication of notice (Agreement § 1.17);

- Motion for final approval of the Settlement, and motion for attorneys' fees, costs and Service Awards: 14 days prior to the Final Approval Hearing (Agreement §§ 3.4, 5.1, 5.2).

## IV.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE

A class action settlement should be approved after a hearing and a finding that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In making such an assessment, the Federal Rules direct a court to consider whether:

(A) the class representatives and class counsel have adequately represented the class;

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

    (i) the costs, risks, and delay of trial and appeal;

    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims;

    (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and

    (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

*Id*.

In the Ninth Circuit, "it is well-established that the Court must balance the following non-exhaustive factors to evaluate the fairness of the proposed settlement: 'the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.'" *Cotter v. Lyft, Inc.*, 176 F. Supp. 3d 930, 935 (N.D. Cal. 2016) (quoting *Hanlon v. Chrysler Corp*, 150 F.3d 1026 (9th Cir. 1998)).

A settlement that "falls within the range of possible approval" or "the range of reasonableness" should be granted preliminary approval. *In re High-Tech Employee Antitrust Litig.*, No. 11-cv-02509-LHK, 2014 WL 3917126, at *3 (N.D. Cal. Aug. 8, 2014). The proposed Settlement here satisfies the standard for preliminary approval.[3]

### A.    The Class Representatives and Class Counsel Have Adequately Represented the Class

The Class Representatives and Class Counsel have vigorously pursued their claims in this case in the face of a vigorous defense. Class Representatives' and Class Counsel's efforts and

---

[3] Because the settlement classes are identical to the classes certified in the Court's Certification Order, "the Court need not analyze whether the requirements for certification have been met." *Harris v. Vector Mktg. Corp.*, C-08-5198 EMC, 2012 WL 381202, at *3 (N.D. Cal. Feb. 6, 2012).

diligence resulted in substantial benefits to the Class Members. The Class Representatives and Class Counsel are adequate under Rule 23(a)(4), and accordingly, the Court appointed them to these positions in the Certification Order. Dkt. 143-1 at p. 28. Because the settlement classes are identical to those certified by the Court, the Court should reaffirm its finding here that the Class Representatives and Class Counsel are adequate.

### B.    The Settlement Was Negotiated at Arm's Length

"Before approving a class action settlement, the district court must reach a reasoned judgment that the proposed agreement is not the product of fraud or overreaching by, or collusion among, the negotiating parties." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1290 (9th Cir. 1992). Where a settlement is the product of arm's length negotiations conducted by capable and experienced counsel, the court begins its analysis with a presumption that the settlement is fair and reasonable. *See* 4 Newberg § 11.41; *In re Heritage Bond Litig.*, No. 02-ML-1475-DT, 2005 WL 1594403, at *2 (C.D. Cal June 10, 2005); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980).

Here, the Settlement was reached after informed, extensive arm's length negotiations. First, the Settlement was reached after a thorough investigation into and discovery of the legal and factual issues in the Action. In particular, even before filing suit, Class Counsel conducted an extensive investigation into the factual underpinnings of the practices challenged in the Action, as well as the applicable law. In addition to their pre-filing efforts, Class Counsel engaged in extensive discovery, including the review of tens of thousands of pages of documents, fact and expert depositions of 10 witnesses, substantial discovery motion practice, and the exchange of written discovery requests and responses.

Second, the Settlement was reached only on the eve of the hearing on the Parties' cross-motions for summary judgment, after the Parties participated in two mediation sessions before experienced mediator Hon. Elizabeth LaPorte (Ret.), and considerable subsequent negotiations that ultimately led to the Settlement. These mediation sessions were informed through the exchange of confidential mediation statements. The Parties were able to come to an agreement in principle with the assistance of the mediator in follow up discussions after the second mediation session and prior

1  to the hearing on the motions for summary judgment.

2      In sum, the Settlement was reached only after Class Counsel conducted an extensive factual

3  investigation and discovery into HP's alleged misconduct, and thoroughly researched the law

4  pertinent to Class Representatives' and Class Members' claims and HP's defenses. Consequently,

5  Class Counsel had a wealth of information at their disposal before entering into settlement

6  negotiations, which allowed Class Counsel to adequately assess the strengths and weaknesses of the

7  case and to balance the benefits of settlement against the risks of further litigation. Nothing during

8  the negotiations or in the substance of the proposed Settlement presents any reason to doubt that the

9  Settlement was negotiated in good faith.

10      **C.    The Settlement Relief Is Adequate and Equitable**

11      To grant preliminary approval of the proposed Settlement, the Court need only find that it falls

12  within "the range of reasonableness." Newberg on Class Actions § 11.25, at 11-91 (4th ed. 2002). The

13  Manual for Complex Litigation (Fourth) (2004) ("Manual") characterizes the preliminary approval

14  stage as an "initial evaluation" of the fairness of the proposed settlement made by the court on the

15  basis of written submissions and informal presentation from the settling parties. Manual § 21.632.

