Mark L. Javitch
*mark@javitchlawoffice.com*
Javitch Law Office
3 East 3rd Avenue Ste. 200
San Mateo, California 94401
Telephone: (650) 781-8000
Facsimile: (650) 648-0705

Thomas A. Zimmerman, Jr. (*pro hac vice*)
*tom@attorneyzim.com*
Jeffrey D. Blake (*pro hac vice*)
*jeff@attorneyzim.com*
Zimmerman Law Offices, P.C.
77 W. Washington Street, Suite 1220
Chicago, Illinois 60602
Telephone: (312) 440-0020
Facsimile: (312) 440-4180
*www.attorneyzim.com*

*Class Counsel*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

MOBILE EMERGENCY HOUSING CORP., TRACK RAT ENTERPRISES, INC. d/b/a PERFORMANCE AUTOMOTIVE & TIRE CENTER, and DAVID JUSTIN LYNCH, individually, and on behalf of all others similarly situated,

                Plaintiffs,

v.

HP INC. d/b/a/ HP COMPUTING AND PRINTING INC., a Delaware Corporation,

                Defendant.

CASE NO. 5:20-cv-09157-SVK

**PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, EXPENSES AND CLASS REPRESENTATIVE SERVICE AWARDS, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Judge:　The Hon. Susan van Keulen

Complaint Filed: December 17, 2020
Final Fairness Hearing: March 18, 2025
Time: 10:00 a.m.
Room: 6 - 4th Floor

**NOTICE OF MOTION, AND
MOTION FOR ATTORNEYS' FEES,
EXPENSES, AND CLASS REPRESENTATIVE SERVICE AWARDS**

**PLEASE TAKE NOTICE** that on March 18, 2025, at 10:00 a.m., or as early as this matter may be heard before the Honorable Susan van Keulen, Plaintiffs Mobile Emergency Housing Corp. ("MEH"), Track Rat Enterprises, Inc. d/b/a Performance Automotive & Tire Center ("TRE"), and David Justin Lynch ("Lynch") (collectively, "Plaintiffs" or "Class Representatives") will and hereby do move the Court for an Order granting Plaintiffs' Motion for Attorneys' Fees, Expenses, and Class Representative Service Awards.

This motion is based on this notice of motion and motion, the accompanying memorandum of points and authorities, the concurrently-filed Declaration of Thomas A. Zimmerman, Jr. in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement and Motion for Attorneys' Fees, Expenses, and Class Representative Service Awards ("Zimmerman Final Approval Decl."), the concurrently-filed Declaration of Mark L. Javitch in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement and Motion for Attorneys' Fees, Expenses, and Class Representative Service Awards ("Javitch Final Approval Decl."), the argument of counsel, all papers and records on file in this matter, and such other matters as the Court may consider.

DATED: March 3, 2025                    Respectfully submitted,


                                        */s/ Thomas A. Zimmerman, Jr.*
                                        Thomas A. Zimmerman, Jr. (*pro hac vice*)
                                        *tom@attorneyzim.com*
                                        Jeffrey D. Blake (*pro hac vice*)
                                        *jeff@attorneyzim.com*
                                        Zimmerman Law Offices, P.C.
                                        77 W. Washington Street, Suite 1220
                                        Chicago, Illinois 60602
                                        Telephone: (312) 440-0020

                                        Mark L. Javitch
                                        *mark@javitchlawoffice.com*
                                        Javitch Law Office
                                        3 East 3rd Avenue Ste. 200

Plaintiffs' Motion for Attorneys' Fees,
Expenses, and Class Representative Service Awards

San Mateo, California 94401
Telephone: (650) 781-8000

*Class Counsel*

Plaintiffs' Motion for Attorneys' Fees,
Expenses, and Class Representative Service Awards

**TABLE OF CONTENTS**

I.      INTRODUCTION ............................................................................................1

II.     SUMMARY OF CLASS COUNSEL'S WORK IN THIS LITIGATION ..........................2

        A.      Pre-Filing Investigation and Research, and Filing the Complaint.........................2

        B.      HP's Motion to Dismiss.................................................................3

        C.      Discovery and Discovery-Related Proceedings.......................................3

        D.      Class Certification Briefing and Expert Discovery ...................................5

        E.      Competing Dispositive Motions for Summary Judgment .......................5

        F.      Post-Certification Settlement Negotiations and Preliminary Approval ..................6

        G.      Final Approval of the Class Action Settlement .......................................7

III.    THE REQUESTED ATTORNEYS' FEES AND EXPENSES ARE FAIR,
        REASONABLE, AND APPROPRIATE ........................................................7

        A.      Under the Circumstances, the Lodestar Analysis is the
                Appropriate Method for Determining Attorneys' Fees.........................8

        B.      Class Counsel's Requested Fee Award is Reasonable as it Represents a
                *Negative* Lodestar Multiplier ...............................................9

                1.      The Time Class Counsel Devoted to This Case Was Appropriate ..........10

                2.      Class Counsel's Hourly Rates Are Reasonable.........................11

        C.      Class Counsel Achieved an Excellent Result for the Certified Classes................11

        D.      Class Counsel Exhibited Outstanding Skill and Diligence....................13

IV.     CLASS COUNSEL'S LITIGATION EXPENSES WERE REASONABLY
        INCURRED ....................................................................................14

V.      THE PROPOSED CLASS REPRESENTATIVE SERVICE AWARDS ARE
        REASONABLE ...............................................................................15

VI.     CONCLUSION................................................................................16

**TABLE OF AUTHORITIES**

<u>*Cases*</u>

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) ...............................................................8, 9, 11