16  Evaluating where a proposed settlement falls within this spectrum entails focus "on substantive

17  fairness and adequacy," and weighing "Plaintiffs' expected recovery … against the value of the

18  settlement offer." *Hendricks v. Starkist Co*, No. 13-cv-00729-HSG, 2015 WL 4498083, at *6 (N.D.

19  Cal. July 23, 2015) (quotation omitted).

20      The non-monetary nature of the Settlement relief is "a function of [the district] court's

21  decision to certify only an injunctive relief class." *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1125

22  (9th Cir. 2020). Here, consistent with the Court's Certification Order certifying only injunctive relief

23  classes under Rule 23(b)(2), *see* Dkt. 143-1 at pp. 27-28, the Settlement provides for injunctive relief,

24  which includes (i) a continued opportunity for most Class Members to accept or *decline* firmware

25  updates, (ii) an opportunity for Class Members whose printers were eligible for the November 2020

26  firmware update, and whose printers are configured to receive automatic firmware updates without

27  notification, to *decline* to install a future firmware update that includes Dynamic Security, to the

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL

extent HP releases such an update for those printers, (iii) continued disclosure language for a number of years, and (iv) continued disclosures relating to data collection and to firmware updates that include Dynamic Security features. While HP has vigorously contested its liability, the terms of the Settlement provide meaningful, targeted relief. The Settlement ensures that users will continue to be informed about HP's Dynamic Security measures and data collection practices, and users of Class Printers will have the ability to either agree or *decline* to install firmware updates, as described above.

In contrast to the tangible, immediate benefits of the Settlement, the outcome of continued litigation, trial and potential appeal is uncertain and could add years to this litigation. HP has vigorously denied any wrongdoing, and, absent settlement, Class Representatives anticipate HP would defend this action aggressively at multiple, procedural steps prior to trial, including its pending motion for summary judgment. While Class Representatives strongly believe in the merits of their case, they recognize that the uncertainty presents at least some element of risk at multiple, critical junctures in this Action. For instance, the Parties have advanced conflicting interpretations of certain elements of Class Representatives' CFAA claim, including the definitions and effect of the terms "damage" and "loss," and Class Representatives may face the risk on appeal that the Ninth Circuit might agree with HP's interpretation of these terms.

While Class Representatives firmly believe in the strength of their claims and have amassed substantial evidence in support of those claims through the discovery process, there is at least some risk that, absent a settlement, HP might prevail in motion practice, at trial, or on appeal, resulting in no relief to the Class. This weighs in favor of preliminary approval. *See, e.g., Rodriguez v. West Publishing Corp.*, 563 F.3d 963, 966 (9th Cir. 2009) (noting that the elimination of "[r]isk, expense, complexity, and likely duration of further litigation," including *inter alia*, an "anticipated motion for summary judgment, and … [i]nevitable appeals would likely prolong the litigation, and any recovery by class members, for years," which facts militated in favor of approval of settlement); *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972) ("[I]n any case there is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.").

HP has agreed to continue making its current disclosures—which were changed during the pendency of this Action—for several years. HP has also agreed that, if it releases another Dynamic Security firmware update for the subset of Class Printers that were eligible for the November 2020 firmware update, Class Members who own one of those printers and whose printer is *not* configured to receive firmware-update notifications will have an opportunity to *decline* to install the firmware update. Similarly, the release obtained by HP in this Settlement only extends to Class Members' claims for injunctive and non-monetary equitable relief. ***No Class Member, with the exception of the Class Representatives, will release any claim for monetary relief or damages.*** *See In re Yahoo Mail Litig.*, No. 13-cv-04980-LHK 2016 WL 8114216 (N.D. Cal. Mar. 15, 2016) (holding, under analogous circumstances, that a very similar result obtained on behalf of a class of email users and certified under Rule 23(b)(2) was within the range of possible approval). In sum, the Settlement provides substantial, meaningful relief to all Class Members based on the strengths of their claims without delay and is within the range of possible approval, particularly in light of the risks that Class Members would face in further litigation.

Furthermore, the Class Representative Service Awards and attorneys' fees, expenses, and costs provisions were negotiated only *after* all other terms of the Settlement were agreed upon. Because the relief is injunctive only, these awards do not decrease any amounts of monetary relief Class Members may otherwise be entitled to. Moreover, what the Court ultimately decides to award has no bearing on the enforceability of the Settlement. Agreement § 5.3.

Under the Settlement, Class Counsel will request, and HP will not oppose, up to $5,000 in Service Awards for each Class Representative. In the Ninth Circuit, $5,000 is a presumptively reasonable Service Award. *Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 335 (N.D. Cal. 2014); *O'Connor v. Uber Techs., Inc.*, 2019 WL 1437101, at *12-13 (N.D. Cal. Mar. 29, 2019); *Camberis v. Ocwen Loan Serv. LLC*, Case No. 14-cv-02970-EMC, 2015 WL 7995534, at *3 (N.D. Cal. Dec. 7, 2015).