*Blum v. Stenson*,
   465 U.S. 886 (1984)..................................................................................11

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980) .................................................................................7, 8

*Brundidge v. Glendale Federal Bank*,
   168 Ill.2d 235 (1995) ...................................................................................7

*Camberis v. Ocwen Loan Serv. LLC*,
   Case No. 14-cv-02970-EMC, 2015 WL 7995534 (N.D. Cal. Dec. 7, 2015) .........................1, 15

*Campbell v. Facebook, Inc.*,
   951 F.3d 1106 (9th Cir. 2020) .................................................................11, 12

*Dyer v. Wells Fargo Bank, N.A.*,
   303 F.R.D. 326 (N.D. Cal. 2014) ..............................................................1, 15

*Florin v. Nationsbank of Ga., N.A.*,
   34 F.3d 560 (7th Cir. 1994) ..........................................................................8

*Hanlon v. Chrysler Corp*,
   150 F.3d 1011 (9th Cir. 1998) ....................................................................8, 9

*Harris v. Marhoefer*,
   24 F.3d 16 (9th Cir. 1994) ..........................................................................14

*Hendricks v. Starkist Co*,
   No. 13-cv-00729-HSG, 2015 WL 4498083 (N.D. Cal. July 23, 2015) ........................7

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983)....................................................................................8

*Kimber Baldwin Designs LLC v. Silv Communications, Inc.*,
   2017 WL 5247538 (S.D. Ohio 2017)...........................................................10

*Laffitte v. Robert Half Int'l Inc.*,
   1 Cal. 5th 480 (2016) .................................................................................7, 9

*Leung v. XPO Logistics, Inc.*,
   326 F.R.D. 185 (N.D. Ill. 2018) ...........................................................................7

*McCown v. City of Fontana*,
   565 F.3d 1097 (9th Cir.2009) ...............................................................................8

*Martino v. Denevi*,
   182 Cal. App. 3d 553, 227 Cal. Rptr. 354 (Ct. App. 1986) .....................................10

*Matera v. Google LLC*,
   No. 5:15-CV-04062 LHK, 2018 WL 11414641 (N.D. Cal. Feb. 9, 2018)................8

*O'Connor v. Uber Techs., Inc.*,
   2019 WL 1437101 (N.D. Cal. Mar. 29, 2019) ...............................................1, 15

*Rodriguez v. West Publishing Corp*,
   563 F.3d 963 (9th Cir. 2009) ...........................................................................1, 9

*Schneider v. Chipotle Mexican Grill, Inc.*,
   336 F.R.D. 588 (N.D. Cal. 2020)........................................................................14

*Serrano III v. Priest*,
   20 Cal. 3d 25 (1977) .........................................................................................7, 9

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ................................................................................8

*In re Toys R Us-Delaware, Inc.-Fair & Accurate Credit Transactions Act (FACTA) Litig.*,
   295 F.R.D. 438 (C.D. Cal. 2014) .......................................................................14

*In re Vitamin Cases*,
   110 Cal. App. 4th 1041 (1st Dist. 2003) .............................................................8, 9

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002)............................................................................8, 9

*Winterrowd v. Am. Gen. Annuity Ins. Co.*,
   556 F.3d 815, 827 (9th Cir. 2009) ......................................................................10

*Wren v. RGIS Inventory Specialists*,
   No. C-06-05778 JCS, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) .....................15

*In re Yahoo Mail Litig.*,
   No. 13-CV-4980-LHK, 2016 WL 4474612 (N.D. Cal. Aug. 25, 2016).................12

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, EXPENSES,
AND CLASS REPRESENTATIVE SERVICE AWARDS

*Young v. Neurobrands, LLC,*
  No. 4:18-cv-05907-JSW (N.D. Cal. Oct. 8, 2021)................................................15

**_Statutes, Regulations, Rules, and Codes_**

18 U.S.C. § 1030(a)(5)(A) ..................................................................................3

Fed. R. Civ. P. 23(b)(2) ...........................................................................2, 5, 12

Fed R. Civ. P 23(b)(3) .......................................................................................5

Fed. R. Civ. P. 23(h) ...............................................................................1, 7, 14

Fed. R. Civ. P. 23(c)(4) .....................................................................................5

Cal. Civ. Code § 1770 ........................................................................................3

Cal. Civ. Code § 1780(e) ...................................................................................9

Cal. Penal Code § 502(c)(1)–(5) .......................................................................3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, EXPENSES,
AND CLASS REPRESENTATIVE SERVICE AWARDS

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiffs move this Court, pursuant to Federal Rules of Civil Procedure 23(h)(1) and 54(d)(2), for an order granting Plaintiffs' Motion for Attorneys' Fees, Expenses, and Class Representative Service Awards awarding: (i) attorneys' fees and expenses to Class Counsel in the Amount of **$725,000** (of that total, $104,846.90 represents unreimbursed litigation expenses and costs, and $620,153.10 would be for attorneys' fees, which constitutes a ***negative lodestar multiplier***) that Class Counsel reasonably and necessarily incurred in furtherance of the prosecution of this Action; and (ii) $5,000 as a Service Award for each of the three Class Representatives, for a total of **$15,000**. The requested award for attorneys' fees and expenses is fair and reasonable based upon the injunctive relief achieved by this Action and Settlement, the substantial effort required to obtain such relief, the complex factual and legal issues that had to be addressed, and the contingent nature of the representation.

The Class Representative Service Awards and attorneys' fees, expenses, and costs provisions were negotiated only *after* all other terms of the Settlement were agreed upon. Defendant HP Inc. ("HP") agreed to not oppose the requests. Agreement § 5.1. Because the relief is injunctive only, these awards do not decrease any amounts of monetary relief for which Class Members may otherwise be entitled. Moreover, what the Court ultimately decides to award has no bearing on the enforceability of the Settlement. Agreement § 5.3.

The Ninth Circuit has ruled that there is a "strong presumption that the lodestar figure represents a reasonable fee." *Rodriguez v. W. Publ'g Corp.,* 602 F. App'x 385, 387 (9th Cir. 2015). The requested fee award constitutes a ***negative lodestar multiplier*** of approximately ***0.49*** to date, which creates a strong presumption that the requested fees are reasonable.

With respect to the Service Awards for each Class Representative, in the Ninth Circuit, $5,000 is a presumptively reasonable Service Award. *Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 335 (N.D. Cal. 2014); *O'Connor v. Uber Techs., Inc.*, 2019 WL 1437101, at *12-13 (N.D. Cal. Mar. 29, 2019); *Camberis v. Ocwen Loan Serv. LLC*, Case No. 14-cv-02970-EMC, 2015 WL

1  7995534, at *3 (N.D. Cal. Dec. 7, 2015).

2  **II.    SUMMARY OF CLASS COUNSEL'S WORK IN THIS LITIGATION**

3          As detailed in the concurrently filed declarations of Class Counsel, Class Counsel expended

4  a total of **2,159.20 hours** over four years of litigation against a well-financed company. *See*

5  Zimmerman Final Approval Decl., ¶¶12, 24, 43-44, and Javitch Final Approval Decl., ¶¶8-9.

6  Recovery was uncertain and taking on this litigation was risky. Nevertheless, Class Counsel

7  performed the following tasks, among others: (1) extensive pre-suit investigation, (2) preparation

8  and filing of the original complaint and amended complaints, (3) researching, drafting, and filing an

9  opposition to HP's motion to dismiss, which the Court granted in part and denied in part and allowed

10 certain of Plaintiffs' class claims against HP to proceed, (4) engaged in intensive fact discovery,

11 including taking and defending fact and expert depositions of 10 witnesses, review of tens of

12 thousands of pages of documents produced by HP, dealing with discovery disputes, and challenging

13 HP's confidentiality designations on certain documents, (5) researching, drafting, and filing a motion

14 for class certification, and successfully obtaining certification with respect to four injunctive relief

15 classes under Fed. R. Civ. P. 23(b)(2) (which are the same as the classes in the settlement), (6)

16 researching, drafting, and filing Plaintiffs' motion for summary judgment, (7) researching, drafting,

17 and filing an opposition to HP's motion for summary judgment, (8) participation in numerous

18 mediation sessions with the Honorable Elizabeth Laporte (ret.), which included drafting detailed

19 mediation letters, (9) negotiation and drafting of the term sheet and ultimately the Settlement

20 Agreement ("Agreement"), (10) drafting the motion for preliminary approval of the class action

21 settlement, proposed notice, and proposed preliminary approval order, and (11) drafting the

22 concurrently filed motion for final approval and the present motion for attorneys' fees, expenses,

23 and Class Representative Service Awards. *See* Zimmerman Final Approval Decl., ¶25. A summary

24 of Class Counsel's work is provided below.

25          **A.    Pre-Filing Investigation and Research, and Filing the Complaint**

26          Class Counsel began to work on this action in November 2020. The pre-filing investigation

27 included factual research and legal research regarding potential causes of action. Plaintiffs filed their

28

original complaint on December 17, 2020. Dkt. 1. Plaintiffs filed a First Amended Complaint (Dkt. 30), adding Plaintiff David Justin Lynch ("Lynch") and a claim under the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1770, *et seq.* Lynch sent the statutory CLRA notice of violation and demand for correction to Defendant and then, after the CLRA statutory waiting period expired, Plaintiffs filed a Second Amended Complaint, seeking additional remedies pursuant to Cal. Civ. Code § 1782(d). Dkt. 39. Plaintiffs filed a Third Amended Complaint ("TAC"), which added factual allegations and new legal theories. Dkt. 42. *See* Zimmerman Final Approval Decl., ¶26.

## B.    HP's Motion to Dismiss

HP moved to dismiss the TAC and filed a request for judicial notice. Plaintiffs filed oppositions to both. The Court granted in part and denied in part the motion to dismiss. Dkt. 52. HP's motion to dismiss or strike Plaintiffs' request for injunctive relief was denied. *See* Zimmerman Final Approval Decl., ¶27.

Plaintiffs' class claims against HP in the TAC that survived HP's motion to dismiss assert violations of 18 U.S.C. § 1030(a)(5)(A) of the Computer Fraud and Abuse Act ("CFAA"), the Cal. Penal Code § 502(c)(1)–(5), the California Computer Data and Fraud Act ("CDAFA"), the False Advertising Law ("FAL"), the California Consumers Legal Remedies Act ("CLRA"), and the Unfair, Unlawful, and Fraudulent Prongs of the California Unfair Competition Law ("UCL"). *See* Zimmerman Final Approval Decl., ¶28.

## C.    Discovery and Discovery-Related Proceedings

On November 16, 2021, Plaintiffs served their First Set of Discovery Requests to Defendant, which included 39 document requests, 15 interrogatories, and 8 requests for admission. Defendant served its responses and objections to Plaintiffs' discovery. Plaintiffs tried to resolve certain discovery disputes with Defendant and held telephonic meet-and-confers, but the Parties were unable to reach an agreement on those issues. The Parties submitted to the Court a Joint Statement regarding certain discovery disputes that the Parties could not resolve without the Court's intervention. Dkt. 67. On June 16, 2022, the Court entered an order addressing the discovery disputes, and ordered Defendant to produce certain documents and information sought by Plaintiffs. Dkt. 69. *See* Zimmerman Final

Approval Decl., ¶29.

On December 21, 2022, Plaintiffs served their Second Set of Discovery Requests to Defendant, which included 19 document requests and 8 interrogatories. Once again, Defendant raised numerous objections and the Parties were unable to resolve certain discovery disputes with respect to this second set of discovery. The Parties submitted to the Court a Joint Statement regarding certain discovery disputes that the Parties could not resolve without the Court's intervention. Dkt. 97. On March 6, 2023, the Court entered an order with respect to the discovery disputes, and ordered Defendant to produce certain documents and information sought by Plaintiffs. Dkt. 103. *See* Zimmerman Final Approval Decl., ¶30.

On June 30, 2022, HP made its first document production to Plaintiffs. HP ultimately made 10 total document productions over a period of approximately 11 months, and produced over 20,000 pages of documents. Plaintiffs' counsel reviewed and analyzed all of these documents. *See* Zimmerman Final Approval Decl., ¶31.

On January 18, 2023, the parties submitted to the Court a Joint Discovery Letter Brief regarding Plaintiffs' confidentiality challenge. Dkt. 83. The Court entered a sealed order. Dkt. 85. *See* Zimmerman Final Approval Decl., ¶32.

On February 24, 2023, the parties filed a Joint Discovery Letter Brief addressing several issues concerning the relevant time period and scope of discovery. Dkt. 102. The Court found that the Relevant Time Period covers any firmware updates received from November 2020-January 2023, which was Plaintiffs' proposed cut-off. Dkt. 103. The Court also overruled HP's relevance objections as to authentication procedures and disabling mechanisms implemented through firmware in the Relevant Time Period. *Id.* The Court ordered HP to produce the responsive technical materials for the Relevant Time Period before the close of discovery. *Id. See* Zimmerman Final Approval Decl., ¶33.

Plaintiffs retained and worked with experts to analyze HP's technical documents, and to conduct a survey of consumers regarding HP's disclosures. Defendant also retained 2 experts who authored reports in opposition to class certification. *See* Zimmerman Final Approval Decl., ¶34.

In addition to written discovery, there were fact and expert depositions of numerous witnesses.

Class Counsel deposed 5 witnesses for HP, and defended 4 depositions of Plaintiffs' witnesses. *See* Zimmerman Final Approval Decl., ¶35.

### D.    Class Certification Briefing and Expert Discovery

Plaintiffs moved for class certification pursuant to Fed. Rule Civ. P., 23(b)(2) and (b)(3), and Rule 23(c)(4). Dkt. 109. On July 6, 2023, Plaintiffs filed their shortened motion and memorandum for class certification. Dkt. 117. Plaintiffs submitted expert testimony and a consumer survey regarding consumers' understanding of HP's disclaimers and error messages. *Id. See* Zimmerman Final Approval Decl., ¶36.

HP filed its opposition to class certification, along with 6 declarations and an appendix of 47 exhibits. Dkt. 124-132. Plaintiffs took the deposition of HP's expert and, thereafter, filed Plaintiffs' reply brief. Dkt. 137. On November 14, 2023, a hearing was held on Plaintiffs' motion for class certification. Dkt. 139. *See* Zimmerman Final Approval Decl., ¶37.

On December 8, 2023, the Court granted in part and denied in part Plaintiffs' motion for class certification. Dkt. 143. The Court declined to certify any damages class under Rule 23(b)(3) and declined to certify any class as to particular issues under Rule 23(c)(4). The Court granted class certification with respect to four injunctive classes under Rule 23(b)(2) on Plaintiffs' requests for injunctive relief. *Id.* The Court appointed Plaintiffs' counsel Thomas Zimmerman, Jr., Jeffrey Blake, and Mark Javitch as Class Counsel, and appointed Mobile, Performance, and Lynch as Class Representatives. *Id. See* Zimmerman Final Approval Decl., ¶38.

### E.    Competing Dispositive Motions for Summary Judgment

Plaintiffs filed their motion for summary judgment (Dkt. 159) and HP filed its motion for summary judgment (Dkt. 156). Plaintiffs responded to HP's motion for summary judgment (Dkt. 173), and HP responded to Plaintiffs' motion for summary judgment (Dkt. 174). Plaintiffs filed their reply in support of their motion for summary judgment (Dkt. 183), and HP filed its reply in support of its motion for summary judgment (Dkt. 181). The hearing on the summary judgment motions was vacated after the Parties submitted a stipulation notifying the Court that they had reached a settlement in principle. Dkt. 192-193. Thus, while extensive work was done by Class Counsel briefing issues

1 relevant to summary judgment, the Court never ruled on the issues because of the forthcoming

2 Settlement. *See* Zimmerman Final Approval Decl., ¶39.

3     **F.**     **Post-Certification Settlement Negotiations and Preliminary Approval**

4        Settlement negotiations began soon after the injunctive relief classes were certified and

5 spanned over six months, including during the time period that the Parties were briefing their

6 competing motions for summary judgment. The settlement negotiations included multiple mediation

7 sessions before a highly respected and skilled mediator, Hon. Elizabeth LaPorte (Ret.). In preparation

8 for the first mediation session with Judge LaPorte, Plaintiffs prepared a detailed letter for the mediator

9 and explained the basis for the litigation, the procedural history, significant rulings, an analysis of the

10 claims and defenses, the relief request, and a general outline of a proposed settlement. The Parties

11 eventually agreed on the material terms of the settlement and, thereafter, the Parties had another

12 mediation regarding attorneys' fees and costs and Class Representative Service Awards. The Parties

13 exchanged multiple drafts of the Agreement and its exhibits (proposed notice, preliminary approval

14 order, and final approval order) until both sides were satisfied with the details. The Agreement was

15 executed by the Parties on October 28, 2024. Class Counsel drafted a motion and supporting

16 memorandum for preliminary approval of the Settlement.

17        The Court held a hearing and granted preliminary approval of the Settlement. In the

18 Preliminary Approval Order, the Court found that:

19
20        The Settlement is the product of non-collusive arm's length negotiations
       between experienced counsel who were thoroughly informed of the strengths
21        and weaknesses of the Action, including through discovery and motion
       practice. Settlement for injunctive relief only confers substantial benefits upon
22        the Class and avoids the costs, uncertainty, delays, and other risks associated
       with continued litigation, trial, and/or appeal. The relief obtained for the Class
23        through the Settlement compares favorably with the potential relief as
       balanced against the risks of continued litigation, does not grant preferential
24        treatment to Plaintiffs or their counsel, and has no obvious deficiencies.

25     *See* Dkt 206, Preliminary Approval Order, ¶1.

26 *See* Zimmerman Final Approval Decl., ¶¶40-41.

27
28
                     6

G.    **Final Approval of the Class Action Settlement**

After obtaining preliminary approval, the Parties complied with the Preliminary Approval Order and, within 30 days of the Preliminary Approval Order, posted the Notice of the settlement on their websites. *See* Zimmerman Final Approval Decl., ¶3, and <u>Exhibits 1-3</u> thereto. Class Counsel have spent time communicating with Class members who have reached out to Class Counsel with questions about the litigation and Settlement. Class Counsel have concurrently filed a motion for final approval. Further, Class Counsel anticipate spending time preparing for and attending the final approval hearing. *See* Zimmerman Final Approval Decl., ¶42.

## III.    THE REQUESTED ATTORNEYS' FEES AND EXPENSES ARE FAIR, REASONABLE, AND APPROPRIATE

It is well-settled that attorneys who achieve a benefit for class members are entitled to be compensated for their services. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Brundidge v. Glendale Federal Bank*, 168 Ill.2d 235, 238-39 (1995). Fed. R. Civ. P. 23(h) allows the Court to award "reasonable attorney's fees . . . that are authorized by law or by the parties' agreement." *Leung v. XPO Logistics, Inc.*, 326 F.R.D. 185, 198 (N.D. Ill. 2018) (quoting Fed. R. Civ. P. 23(h)); *see also Hendricks v. Starkist Co.*, No. 13-cv-00729-HSG, 2016 WL 5462423, at *10 2016 U.S. Dist. LEXIS 134872, at *34 (N.D. Cal. Sept. 29, 2016) (stating a court has the power to award reasonable attorneys' fees and costs where "a litigant proceeding in a representative capacity secures a 'substantial benefit' for a class of persons.").

California's Unfair Competition Law will also support an attorneys' fee recovery under the "private attorney general" theory if the lawsuit enforces an important right affecting the public interest. *See* Cal. Code Civ. Proc. § 1021.5; *Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480 (2016). Further, under California law, the Court may award reasonable attorneys' fees and costs when a litigant proceeding in a representative capacity has achieved a "substantial benefit" for a class of persons. *Serrano III v. Priest*, 20 Cal. 3d 25, 38 (1977). As set forth in Section III.C below, the injunctive relief achieved in the Settlement is of considerable value and is a substantial benefit for Class Members.

1

2

**A.      Under the Circumstances, the Lodestar Analysis is the Appropriate Method for Determining Attorneys' Fees**

District courts have discretion to use the lodestar or percentage-of-fund approach to calculate attorneys' fees in common-fund cases. *See Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 566 (7th Cir. 1994). Under the lodestar method, a "lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *Matera v. Google LLC*, No. 5:15-CV-04062 LHK, 2018 WL 11414641, at *2 (N.D. Cal. Feb. 9, 2018) (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 944 (9th Cir. 2011) (citing *Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003)).

The Ninth Circuit has approved the use of a lodestar method where the underlying claims provide for fee-shifting and the relief obtained includes an injunction. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011); *Matera v. Google LLC*, No. 5:15-CV-04062 LHK, 2018 WL 11414641, at *2 (N.D. Cal. Feb. 9, 2018); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). The court may adjust the lodestar upward or downward by an appropriate positive or negative multiplier reflecting a host of "reasonableness" factors, "including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Bluetooth Headset*, 654 F.3d at 941-42. Foremost among these considerations, however, is the benefit obtained for the class. *Id.,* citing *Hensley v. Eckerhart,* 461 U.S. 424, 434–36 (1983); *McCown v. City of Fontana,* 565 F.3d 1097, 1102 (9th Cir.2009) (ultimate reasonableness of the fee "is determined primarily by reference to the level of success achieved by the plaintiff").

Additionally, Plaintiffs' claims are based on state law, and the Court applies state law with respect to the fee request. *See, e.g., Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). Under California law, "[t]he primary method for establishing the amount of reasonable attorneys' fees is the lodestar method." *In re Vitamin Cases*, 110 Cal. App. 4th 1041, 1052 (1st Dist. 2003) (internal quotation marks and citations omitted). And, Plaintiffs asserted California state law claims

8

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, EXPENSES,
AND CLASS REPRESENTATIVE SERVICE AWARDS

that provide for mandatory attorneys' fees. *See* Cal. Civ. Code § 1780(e).

**B.     Class Counsel's Requested Fee Award is Reasonable as it Represents a *Negative* Lodestar Multiplier**

The parties did not discuss Service Award payments or attorneys' fees and expenses while negotiating the material terms of the proposed settlement. Agreement ¶ 7.6. After the material terms were agreed upon, the parties had another mediation session with Judge Laporte and discussed payment of Service Awards and attorneys' fees and expenses. Class Counsel agreed to a significant lodestar reduction to avoid extended litigation, and Defendant agreed to take no contrary position.

The Ninth Circuit has ruled that there is a "strong presumption that the lodestar figure represents a reasonable fee." *Rodriguez v. W. Publ'g Corp.,* 602 F. App'x 385, 387 (9th Cir. 2015). Under the lodestar method, the district court must calculate the lodestar figure based on the number of hours reasonably expended on the litigation, adjusting the figure to account for the degree of success class counsel attained, along with other factors. *Bluetooth Headset*, 654 F.3d at 944. The Ninth Circuit has approved the use of a lodestar method where the underlying claims provide for fee-shifting and the relief obtained includes an injunction. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2020); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). Plaintiffs' claims are based on state law, and the Court applies state law with respect to the fee request. *See, e.g., Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). Under California law, "[t]he primary method for establishing the amount of reasonable attorneys' fees is the lodestar method." *In re Vitamin Cases*, 110 Cal. App. 4th 1041, 1052 (1st Dist. 2003) (internal quotation marks and citations omitted). Plaintiffs asserted California state law claims that provide for mandatory attorneys' fees. *See* Cal. Civ. Code § 1780(e).

The Unfair Competition Law will also support an attorneys' fee recovery under the "private attorney general" theory if the lawsuit enforces an important right affecting the public interest. *See* Cal. Code Civ. Proc. § 1021.5; *Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480 (2016). Further, under California law, the Court may award reasonable attorneys' fees and costs when a litigant proceeding in a representative capacity has achieved a "substantial benefit" for a class of persons. *Serrano III v.*

*Priest*, 20 Cal. 3d 25, 38 (1977).

The accompanying declarations of Class Counsel set forth the hours worked and the billing rates used to calculate Class Counsel's lodestar in this Action, including a summary of the work performed (Zimmerman Final Approval Decl. ¶¶24-56; and Javitch Final Approval Decl.¶¶8-12). *See Winterrowd v. Am. Gen. Annuity Ins. Co.*, 556 F.3d 815, 827 (9th Cir. 2009) ("Testimony of an attorney as to the number of hours worked on a particular case is sufficient evidence to support an award of attorney fees, even in the absence of detailed time records.") (quoting *Martino v. Denevi*, 182 Cal. App. 3d 553, 558, 227 Cal. Rptr. 354, 357 (Ct. App. 1986)).

In total, Class Counsel spent **2,159.20 hours** working on this case for a **total lodestar of $1,267,604**. *See* Zimmerman Final Approval Decl., ¶¶12, 24, 43-44, and Javitch Final Approval Decl., ¶¶8-12. Additionally, Class Counsel incurred **$104,846.90 in litigation expenses and costs**. *See* Zimmerman Final Approval Decl., ¶¶58-59, and Javitch Final Approval Decl., ¶¶13-14.

Class Counsel request, and HP will not oppose, $725,000 for attorneys' fees and litigation expenses and costs. Agreement § 5.1. Of that total, $104,846.90 represents Class Counsel's litigation expenses and costs, and **$620,153.10 would be for attorneys' fees**. *See* Zimmerman Final Approval Decl. ¶¶11-12, 58-59, and Javitch Final Approval Decl. ¶¶9-10. Further details are provided in Class Counsel's motion for an award of attorneys' fees, expenses, and Service Awards.

The requested fee award constitutes a ***negative lodestar multiplier*** of approximately ***0.49*** to date. *Id.* The negative lodestar multiplier demonstrates the reasonableness of the requested attorneys' fees. *See Kimber Baldwin Designs LLC v. Silv Communications, Inc.*, 2017 WL 5247538, at *6 (S.D. Ohio 2017) ("Dividing the amount they seek ($150,000) by the lodestar results in a negative multiplier (-.73), which demonstrates that the fee sought is reasonable.").

### 1.    The Time Class Counsel Devoted to This Case Was Appropriate

As detailed in Section II, *supra*, Class Counsel's efforts were necessary to achieving the Settlement. Class Counsel litigated the case for almost 4 years before reaching the Settlement, including numerous discovery disputes, retaining experts, obtaining Class certification, and summary judgment briefing.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, EXPENSES,
AND CLASS REPRESENTATIVE SERVICE AWARDS

### 2.    Class Counsel's Hourly Rates Are Reasonable

The lodestar should be calculated using "a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d at 941. Reasonable hourly rates are determined by "prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). Class Counsel are entitled to the hourly rates charged by attorneys of comparable experience, reputation, and ability for similar litigation. *Blum*, 465 U.S. at 895 n.11. The hourly rates of Class Counsel reflect their experience and accomplishments in the area of class litigation, and these rates have been accepted by state and federal courts for purposes of lodestar determinations and for purposes of lodestar cross-checks in other recent class action cases. *See* Zimmerman Final Approval Decl. ¶¶46-56, and Javitch Final Approval Decl. ¶¶11-12. Class Counsel seek fair and reasonable compensation for undertaking this case on a contingency basis and for obtaining the injunctive relief for Plaintiffs and the Certified Classes.

### C.    Class Counsel Achieved an Excellent Result for the Certified Classes

As detailed in the concurrently-filed Motion for Final Approval of Class Action Settlement, the Settlement before the Court provides significant relief for the Class that is specifically tailored to the harm alleged in the Complaint. As the Settlement reflects, HP agrees to continue making disclosures it currently makes about Dynamic Security and about its collection of users' data for a period of one to four years, depending on the disclosure.  HP also agrees to continue to provide printer users with the option to either install or decline to install firmware updates that include Dynamic Security. The Settlement does not call for HP to pay any money to Class Members, with the exception of the named Plaintiffs, and Class Members do not release any of their claims for monetary relief or damages against HP.

The Settlement reflects a reasonable and fair outcome in comparison with other comparable injunctive relief settlements in the Northern District of California. In *Campbell v. Facebook Inc.*, the court approved a settlement providing injunctive relief only, where the defendant committed to provide certain disclosures and cessation of practices for one year, and as here, the court previously denied certification of damages classes, and the release carved out claims for damages. No. 13-cv-

05996-PJH, 2017 WL 3581179 (N.D. Cal. Aug. 18, 2017), aff'd 951 F.3d 1106 (9th Cir. 2020). Observing that the settlement resulted from several years of hard fought litigation, the court awarded attorneys' fees of $3.89 million, representing a 0.497 negative lodestar multiplier, and approved the requested $5,000 incentive awards for the two named plaintiffs where, like here, they sat for day-long depositions, actively participated in the litigation, agreed to waive monetary claims, and the awards are not conditioned upon support of the settlement. Id. *7–8. Another instructive case is *In re Yahoo Mail Litigation*. In that settlement, after the court certified two Rule 23(b)(2) classes to pursue claims under the Stored Communications Act and the California Invasion of Privacy Act, Yahoo agreed to a three-year stipulated injunction regarding its analysis of emails and disclosures on certain webpages, and obtained a limited release on claims for declaratory, injunctive and non-monetary equitable relief only. 2016 WL 4474612, at *3–4 (N.D. Cal. Aug. 25, 2016). The court awarded attorneys' fees of approximately $4 million, which equated to a negative multiplier of 0.97 of the lodestar. *Id.* at *11. The court also approved service awards of $5,000. *Id.*

Here, the Settlement (i) provides that HP will continue to make disclosures at the critical decision point for consumers—*i.e.*, when deciding whether to purchase a Class Printer, and when deciding whether to download a firmware update that contains Dynamic Security—and (ii) provides Class Members who own printers that were eligible for the November 2020 firmware update, and whose printers are configured to receive automatic firmware updates without notification, to *decline* to install a Dynamic Security firmware update, to the extent HP releases such an update for those printers.  And the Settlement does not prevent Class Members from seeking monetary legal recourse. The release pertains to certain injunctive relief only, and the relief carves out claims for monetary relief. Like the foregoing cases, the Settlement was negotiated after classes were certified in a decision on a contested motion for class certification. The relief in the Settlement is a byproduct of the Court's reasoning and holding in the Class Certification Order. Finally, the requested Service Awards and attorneys' fee and expense awards compare favorably to those approved in the foregoing cases that achieved final approval, which (in the case of *Campbell*) was affirmed on appeal.

Class Counsel's fee demand is also supported by the non-Settlement benefits their efforts

won for the Class Members, including causing HP to refrain from sending certain planned firmware updates while the lawsuit was pending, and causing HP to modify and strengthen the Dynamic Security disclosure language for all of its printers.

According to its prior business plans, HP intended to send far more firmware updates on a periodic basis to certain Class Printers which would have blocked numerous third party cartridges and caused significant harm to Class Members. Instead, because of this pending lawsuit, HP only sent one other firmware update to the printers impacted by the November 2020 firmware update—in March 2023—that was an aborted attempt. Class Counsel deserve credit for effectively stopping HP's planned firmware updates from going forward, preventing thousands of consumers from having their third party cartridges disabled, and saving those consumers millions of dollars from not having to switch to more expensive HP toner.

Furthermore, HP changed its Dynamic Security disclosure while this lawsuit was pending in response to Plaintiffs' challenges in the complaint that HP's disclosure—that cartridges using non-HP chips "may not work"—was deceptive. [1] Even though HP had achieved a degree of success in a prior lawsuit based on the "may not work" disclaimer, HP nevertheless decided to strengthen that disclosure to clearly state HP's intent behind Dynamic Security, and more fully disclose the connection between Dynamic Security firmware updates and blocked third party cartridges. The Court observed at the hearing on class certification that the revised Dynamic Security language was "pretty explicit." Hrng. Tr. at 36 (Nov. 14, 2023). Now, HP generally presents the revised Dynamic Security disclaimer to customers at the time of installation of the firmware updates, whereas that did not happen before this lawsuit was filed. Class Counsel's efforts should be credited for the substantial improvement to HP's challenged conduct as a result of this lawsuit.

### D.    Class Counsel Exhibited Outstanding Skill and Diligence

The quality and diligence of Class Counsel's representation in this case supports the requested award. Class Counsel's analysis of the issues in this action, litigation strategy, and diligence

---

[1] HP does not admit that it changed the challenged disclosure in response to this lawsuit; rather, according to HP, the timing of the disclosure change was coincidental. *See* Dkt. 198.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, EXPENSES,
AND CLASS REPRESENTATIVE SERVICE AWARDS

prosecuting this action support the requested award. Class Counsel expended significant effort—at the expense of other work—to obtain certification of the Classes, and negotiate and finalize the Agreement. *See* Zimmerman Final Approval Decl. ¶¶24-43. As detailed in Section II, *supra*, Class Counsel devoted significant time and resources to this case to date. Class Counsel further anticipate completing additional work, including preparing for and arguing Plaintiffs' motion for final approval of the Settlement.

## IV.    CLASS COUNSEL'S LITIGATION EXPENSES WERE REASONABLY INCURRED

The Settlement terms and well-settled precedent support Class Counsel's entitlement to recovery of out-of-pocket expenses reasonably incurred in prosecuting and settling this matter. *See In re Toys R Us-Delaware, Inc.-Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 468 (C.D. Cal. 2014) ("In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement") (citing Fed.R.Civ.Proc. 23(h)). "Class Counsel is entitled to recover 'those out-of-pocket expenses that would normally be charged to a fee paying client.'" *Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588, 602 (N.D. Cal. 2020) (quoting *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (quotations omitted)).

To date, Class Counsel have incurred $104,846.90 in unreimbursed out-of-pocket expenses over the course of the litigation. *See* Zimmerman Final Approval Decl. ¶¶11, 58-59, Javitch Final Approval Decl. ¶¶13-14. Most of the costs and expenses were for court reporter services for the numerous depositions, fees for the mediator for several mediation sessions, fees for Plaintiffs' expert witnesses, ESI online document hosting and storage vendor, and travel expenses to attend depositions and HP's on-site inspections of Plaintiffs' printers. *Id.* These costs and expenses were reasonably and justifiably incurred in furtherance of the prosecution and settlement of this matter, and would normally be charged to a fee paying client. *Id.* Accordingly, these costs and expenses and should be reimbursed. *In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. at 469; *see also Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588, 602 (N.D. Cal. 2020) (approving Class Counsel's request for "reimbursement of $636,556.28 in out-of-

14

pocket costs, including costs advanced in connection with experts, legal research, court reporting services, travel for depositions, copying and mailing, for the costs of notice administration associated with class certification, and other customary litigation expenses.").

## V.   THE PROPOSED CLASS REPRESENTATIVE SERVICE AWARDS ARE REASONABLE

The parties did not discuss Service Award payments while negotiating the material terms of the proposed Settlement. Agreement ¶7.6. Thereafter, HP agreed to not oppose an application for a Service Award in an amount not to exceed $5,000 per Plaintiff. Agreement ¶5.2.

In the Ninth Circuit, $5,000 is a presumptively reasonable Service Award. *Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 335 (N.D. Cal. 2014). The benchmark for presumptively reasonable incentive awards for plaintiffs in this district is $5,000. *See O'Connor v. Uber Techs., Inc.*, 2019 U.S. Dist. LEXIS 54608, 2019 WL 1437101, at *12-13 (N.D. Cal. Mar. 29, 2019); *Camberis v. Ocwen Loan Serv. LLC*, Case No. 14-cv-02970-EMC, 2015 U.S. Dist. LEXIS 163826, 2015 WL 7995534, at *3 (N.D. Cal. Dec. 7, 2015); *Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *36 (N.D. Cal. Apr. 1, 2011) ("there is ample case law finding $5,000 to be a reasonable amount for an incentive payment.")

Each of the Class Representatives reviewed and approved pleadings and motions; responded to interrogatories; responded to document requests, and produced documents; prepared for and gave depositions; prepared for and attended an inspection of their printers by HP's expert; attended a full day of mediation; participated in negotiating the Settlement terms; reviewed and approved the Agreement; and maintained continuous communication with Class Counsel throughout the litigation. *See* Zimmerman Final Approval Decl., ¶9. Each Class representative spent approximately 50-75 hours working on this case. *See* Zimmerman Final Approval Decl., ¶10.

In *Young v. Neurobrands, LLC*, this level of participation caused the court to grant the plaintiffs' request for an incentive payment of $5,000 for each plaintiff. *See* No. 4:18-cv-05907-JSW (N.D. Cal. Oct. 8, 2021) (Dkt. 95) ("The Class Representatives in this action have actively participated in and assisted Class Counsel with this litigation for the substantial benefit of the Class.

1  Each of the Class Representatives have reviewed material filings; responded to written discovery;

2  prepared for and attended depositions; have had continuous communications with Class Counsel

3  throughout the litigation; have reviewed and approved the Agreement; and were committed to

4  securing substantive relief on behalf of the Class. The Court further finds that the requested incentive

5  awards are presumptively reasonable and are in line with Ninth Circuit authority.").

6  **VI.    CONCLUSION**

7      For the reasons stated above, Plaintiffs respectfully request this Court grant an award of

8  $725,000 in attorneys' fees and expenses (which includes $104,846.90 in costs and expenses, and

9  represents a negative lodestar multiplier), and award Service Awards of $5,000 to each of the three

10  Class Representatives (for a total of $15,000). A proposed Order is attached hereto as Exhibit A.

11  DATED: March 3, 2025

12                                   Respectfully submitted,

13                                   /s/ Thomas A. Zimmerman, Jr.

14

15                                   Thomas A. Zimmerman, Jr. (pro hac vice)
                                     *tom@attorneyzim.com*
16                                   Jeffrey D. Blake (pro hac vice)
                                     *jeff@attorneyzim.com*
17                                   Zimmerman Law Offices, P.C.
                                     77 W. Washington Street, Suite 1220
18                                   Chicago, Illinois 60602
                                     Telephone: (312) 440-0020
19

20                                   Mark L. Javitch
                                     *mark@javitchlawoffice.com*
21                                   Javitch Law Office
                                     3 East 3rd Ave. Ste. 200
22                                   San Mateo, California 94401
                                     Telephone: (650) 781-8000
23

24                                   Class Counsel

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, EXPENSES,
AND CLASS REPRESENTATIVE SERVICE AWARDS