Class Counsel will also request, and HP will not oppose, up to $725,000 for attorneys' fees and litigation expenses and costs. Agreement § 5.1. Of that total, approximately $100,000 represents

Class Counsel's litigation expenses and costs, and approximately $625,000 would be for attorneys' fees. Zimmerman Decl. ¶ 7. Further detail will be provided in Class Counsel's motion for an award of attorneys' fees, expenses, and Service Awards. Plaintiffs note that the fee award they are requesting would constitute a ***negative lodestar multiplier*** of approximately ***0.54*** to date. The Ninth Circuit has approved the use of a lodestar method where the underlying claims provide for fee-shifting and the relief obtained includes an injunction. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2020); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). Plaintiffs' claims are based on state law, and the Court applies state law with respect to the fee request. *See, e.g., Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). Under California law, "[t]he primary method for establishing the amount of reasonable attorneys' fees is the lodestar method." *In re Vitamin Cases*, 110 Cal. App. 4th 1041, 1052 (1st Dist. 2003) (internal quotation marks and citations omitted). And, Plaintiffs asserted California state law claims that provide for mandatory attorneys' fees. *See* Cal. Civ. Code § 1780(e). The negative lodestar multiplier demonstrates the reasonableness of the requested attorneys' fees. *See Kimber Baldwin Designs LLC v. Silv Communications, Inc.*, 2017 WL 5247538, at *6 (S.D. Ohio 2017) ("Dividing the amount they seek ($150,000) by the lodestar results in a negative multiplier (-.73), which demonstrates that the fee sought is reasonable.").

The Unfair Competition Law will also support an attorneys' fee recovery under the "private attorney general" theory if the lawsuit enforces an important right affecting the public interest. *See* Cal. Code Civ. Proc. § 1021.5; *Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480 (2016). Further, under California law, the Court may award reasonable attorneys' fees and costs when a litigant proceeding in a representative capacity has achieved a "substantial benefit" for a class of persons. *Serrano III v. Priest*, 20 Cal. 3d 25, 38 (1977). As set forth, *supra*, the injunctive relief achieved in the Settlement is of considerable value and is a substantial benefit for Class Members.

The foregoing demonstrates that the terms of the Settlement are fair, reasonable, and adequate.

### D.    The Recommendation of Experienced Counsel Favors Approval

In considering a proposed class settlement, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Knight v. Red Door Salons, Inc.*, No. 08-01520

1  SC, 2009 WL 248367, at *4 (N.D. Cal. Feb. 2, 2009); *see also Linney v. Cellular Alaska P'ship*, No.

2  C-96-3008 DLJ, 1997 WL 450064, at *5 (N.D. Cal. July 18, 1997).

3      As demonstrated herein and in each respective firm's resume, Class Counsel have extensive

4  experience litigating and settling consumer class actions and other complex matters, and have

5  conducted an extensive investigation into the factual and legal issues raised in this Action. Exhibits

6  B–C to Zimmerman Decl. Using their experience and knowledge, Class Counsel have weighed the

7  benefits of the Settlement against the inherent risks and expense of continued litigation, and they

8  strongly believe that the proposed Settlement is fair, reasonable, and adequate. The fact that qualified

9  and well-informed counsel endorse the Settlement as being fair, reasonable, and adequate weighs in

10  favor of approving the Settlement.

11      As analyzed in the Zimmerman Declaration, consideration of the Procedural Guidelines for

12  Class Action Settlements supports granting preliminary approval. Zimmerman Decl. ¶ 8.

13  **V.    CONCLUSION**

14      For the reasons stated above, Plaintiffs request that the Court:

15  A.     Enter a finding that the Settlement is within the range of possible final approval and

16      is fair, reasonable, and adequate under Fed. R. Civ. P. 23(e);

17  B.     Enter an Order granting preliminary approval of the Settlement;

18  C.     Enter an Order that notice be effectuated in accordance with the terms of the

19      Settlement;

20  D.     Stay all non-Settlement related proceedings in the Action pending final approval of

21      the Settlement; and

22  E.     Schedule a date for a Final Approval Hearing and certain other dates in connection

23      with final approval of the Settlement.

24

25  DATED: October 31, 2024

26                          Respectfully submitted,

27                          /s/ Thomas A. Zimmerman, Jr.

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL

Thomas A. Zimmerman, Jr. (pro hac vice)
*tom@attorneyzim.com*
Jeffrey D. Blake (pro hac vice)
*jeff@attorneyzim.com*
Zimmerman Law Offices, P.C.
77 W. Washington Street, Suite 1220
Chicago, Illinois 60602
Telephone: (312) 440-0020

Mark L. Javitch
*mark@javitchlawoffice.com*
Javitch Law Office
3 East 3rd Ave. Ste. 200
San Mateo, California 94401
Telephone: (650) 781-8000

Class Counsel

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL